# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

14 CV 5029

<table>
<tr><td>

LEAH SEGEDIE and DMITRIY
SHNEYDER, on behalf of themselves and all
others similarly situated,

          Plaintiffs,

    v.

THE HAIN CELESTIAL GROUP, INC., and
DOES #1–99,

          Defendants.

</td><td>

Case No. _____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

JUDGE ROMAN

</td></tr>
</table>



RECEIVED
JUL 03 2014
U.S.D.C.
WP

{00266729 }

Plaintiffs Leah Segedie and Dmitriy Shneyder ("Plaintiffs"), on behalf of themselves and all others similarly situated, and by and through their undersigned counsel, allege the following based upon their own personal knowledge and the investigation of their counsel:

## NATURE OF THE ACTION

1.  This is a proposed class action against The Hain Celestial Group, Inc. ("Hain Celestial") for falsely and misleadingly labeling as "ORGANIC" and/or "ALL NATURAL" its "Earth's Best" brand infant foods, baby foods, kids' foods, baby care products, and home care products. The labels and ingredient lists of many of these "Falsely Labeled Products" are attached as Exhibit 1.

2.  Hain Celestial is one of the leading makers of organic and natural baby products. Hain Celestial promotes its "Earth's Best" brand as an organic brand that parents can trust to nurture their young children.

3.  However, Hain Celestial's "Earth's Best" brand products contain a spectacular array of ingredients that federal law prohibits in organic foods, that are synthetic substances, or that are ingredients that Hain Celestial promised never to include in its products.

4.  For example, Hain Celestial falsely and misleadingly labels its Earth's Best Infant Formula with Iron as being "Organic."



5.      Behind the picturesque red barn of the Earth's Best logo lies a chemical soup.  Of the 48 ingredients in Earth's Best Organic Infant Formula *more than half* – 26 – are not permitted in organic foods by federal law.  *More than three-fourths* – 38 – of the ingredients are synthetic compounds, including artificial flavors, artificial preservatives, artificial colors, toxic compounds, and hazardous substances.

6.      In its "Quality Promise," Hain Celestial also asserts that its "Earth's Best organic infant formula contains no toxic chemicals . . . Ingestion may compromise long-term immune system development."   Our Quality Promise, www.earthsbest.com/why-earths-best/product-testing (last visited Dec. 18, 2013), attached as Exhibit 2.

7.      This, too, is false.  Their "organic" infant formulas contain a number of toxic chemicals, including sodium selenite (recognized by federal regulations as a very toxic and hazardous substance), potassium hydroxide (also a toxic and hazardous compound), ingredients

that are synthetically produced from toxic compounds, such as calcium pantothenate (synthetically produced from formaldehyde and isobutyraldehyde), and other "innovative" ingredients (whose safety has not been determined).

8.     Hain Celestial's so-called "all natural" baby care and home care products have a significant number of synthetic ingredients.  For example, in its Earth's Best "All Natural" Mineral Sunscreen, almost half of the ingredients are artificial, including benzyl alcohol, caprylic/capric triglycerides, dimethicone, ethylhexyl palmitate, sorbitan sesquioleate, glycerin, polyglyceryl-3 ricinoleate, magnesium sulfate, tocopheryl acetate, phenoxyethanol, and polyhydroxystearic acid.

9.     Many of these chemicals are not only synthetic, but also toxic. Hain Celestial adds potassium hydroxide to its so-called "Natural All-Purpose Cleaner," which it advertises for use in the nursery.  *See* Exhibit 1.  Potassium hydroxide is classified by federal regulations as a highly toxic and hazardous synthetic compound that, ***even on short exposure***, could cause serious temporary or residual injury.  Hain Celestial adds phenoxythenol to its "All Natural Mineral Sunscreen," a synthetic preservative that federal regulations warn is a toxic skin irritant that can have adverse effects on the central and peripheral nervous systems and can be absorbed through the skin.  *See* Exhibit 1.

10.     Many of the other ingredients added to Hain Celestial's "Earth's Best" products are "safe" as food, personal care, or household cleaner additives.  Yet Hain Celestial did not simply claim that the Falsely Labeled Products are "safe."  It fraudulently claimed that the Falsely Labeled Products are "organic," "natural" and/or contained no nitrates, no sodium benzoate, and nothing "artificial."  Hain Celestial's misrepresentations are demonstrably false.

11.     Consumers lack the ability to test or independently ascertain the accuracy of a

food, body care, or household cleaner product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a product's ingredients.

12. Food, personal care, and household product companies intend for consumers to rely upon its representations, and reasonable consumers do in fact so rely. These representations are the only source of information consumers can use to make decisions concerning whether to buy and use such products.

13. As a result of its false and misleading labeling, Hain Celestial was able to sell the Falsely Labeled Products to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

14. Hain Celestial's false and misleading representations and omissions violate state and federal law as detailed more fully below, including California's Unfair Competition Law, California's Consumers Legal Remedies Act, New York General Business Law § 349, common law, and federal statutes.

15. By deceiving consumers about the nature, quality, and/or ingredients of the Falsely Labeled Products as detailed herein, Hain Celestial was able to command a premium price for the Falsely Labeled Products. Hain Celestial was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

16. Plaintiffs bring this action to stop Hain Celestial's misleading practices.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over the parties in this case. Plaintiff Segedie is a citizen of California and, by filing this Complaint, consents to this Court having personal jurisdiction over her. Plaintiff Shneyder is a citizen of New York and, by filing this

Complaint, consents to this Court having personal jurisdiction over him. Hain Celestial is a Delaware corporation with its principal place of business in Melville, New York. Hain Celestial has sufficient minimum contacts with New York to establish personal jurisdiction of this Court over it, or otherwise purposefully avails itself of the laws of this State through its marketing and sales of the Falsely Labeled Products in this State, which is sufficient to establish that it is subject to the personal jurisdiction of this Court.

18.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the state of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

19.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including Hain Celestial's dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Falsely Labeled Products, occurred within this District.

<u>**PARTIES**</u>

20.     Plaintiff Leah Segedie is a mother of three children. Plaintiff Segedie resides in Simi Valley, California, and she has no intention of changing her residence. Plaintiff Segedie regularly purchased several of the Falsely Labeled Products over the last several years at retail prices. For example, from approximately February 2009 to February 2010, she purchased

approximately 24 cans of Earth's Best Organic Infant Formula with DHA and ARA, and from approximately July 2012 to December 2012, she purchased approximately another 8 cans of Earth's Best Organic Infant Formula with DHA and ARA. Plaintiff Segedie made her purchases at the retail grocer, Whole Foods, in Westlake Village, CA, and from the online retailer, Amazon.com. Copies of two of Plaintiff Segedie's receipts are attached as Exhibit 4.

21.     Until 2013, Plaintiff Segedie also regularly purchased other products falsely labeled as "organic". For example, in 2009, she purchased from the retailer Von's in Simi Valley, CA: approximately ten jars of Earth's Best First Foods, First Bananas, approximately five boxes of Earth's Best Crunchin' Crackers – Original, approximately five boxes of Earth's Best Crunchin' Grahams- Honey Sticks, and approximately three boxes of Earth's Best Letter of the Day Cookies-Very Vanilla Multipack. She also purchased a variety of other Earth's Best products, including Soothing Lotion – Lavender.

22.     Plaintiff Dmitriy Shneyder is the father of a little girl. Plaintiff Shneyder resides in Hopewell Junction, New York, and he has no intention of changing his residence. Plaintiff Shneyder purchased several of the Falsely Labeled Products over the last several years at retail prices. For example, around April to September 2011, Plaintiff Shneyder purchased Earth's Best Organic Infant Formula with DHA and ARA, and Earth's Best 2nd Wholesome Breakfast Pear Apple Oatmeal, Apple Yogurt Oatmeal, and Peach Pear Barley at Babies "R" Us in Wappingers Falls, New York.

23.     In deciding to purchase these products, Plaintiffs saw that they were labeled "ORGANIC" and relied upon the representation in making their purchases. They reasonably believed that the products labeled "ORGANIC" were organic, as labeled, and the "ORGANIC" representation was a significant reason for their purchases. They also saw, read, believed, and

relied upon Hain Celestial's representations that none of their products contained artificial substances.

24.     However, contrary to Hain Celestial's representation that these products were "organic" as labeled, they contained ingredients not permitted in organic foods. For example, the Earth's Best "Organic" Infant Formula with DHA and ARA that Plaintiffs purchased for their infant children contained the following ingredients that are not permitted in organic foods: adenosine-5'-monophosphate, cytidine-5'-monophosphate, disodium guanosine-5'-monophosphate, disodium inosine-5'-monophosphate, disodium uridine-5'-monophosphate, docosahexaenoic acid, arachidonic acid, cupric sulfate, manganese sulfate, potassium bicarbonate, sodium selenite (a *very toxic and hazardous* substance), zinc sulfate, taurine, ascorbyl palmitate, calcium pantothenate, choline chloride, inositol, pyridoxine hydrochloride, thiamin hydrochloride, retinyl palmitate, cholecalciferol, dl-alpha tocopheryl acetate, and phytonadione. *See* Exhibit 1.

25.     The infant formula also contained potassium hydroxide – a synthetic, hazardous, and toxic compound.

26.     Plaintiff Segedie also purchased a number of Hain Celestial products falsely labeled as "ALL NATURAL" or as being a "natural formula," including but not limited to: Strawberry & Banana Toothpaste and Non-Petroleum Jelly – Fragrance Free.

27.     In deciding to purchase these products, Plaintiff Segedie saw that they were labeled "ALL NATURAL" or as being a "Natural Formula" and relied upon these representations in making her purchases. She reasonably believed that the products were all natural, as labeled, and the "Natural" representation was a significant reason for her purchases. She also saw, read, believed, and relied upon Hain Celestial's representations that

none of their products contained artificial substances.

28.     However, contrary to Hain Celestial's representation that these products were "natural" as labeled, they contained a startling number of synthetic ingredients, including panthenol, retinyl palmitate, and glyceryl behenate (a.k.a. tribehenin) and tocopheryl acetate. *See* Exhibit 1.

29.     Had Plaintiffs known at the time that the Falsely Labeled Products they purchased were not as promised but, instead, contained artificial and other prohibited ingredients, they would not have purchased the products.

30.     If Hain Celestial's products were reformulated such that its representations were truthful, Plaintiffs would consider purchasing Hain Celestial's products.

31.     Defendant The Hain Celestial Group, Inc. ("Hain Celestial") is incorporated in Delaware, with its principal place of business at 58 South Service Road, Melville, New York 11747.  Hain Celestial and its subsidiaries manufacture, market, distribute and sell natural and organic products under its brand names, including "Earth's Best."  Directly and through its agents, Hain Celestial has substantial contacts with and receives benefits and income from and through the State of California.

32.     Plaintiffs are unaware of the true names and capacities of the defendants sued herein as DOES 1 through 99, and, therefore, sue these defendants by fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously-named defendants when they are ascertained. Upon information and belief, plaintiffs allege that DOES 1 through 99 do business in New York and California.  Upon information and belief, Plaintiffs allege that at all relevant times each of DOES 1 through 99 is the online retailer, supplier, manufacturer, examiner, certifier, formulator, engineer, or reseller of the artificial ingredients, or

the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee, affiliate, assignee, successor-in-interest, alter-ego, shareholder, or representative of Hain Celestial, and was acting in such capacity in undertaking the actions herein complained of and alleged.

<u>SUBSTANTIVE ALLEGATIONS</u>

**HAIN CELESTIAL MARKETS ITSELF AS AN ORGANIC AND NATURAL PRODUCTS COMPANY**

33.     American consumers increasingly and consciously seek out "natural" and "organic" ingredients in their food, personal care, and household products.  Once a small niche market, natural and organic products are now sold in conventional retailers, and its sales continue to soar.

34.     Consumers value "organic" and "all natural" products for a myriad of reasons, including perceived benefits of avoiding disease, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.

35.     Hain Celestial "was founded in 1993 in recognition of the growing consumer desire for products produced without synthetic and chemical ingredients."  Hain Celestial Group 2011 Corporate Social Responsibility Report at 4.

36.     Hain Celestial carefully cultivates its image as a healthy, eco-friendly, worker-friendly brand — the kind of company whose label claims can be trusted.  Through its "Earth's Best" brand, Hain Celestial further markets itself as an expert source of information on infant and toddler health, providing advice on natural and organic ingredients.

37.     Hain Celestial stresses the value of organic and natural ingredients to parents of young children.

> We continue to remind consumers that eating natural minimally-processed foods is preferable to consuming processed foods and that preservatives and artificial ingredients intended to enhance flavors and colors should be avoided, especially with our children.

Hain Celestial 2010 Annual Report at 2.

38.     Over the past several years, Hain Celestial has defined itself as a "natural" and "organic" product company.  The cover pages of its Annual Reports aptly illustrate how Hain Celestial distinguishes itself from its competitors, and how it seeks to be valued in the marketplace.  For example, in 2009, its Annual Report summed up its identity:  "LIVING 100% NATURAL."  Hain Celestial 2009 Annual Report, Cover Page, attached as Exhibit 3.



39.     In 2010, its Annual Report cover page summed up its brand identity in one word: Natural.



40.     And its back cover used another word: Organic.



2010 Annual Report, Cover Page, Back Page, attached as Exhibit 3.

41.     Hain Celestial's business strategy is to acquire natural and organic product companies and product lines, integrate these brands under a single management team, and then employ uniform marketing, sales and distribution programs to achieve economies of scale and

enhanced product penetration. Its control over its brands ensure that strategic introductions of new products in one brand will complement existing product lines, *e.g.,* sales of its rice- or soy-milk brands will increase sales of its separate cereal brands, and sales of its Earth's Best body care products will increase sales of its infant formulas. *See, e.g.,* Exhibit 1 (side label of Organic and "All Natural" Teething Gel).

42.     Earth's Best was one such acquisition. Since its founding in 1985, Earth's Best made and sold infant and baby foods marketed as "organic" and/or "all natural." After being purchased by H.J. Heinz Co. in 1996, and then sold to Hain Celestial in 2000, Earth's Best expanded its product line to include baby care products, home care products, and children's food marketed with Sesame Street characters,.

43.     Hain Celestial labels and advertises almost all of its "Earth's Best" brand products in large, bold font as "ORGANIC" and/or as "ALL NATURAL." *See* Exhibit 1. It additionally represents that its products contain "no artificial flavors, colors or preservatives." *Id. See also* Hain Celestial 2009 Annual Report at 4-6, portions attached as Exhibit 3.

44.     Hain Celestial has profited handsomely as a result. Its net sales in the United States in fiscal 2012 were $991.6 million, an increase of $81.5 million, or 9.0%, from net sales of $910.1 million in fiscal 2011. Hain Celestial attributes its record sales on the fact that "consumers increasingly focus on health, wellness and nutrition." It also attributes its 9% increase in net sales to increased sales of Earth's Best products.

45.     Hain Celestial sees Earth's Best as a key brand in its portfolio, providing the "springboard for a lifetime of healthy eating" -- within the Hain Celestial brand family.

46.     Believing that innovation is critical to its "organic" and "natural" product lines, Hain Celestial spends significant funds on its research and development efforts. Using

innovations in ingredient science, its product developers (including microbiologists, nutritionists, food scientists, chefs and chemists) formulate new products and reformulate existing products.

47. Hain Celestial manufactures some product lines in its own facilities. For example, Hain Celestial manufactures the Earth's Best personal care products at its own facilities in Culver City, CA.

48. For other product lines, Hain Celestial contracts with third-party manufacturing facilities. Its quality assurance staff regularly audits these facilities, and requires them to meet Hain Celestial's own specifications. Its staff also routinely conducts on-site audits of ingredient vendors.

## HAIN CELESTIAL FALSELY REPRESENTS THAT CERTAIN
## PRODUCTS ARE ORGANIC

49. On the front of its packages, Hain Celestial prominently labels the majority of its "Earth's Best" products as "ORGANIC." This representation is false as to the many products that contain ingredients that federal law does not permit in organic products (collectively the "Falsely Labeled Organic Products").[1] *See* Exhibit 1.

50. The Falsely Labeled Organic Products are thus not "organic" under federal law, and labeling them as such is misleading and deceptive under state law.

51. The Falsely Labeled Organic Products include but are not limited to:

**Infant Formula**
Organic Infant Formula with DHA & ARA

---

[1] Hain Celestial has discontinued offering some of the Falsely Labeled Organic Products, has altered the packaging, has altered the ingredients, or has selectively marketed the products. Hain Celestial also regularly introduces new products that are also falsely labeled as "ORGANIC." The identity of these additional products will be ascertained through discovery, and these products are hereby included in the list of "Falsely Labeled Organic Products" at issue in this action.

Organic Soy Infant Formula with DHA & ARA
Organic Sensitivity Infant Formula with DHA & ARA

**Infants' Second Foods**

2nd Super Fruits
- Acai Grape Oatmeal Super Fruits
- Cherry Pear Brown Rice Super Fruits
- Yumberry Banana Barley Super Fruits

2nd Wholesome Breakfast
- Pear Apple Oatmeal
- Apple Yogurt Oatmeal
- Peach Pear Barley

2nd Wholesome Grains
- Apple Peach Oatmeal Yogurt
- Blueberry Banana Brown Rice Yogurt
- Banana Apricot Barley Yogurt

**Infant Puree Pouches**

1st Foods
- First Bananas
- First Pears

2nd Foods
- Apple Peach Oatmeal
- Apple Plum Kamut
- Banana Raspberry Brown Rice
- Pear Apricot Barley
- Banana Blueberry
- Orange Banana
- Peach Mango
- Sweet Potato Apple
- Butternut Squash Pear

3rd Foods
- Pear Carrot Apricot
- Pumpkin Cranberry Apple

**Sesame Street Snax**

- Veggie Crisps Canister
- Organic Pop Snax - Veggie Crisps
- Sweet Potato Cinnamon
- Sweet Potato Cinnamon Canister
- Apple Cinnamon Canister
- Blueberry Canister
- Graham Canister
- Peach Canister

**Sesame Street Crunchin' Blocks**
    Banana
    Honey Graham

**2% Reduced Fat Milk**
    Original
    Chocolate

**Sesame Street Breakfast**
    Yummy Tummy Instant Oatmeal - Maple & Brown Sugar
    Yummy Tummy Instant Oatmeal - Apples & Cinnamon
    On-the-Go O's Cereal - Honey Nut
    On-the-Go O's Cereal - Apple Cinnamon
    Frozen Mini Waffles - Homestyle
    Frozen Mini Waffles – Blueberry

**Sesame Street Meals**
    Soup - Elmo Noodlemania
    Soup - Elmo Tomato
    Soup - Elmo Vegetable
    Frozen Entrees - Elmo Pasta 'n Sauce with Carrots & Broccoli
    Mini Meals - Organic Elmo Cheese Ravioli
    Mini Meals - Organic Elmo Pasta & Sauce

**Sesame Street Snacks**
    Crunchin' Crackers - Veggie
    Crunchin' Crackers - Original
    Crunchin' Grahams - Honey Sticks
    Crunchin' Grahams - Chocolate
    Crunchin' Grahams - Cinnamon Sticks
    Letter of the Day Cookies - Very Vanilla Multipack
    Letter of the Day Cookies - Oatmeal Cinnamon
    Smiley Snacks - Vanilla
    Smiley Snacks - Banana
    Snackin' Fruit Hearts & Rings - Blueberry
    Snackin' Fruits Hearts & Rings - Banana
    Yogurt Rice Crisp Bars - Vanilla
    Yogurt Rice Crisp Bars – Banana

**Body Care**
    Calming Bubble Bath – Vanilla
    Cold Soothing Baby Wash – Eucalyptus & Tea Tree
    Diaper Relief Ointment – Aloe Vera & Vitamin E
    Extra Rich Therapy Crème – Calendula
    Sensitive Skin Lotion – Fragrance Free

Sensitive Skin Shampoo & Body Wash – Fragrance Free
Sleepytime Shampoo & Body Wash – Chamomile
Soothing Bubble Bath – Lavender
Soothing Lotion – Lavender
Soothing Shampoo & Body Wash – Lavender
Tear-Free Shampoo – Aloe Vera
Teething Gel – Non-Medicated

52.     All these products contain ingredients that federal law prohibits in organic products.  Such ingredients include, by way of example:

a.     ***Adenosine-5'-Monophosphate ("AMP"); cytidine-5'-monophosphate ("CMP"); disodium guanosine-5'-monophosphate ("GMP"); disodium inosine-5'-monophosphate ("IMP"); disodium uridine-5'-monophosphate ("UMP")).***     These five compounds are ***nucleotides***, the base molecules of ribonucleic acid (RNA) and deoxyribonucleic acid (DNA).  They are added to Earth's Best's "Organic" products, including its infant formulas.  Upon information and belief, the nucleotides added to the Falsely Labeled Organic Products are synthetically extracted from the RNA in yeast by enzymatic hydrolysis and synthetic filtration, hydrochloric acid. Human breast milk contains relatively high concentrations of four of the five nucleotides (cytidine, uridine, adenosine, and guanosine), but has little to no inosine, the fifth nucleotide in Earth's Best's "Organic" Milk-Based Infant Formulas.

b.     Nucleotides are not permitted in organic products.  7 C.F.R. §§ 205.105(c), 205.605.   In fact, the USDA specifically rejected applications to permit nucleotides to be added to organic infant formulas.

c.     The Food and Drug Administration ("FDA") has never affirmed any of the nucleotides as generally recognized as safe ("GRAS") as a food additive.  To date, no party has ever declared to the FDA that four of the nucleotides (CMP, GMP, IMP, and UMP) were safe as direct food ingredients.

d.   **Sodium Selenite** is a hazardous substance. *See, e.g.,* 40 C.F.R. §§ 116.4, 302.4. The FDA allows it to be added to animal feed, 21 C.F.R. § 573.920, but has not determined it to be safe to be added to foods for human consumption. Even at very low doses, animal studies show it has negative effects on the respiratory, gastrointestinal, cardiovascular, and metabolic systems, negatively impacts the liver, and has negative broad systemic effects. It is not permitted to be added to products labeled as "organic." 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial has added it to the Falsely Labeled Organic Products, including its Earth's Best "Organic" Infant Formulas. *See* Exhibit 1.

e.   **Taurine**, a.k.a. 1, 2-aminoethanesulfonic acid, is not permitted in products labeled as "organic." 7 C.F.R. §§ 205.105(c), 205.605. In fact, the National Organic Standards Board specifically rejected applications to permit taurine to be added to organic foods. Even at very low doses, animal studies show the ingredient negatively impacts the brain and nervous system, metabolism, and cardiovascular system. Commercially available taurine is synthetically produced by reacting ethylene oxide with aqueous sodium bisulfate, reacting aziridine with sulfurous acid, or reacting monoethanolamine, sulfuric acid, and sodium sulfite. The FDA has not affirmed taurine to be safe in foods. Nonetheless, Hain Celestial adds taurine to its Earth's Best "Organic" Infant Formulas. *See* Exhibit 1.

f.   **Docosahexaenoic acid single cell oil**, a.k.a. "DHASCO," (labeled as "Cryphecodinium Cohnii Oil (Docosahexaenoic Acid)" or "DHA" in Earth's Best's "Organic" Infant Formula) is not permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.270; 205.605. Martek Biosciences Corp. produces crypthecodinium cohnii oil as a by-product from the marine dinoflagellate *C. cohnii*, a nonagricultural microorganism. 7 C.F.R. §§ 205.2; 205.605. Such by-products from nonagricultural microorganisms (like DHASCO) are not permitted in organic

products. 7 C.F.R. §§ 205.105(c), 205.605. Martek Biosciences Corp. uses hexane (a volatile synthetic solvent and toxic pollutant) to extract DHASCO from unicellular microalgae, and adds ascorbyl palmitate (a synthetic substance) to the final byproduct for oxidative stability. As much as 77% of the final DHASCO contains other triglycerides, including: myristic acid (13-20%); palmitic acid (12-25%); oleic acid (10-25%), lauric acid (2-6%), and capric acid (1%). None of these compounds are permitted in organic products. 7 C.F.R. § 205.605.

    g. ***Arachidonic acid single cell oil,*** a.k.a. "ARASCO," (labeled as "Mortierella Alpine Oil (Arachidonic Acid)" or "ARA" in Earth's Best's "Organic" Infant Formula) is not permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Mortierella alpine oil is a by-product from *M. alpina*, a soil fungus, and therefore not permitted in organic products. 7 C.F.R. §§ 205.2, 205.605. Like DHASCO, ARASCO is produced using hexane extraction and ascorbyl palmitate to preserve oxidative stability. The product is therefore not permitted in organic products. 7 C.F.R. §§ 205.105, 205.270. As much as 64% of the final ARASCO ingredient contains other compounds, including oleic acid (~16–23%), palmitic acid (~7–10%), stearic acid (~7–10%), linoleic acid (~6–8%), gamma-linoleic acid (~3%), dihomo-gamma-linoleic acid (~1–3%), and behenic acid (~2%). None of these compounds are permitted in organic products. 7 C.F.R. § 205.605.

    h. ***L-carnitine*** is not permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.605. In fact, the USDA specifically rejected applications to permit l-carnitine to be added to organic infant formulas. Nonetheless, Hain Celestial adds the substance to its so-called "organic" infant formulas. L-carnitine is usually synthesized using epichlorhydrine or trimethylamine, and racemate separation by fractionated crystallization or other methods. L-carnitine can also be obtained from industrially-produced D-mannitol. L-carnitine can also be

produced using commercially available biosynthetic methods via microorganisms (e.g., *Escherichia coli, Proteus mirabilis*) cultivated in a bioreactor with crotonobetaine, crotonobetaine salts, or its derivatives.

       i.     **Dl-alpha tocopheryl acetate** is not permitted in organic products. It is synthetically produced by condensing racemic isophytol with trimethyl hydroquinone. *See* 21 C.F.R. § 184.1890; 7 C.F.R. §§ 205.105(c), 205.605(b) (permitting tocopherols derived only from rosemary extracts or vegetable oils). The FDA has limited the use of dl-alpha tocopherols, and they are generally recognized as safe only in bacon products or to inhibit nitrosamine formation. 21 C.F.R. § 184.1890(c). Nonetheless, Hain Celestial adds dl-alpha tocopheryl acetate to a number of its products, including its "organic" infant formulas.

       j.     **L-methionine** is also not currently permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.605. There are no commercial sources of nonsynthetic L-methionine. According to the USDA, most L-methionine is produced from DL-methionine (a synthetic substance, 7 C.F.R. § 205.603), which is itself produced by reacting acrolein with methyl mercaptan; by reacting propylene, hydrogen sulfide, methane, and ammonia to make the intermediates acrolein, methylthiol, and hydrocyanic acid; by the Strecker synthesis method with α-methylthiopropionaldehyde as the aldehyde; or by reacting 3-methylmercaptopropionaldehyde with ammonia, hydrogen cyanide, and carbon dioxide. The resulting DL-methionine is further processed to produce L-methionine by using optical resolution, resulting in separation into the D- and L- enantiomers, or by acetylation of synthetic DL-methionine and subsequent enzymatic selective deacetylation of the N-acetylated L-methionine.

       k.     **Ascorbyl palmitate** is a chemical preservative. 21 C.F.R. § 182.3149. It is not permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial

adds ascorbyl palmitate to its so-called "organic" infant formulas, despite the fact that the USDA specifically rejected applications to permit ascorbyl palmitate to be added to such products. Ascorbyl palmitate is prepared by condensing palmitoyl chloride and ascorbic acid in the presence of a dehydrochlorinating agent such as pyridine. It can also be produced by esterifying ascorbic acid with sulfuric acid, and then with palmitic acid. Other patented processes use dimethylformamide, dimethyl sulfoxide, or hydrogen fluoride instead of sulfuric acid.

l.    ***Calcium pantothenate*** is synthetically prepared from isobutyraldehyde, a synthetic flavoring substance and toxic chemical, 21 C.F.R. § 184.1212; 40 C.F.R. § 372.65, and formaldehyde, a hazardous substance, 40 C.F.R. § 116.4, via 1,1-dimethyl-2-hydroxy-propionaldehyde and pantolactone. 21 C.F.R. § 184.1212. It is not allowed in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic," including its infant formulas. Calcium pantothenate ($C_{18}H_{32}CaN_2O_{10}$), represented graphically as:



is not the same substance as vitamin B5 ($C_9H_{17}NO_5$), represented graphically as:

m.   ***Choline bitartrate*** is a synthetic substance produced by reacting trimethylamine with ethylene oxide followed by treatment with tartaric acid. Trimethylamine and tartaric acid are both hazardous substances. 40 C.F.R. § 116.4. Choline bitartrate is not the same substance as choline, an ingredient permitted in organic non-milk-based infant formulas. Choline bitartrate ($C_9H_{19}NO_7$) is a synthetic variation of choline ($C_5H_{14}NO$), a nutrient naturally found in grains, nuts, and beans. It is not allowed in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic," including its infant formulas.

n.   Similarly, ***choline chloride*** is a synthetic substance produced by reacting trimethylamine and concentrated hydrochloric acid (both hazardous substances), followed by treatment with ethylene oxide under pressure. Choline chloride ($C_5H_{14}ClNO$) is also not the same substance as the nutrient choline ($C_5H_{14}NO$). While choline chloride is permitted in soy-based infant formula, it is prohibited in other products labeled as organic. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic," including its Earth's Best's "Organic" Milk-Based Infant Formula.

o.   ***Cholecalciferol*** is also a synthetic compound. 7 C.F.R. § 205.601. Cholecalciferol can be produced from fish liver oils, but Earth's Best's labels do not indicate that any ingredient was derived from seafood. The other method of production requires ultraviolet irradiation of ergosterol isolated from yeast and related fungi and purified by crystallization, or ultraviolet irradiation of 7-dehydrocholesterol produced from cholesterol. 21 C.F.R. § 184.1950(a). Cholecalciferol is not allowed in organic products. 7 C.F.R. § 205.105(f). Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic," including its

infant formulas.

p. ***Cupric sulfate*** is not permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic," including its infant formulas. It is also a synthetic substance. 7 C.F.R. § 205.601(a)(3). It is produced by dissolving oxidized copper in sulfuric acid before purification. 21 C.F.R. § 184.1261.

q. ***Folic acid*** is the synthetically-created chemical N-[4-[[ (2-amino-1,4-dihydro-4-oxo-6-pteridinyl)methyl]amino]benzoyl]-L -glutamic acid. 21 C.F.R. § 172.345(a). Folic acid is permitted in organic infant formulas, but is not permitted in other products labeled as organic. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic." Folic acid differs from natural folate in numerous respects, including shelf-life and bio-availability. Even the molecular structure of folic acid is different from natural folate. The molecular structure of folic acid is represented graphically as:



Folic acid

By contrast, natural folates have different chemical structures, represented graphically as:

Tetrahydrofolate



10-Formyltetrahydrofolate



5,10-Methylenetetrahydrofolate

5-Methyltetrahydrofolate

   r. ***Niacinamide*** is the chemical 3-pyridinecarboxylic acid amide (nicotinamide). 21 C.F.R. § 184.1535. It is a synthetic substance. It is usually prepared by esterifying nicotinic acid with methanol, followed by ammonolysis. It can also be produced by passing ammonia gas (a hazardous substance) into molten nicotinic acid or from partial hydrolysis of 3-cyanopyridine. While niacinamide is permitted in organic infant formulas, it is not permitted in the other products Hain Celestial labels as organic. 7 C.F.R. §§ 205.105(c), 205.605. Niacinamide ($C_6H_6N_2O$), represented graphically as:



is not the same substance as niacin (vitamin B3, $C_6H_5NO_2$), represented graphically as:



s. ***Phytonadione*** is 2-methyl-3-phytyl-1, 4-naphthoquinone, synthetically produced from 2-methyl-1,4-naphthoquinone and phytol, or from the partial syntheses from menadione and phytol, using a pi-allylic nickel(I) complex. Phytonadione is not permitted in organic products. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic," including its infant formulas.

t. Phytonadione is not the same substance as vitamin K (phylloquinone), a nutrient permitted in organic infant formulas. 21 C.F.R. § 107.100. Phylloquinone (vitamin K1), IUPAC Standard InChIKey: MBWXNTAXLNYFJB-LKUDQCMESA-N, has different stereochemistry bonds than the synthetic phytonadione in Earth's Best's products. Phylloquinone has the following structure:



The synthetic substance in Earth's Best's Falsely Labeled Products, phytonadione, IUPAC Standard InChIKey: MBWXNTAXLNYFJB-JHBCSKSVSA-N, has different stereochemistry bonds:



u.      *Pyridoxine hydrochloride* is a synthetic compound not permitted in organic products. 7 C.F.R. §§ 205.105(c), 205.605; 21 C.F.R. § 184.1676.   Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic."  Pyridoxine hydrochloride ($C_8H_{12}ClNO_3$) is not the same substance as vitamin B6 (pyridoxine) ($C_8H_{11}NO_3$).  Pyridoxine hydrochloride is synthesized by the condensation of  cyanoacetamide with ethoxyacetylacetone in the presence of piperidine, 2-butanone-1,4-diol & alpha-methyliminopropionitrile and/or other substances. Alternatively, it is synthesized from ethyl pyruvate, ethyl glycinate, & 1,4-diethoxy-2-butanone, and other substances.

v.      *Thiamin hydrochloride* is a synthetic compound prepared by linking preformed thiazole and pyrimidine ring systems.  21 C.F.R. § 184.1875.  It is not permitted in organic products.  7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a

number of its products labeled as "organic." Thiamin hydrochloride is chemically distinct from thiamine (vitamin B1), which has the molecular formula $C_{12}H_{17}ClN_4OS$. By contrast, thiamin hydrochloride is $C_{12}H_{18}Cl_2N_4OS$.

w.   ***Thiamine mononitrate*** ($C_{12}H_{17}N_5O_4S$) is the mononitrate salt of thiamine. It is chemically distinct from thiamine (vitamin B1), $C_{12}H_{17}ClN_4OS$. Thiamine mononitrate is a synthetic substance prepared from thiamine hydrochloride (also synthetic) by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid. 21 C.F.R. § 184.1878. The nitrates present in thiamine mononitrate may accumulate in the kidneys, inducing kidney stones or cellular death. Thiamine mononitrate is not allowed in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic."

x.   ***Retinyl palmitate***, (also listed in Earth's Best's private label products as "vitamin A palmitate") is prepared by esterifying retinol with palmitic acid. 21 C.F.R. § 184.1930(a)(3). It is a synthetic substance not permitted in organic products. 7 CFR §§ 205.105(c), 205.605. Retinyl palmitate, $C_{36}H_{60}O_2$, represented graphically as:

$H_3C$

$H_3C$

$H_3C$
$H_3C$ $CH_3$

is chemically different from the natural vitamin A existing in foods, retinol, $C_{20}H_{30}O$, represented graphically as:

OH

$H_3C$

$H_3C$

$H_3C$
$H_3C$ $CH_3$
$CH_3$

y.      ***Manganese sulfate*** is a synthetic compound.  7 C.F.R. § 205.601(j)(6)(ii).

It is obtained by reacting manganese compounds with sulfuric acid (a hazardous substance).  It is

also obtained as a byproduct of the manufacture of hydroquinone (a toxin).  Other manufacturing

processes include the action of sulfur dioxide on a slurry of manganese dioxide in sulfuric acid, and the roasting of pyrolusite ($MnO_2$) ore with solid ferrous sulfate (a hazardous substance) and coal, followed by leaching and crystallization. 21 C.F.R. § 184.1461. Manganese sulfate is not allowed in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic."

z. ***Zinc sulfate*** and ***zinc sulfate monohydrate*** are hazardous and synthetic substances. 7 C.F.R. § 205.601(j)(6)(ii); 40 C.F.R. § 116.4. They are produced by reacting zinc oxide with sulfuric acid (also a hazardous compound). They are not allowed in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic."

aa. ***Potassium bicarbonate*** is a synthetic acidity regulator. Additive number E501; 7 C.F.R. § 205.601(i)(9). It is made by treating a solution of potassium hydroxide or potassium carbonate (both synthetic substances, 7 C.F.R. § 205.605(b)) with carbon dioxide. 21 C.F.R. § 184.1613. It is not allowed in organic products. 7 C.F.R. §§ 205.105(c), 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic."

bb. While ***inositol*** is permitted in soy-based infant formulas, it is prohibited from other organic products. 7 C.F.R. §§ 205.105(c), 205.605; 21 C.F.R. § 107.100. Nonetheless, Hain Celestial adds it to its "organic" milk-based infant formulas. According to the USDA, nonsynthetic production methods of inositol are not available on a commercial scale. Instead, inositol is produced by extracting phytic acid (inositol-hexaphosphate) from plants after soaking in a dilute acid solution, such as hydrochloric acid or sulfuric acid, creating phytin (inositol-hexaphosphate salt). The phytin is synthetically converted to inositol by hydrolysis with a strong sulfuric acid solution, and then purified with a reagent like barium to remove the

sulfuric acid, phosphoric acid, and calcium or magnesium sulfate. Alternatively, it can be prepared from phytin using ammonium salts such as ammonium sulfate, ammonium chloride, ammonium nitrate, ammonium acetate, or ammonium phosphate for hydrolysis.

cc. In its synthetic form, **beta-carotene** is not allowed in organic products. In fact, in October 2012, the USDA specified that beta-carotene is not permitted in organic infant formulas. Nonetheless, Hain Celestial adds beta-carotene to its so-called "organic" infant formulas.

dd. Beta-carotene is not the same substance as vitamin A. Vitamin A (retinol) is $C_{20}H_{30}O$, represented graphically as:



Beta-carotene, by contrast, is $C_{40}H_{56}$, represented graphically as:

ee. Beta-carotene also operates on the human body differently than natural vitamin A. For example, some studies indicate that beta-carotene supplementation increases the probability of lung cancer in cigarette smokers.

ff. ***Magnesium phosphate*** is prepared commercially by treating a solution of magnesium sulfate with disodium phosphate. 21 C.F.R. § 184.1434(a). Magnesium sulfate is a synthetic flavor enhancer. 7 C.F.R. §§ 205.601, 205.603; 21 C.F.R. § 184.1443(c)(1). Magnesium phosphate is not permitted in organic products. 7 C.F.R. § 205.605. Nonetheless, Hain Celestial adds it to a number of its products labeled as "organic."

gg. Hain Celestial adds other prohibited ingredients to its Falsely Labeled Organic Products, including, by way of example: ***sodium benzoate, potassium sorbate, glyceryl stearate SE, stearic acid, cetyl alcohol, benzyl alcohol, sodium coco sulfate, lauryl lactyl lactate, sodium sulfate, glyceryl behenate, glyceryl oleate, gamma-decalactone, glyceryl stearate citrate, stearyl alcohol, and polyglycerol-10 laurate***. None of these substances are permitted in organic products. 7 C.F.R. § 205.605.

53. Further inducing consumers to rely on the deceptive representation that the

Falsely Labeled Organic Products are "ORGANIC," Hain Celestial did not label other Earth's Best products as "ORGANIC," leading consumers to believe that Hain Celestial carefully studied all the Earth's Best products' ingredients to ensure that the "ORGANIC" claim is made only on those products that are truly organic.

## HAIN CELESTIAL FALSELY LABELS MANY OF ITS
## PRODUCTS AS "ALL NATURAL"

54.     On the front of its packages, Hain Celestial prominently labels many of its "Earth's Best" products as "ALL NATURAL" or as being "Natural." This representation is false as to the many products that contain synthetic ingredients.

55.     Representing that a product is "natural" or contains "nothing artificial" is a statement of fact.

56.     Hain Celestial defines what it means by "natural" in several federal filings. One year, it even trumpeted its definition on the *cover* of its Annual Report:



**nat·u·ral** (nach'ər əl) *adj.* [[OFr < L *naturalis*]] **1** minimally processed **2** containing no artificial colors or flavors, and no preservatives **3** never any hydrogenated oils or *trans* fat

Hain Celestial 2006 Annual Report, Cover Page, attached as Exhibit 3.[2]

---

[2] The cover page of the 2006 Annual Report defines "natural" as:

> **nat·u·ral** (nach'er el) *adj.* [[OFr < L *naturalis*]] **1** minimally processed **2** containing no artificial colors or flavors, and no preservatives **3** never any hydrogenated oils or *trans* fat

Hain Celestial 2006 Annual Report, Cover Page, attached as Exhibit 3.

57.     Hain Celestial repeated its definition of "natural" again in signed federal filings in 2010 and 2011:

> Natural products are minimally processed, largely or completely free of artificial ingredients, preservatives, and other non-naturally occurring chemicals, and are not genetically modified and as near to their whole natural state as possible.

Hain Celestial 2011 Annual Report at 2; Hain Celestial 2010 Annual Report at 2.

58.     The term "natural" has also been at least partially defined by federal agencies and regulations. The FDA has defined the outer boundaries of the use of the term "natural" by stating that a product is not natural if it contains synthetic or artificial ingredients.[3] Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed."

59.     According to federal regulations, an ingredient is synthetic if it is:

> formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

7 C.F.R. § 205.2.

60.     A reasonable consumer's understanding of the term "natural" and "nothing artificial" comports with federal law and Hain Celestial's proffered definition. A reasonable consumer would expect that when Hain Celestial promises that certain of its Earth's Best products are "natural" or "all natural," the products' ingredients are "natural" as defined by

---

[3] *See* FDA Consumer Health Information, Food Label Helps Consumers Make Healthier Choices, available at www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM199361.pdf.

federal agencies, which govern Hain Celestial, as well as by Hain Celestial's own published definition of "natural."

61.     Hain Celestial's representation that certain of its products are "Natural" or "ALL NATURAL" is false.  In fact, many of its products contain one or more artificial ingredients (collectively, the "Falsely Labeled Natural Products").[4]  *See* Exhibit 1.

62.     The Falsely Labeled Natural Products are thus not "natural," and labeling them as such is misleading and deceptive.

63.     The Falsely Labeled Natural Products include but are not limited to:

**Sesame Street Breakfast**
    Frozen Mini Waffles - Homestyle
    Frozen Mini Waffles – Blueberry
    Frozen French Toast Sticks – Homestyle

**Sesame Street Meals**
    Frozen Whole Grain Pizza – Cheese
    Frozen Mini Ravioli – Cheese
    Frozen Entrees - Elmo Pasta 'n Sauce with Carrots & Broccoli
    Frozen Entrees - Elmo Mac 'n Cheese with Carrots & Broccoli

**Baby Care and Home Care**
    Mineral-Based Sunblock SPF30+
    Tangle Taming Shampoo
    TOTS Tangle Taming Leave-In Spray- Fruit Punch
    All Purpose Nursery Cleaner
    TOTS Water Play Sunblock
    Strawberry & Banana Toothpaste
    Teething Gel -- Non-Medicated
    Non-Petroleum Jelly – Fragrance Free

64.     These products all contain artificial ingredients, including but not limited to:

---

[4] Hain Celestial has discontinued offering some of the Falsely Labeled "Natural" Products, has altered the packaging, has altered the ingredients, or has selectively marketed the products.  Hain Celestial also regularly introduces new products that include artificial ingredients.  The identity of these additional products will be ascertained through discovery, and these products are hereby included in the list of "Falsely Labeled 'Natural' Products" at issue in this action.

a. Artificial flavor enhancers or flavoring agents, including but not limited to: *potassium chloride* and *sodium alginate*.

b. Synthetic preservatives, including but not limited to: *sodium phosphate, calcium phosphates* (including *tricalcium phosphate* and *monocalcium phosphate*), *ascorbic acid*, *ascorbyl palmitate,* and *tocopherols*.

c. Other artificial additives, including but not limited to: *ammonium bicarbonate* (also a hazardous substance), *ferric orthophosphate* (which is also banned from being added to foods in the European Union), *calcium hydroxide, potassium citrate, calcium chloride, calcium citrate, ferrous sulfate, ferrous sulfate monohydrate, glycerin, magnesium chloride, potassium acid tartrate, potassium hydroxide, sodium acid pyrophosphate, sodium citrate, xanthan gum, adenosine-5'-monophosphate; cytidine-5'-monophosphate; disodium guanosine-5'-monophosphate; disodium inosine-5'-monophosphate; disodium uridine-5'-monophosphate; sodium selenite; taurine, docosahexaenoic acid single cell oil; arachidonic acid single cell oil; l-carnitine; dl-alpha tocopherol; l-methionine; ascorbyl palmitate; calcium pantothenate; choline bitartrate; choline chloride; cholecalciferol; cupric sulfate; folic acid; niacinamide; phytonadione; pyridoxine hydrochloride; thiamin hydrochloride; thiamine mononitrate; retinyl palmitate; manganese sulfate; zinc sulfate; zinc sulfate monohydrate; potassium bicarbonate; inositol;* and *magnesium phosphate*.

65. Hain Celestial promises its customers that its Earth's Best products contain no artificial colors. *See* Exhibits 1, 3. However, by way of example only, the following artificial colors appear in Earth's Best's products: *calcium carbonate, zinc oxide*, and others.

66. Earth's Best Personal Care and Home Care products fare no better. Numerous products are labeled as "Natural" yet contain a significant amount of synthetic and artificial

ingredients, including but not limited to: *benzyl alcohol, dimethicone, ethylhexyl palmitate, magnesium sulfate, panthenol, phenoxyethanol, polyglyceryl-3 ricinoleate, polyhydroxystearic acid, polyglycerol-10 laurate, polysorbate 20, potassium hydroxide, retinyl palmitate, sodium benzoate, sodium lauroyl sarcosinate,* and *sorbitan sesquioleate*.

67.    For example, *potassium hydroxide* is classified as synthetic by federal regulations. 7 C.F.R. § 205.605(b). It is obtained commercially from the electrolysis of potassium chloride. 21 C.F.R. § 184.1631(a). According to federal regulations, it is a highly toxic and hazardous compound that, even on short exposure, could cause serious temporary or residual injury. It is a severe respiratory irritant and corrosive to eyes and skin. It may also cause gene mutations that could result in cancer. Nonetheless, Hain Celestial adds potassium hydroxide to its "Natural" All-Purpose Cleaner, which it advertises as an "All Purpose Nursery Cleaner," and to its "organic" infant formulas. *See* Exhibit 1.

68.    *Phenoxythenol* is a synthetic preservative obtained by treating phenol with ethylene oxide in an alkaline medium. It is a toxic skin irritant that can have adverse effects on the central and peripheral nervous systems. It can be absorbed into the body by inhalation of its aerosol and through the skin. Nonetheless, Hain Celestial adds phenoxythenol to its "All Natural Mineral Sunscreen." *See* Exhibit 1.

69.    As a few more examples, *panthenol* is synthetically prepared by adding propanolamine to optically active alpha,gamma-dihydroxy-beta,beta-dimethylbutyrolacton. *Benzyl alcohol* is produced by reacting sodium or potassium carbonate on benzyl chloride. It is a skin and eye irritant that is classified as synthetic by federal regulations and industry associations. And *dimethicone* is a polydimethylsiloxane obtained by hydrolysis and polycondensation of dichlorodimethylsilane and chlorotrimethylsilane.

70. Hain Celestial has concealed the nature, identity, source, and/or method of preparation of additional ingredients, which may also be artificial ingredients. Thus, discovery is necessary to uncover the true nature of other ingredients in Earth's Best's products.

71. For example, Hain Celestial injects "***natural flavor***" in some of its Earth's Best products, concealing from consumers the identity, source, or nature of these ingredients. While "natural flavors" must be *derived* from a "spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof," it remains unknown whether the processing used to derive the "flavor" from the natural source renders the final ingredient so heavily processed that it can no longer be considered to be a "natural" ingredient.

72. Hain Celestial also falsely, misleadingly, and deceptively represents that an ingredient in its Earth's Best products is the same as a specific naturally-occurring substance, when, in fact, the ingredient is chemically distinct, compounding the falsity of their misrepresentations.

73. For example, Hain Celestial falsely represents that some of the Falsely Labeled Products contain "pyridoxine hydrochloride (vitamin B6)," though the substance is not vitamin B6, has a different molecular structure from vitamin B6, and is not a vitamin. Pyridoxine hydrochloride ($C_8H_{12}ClNO_3$) is chemically and molecularly distinct from vitamin B6 (pyridoxine) ($C_8H_{11}NO_3$).

74. Hain Celestial knows that consumers believe that natural vitamins have better absorption rates and/or are otherwise superior to synthetic vitamin supplements.

## HAIN CELESTIAL'S PRODUCTS CONTAIN INGREDIENTS IT PROMISES
## CONSUMERS WILL NOT FIND IN ANY OF ITS PRODUCTS

75.     Hain Celestial's condemnation of artificial additives is not just an aspirational goal. Hain Celestial explicitly promises that consumers won't find artificial ingredients in any of its products. *See, e.g.,* Hain Celestial 2009 Annual Report at 4, attached as Exhibit 3.

76.     Explaining the "ABCs of Natural," Hain Celestial promises that consumers won't find artificial ingredients in its products. Hain Celestial defines "artificial" as "[l]acking in natural quality, man-made."





Hain Celestial 2009 Annual Report at 4, attached as Exhibit 3.

77.     Hain Celestial then goes on to define nitrates and sodium benzoate, promising that these ingredients also do not appear in any of its products.



*Id.* at 6.[5]

78.    Contrary to its representations, the Falsely Labeled Products all contain artificial ingredients.  Additionally, nitrates and sodium benzoate appear in many of its products.  *See* Exhibit 1.

### THE REPRESENTATIONS ARE FALSE, DECEPTIVE, AND MISLEADING

79.    Acting through its Earth's Best brand, Hain Celestial's conduct deceived and/or was likely to deceive the public.  Consumers were deceived into believing that the listed ingredients are not artificial, are "natural," and/or are permitted in products labeled "organic." Instead, these ingredients are artificial.  Some are also known or suspected toxins, carcinogens, and/or environmental hazards, and are not reasonably expected by consumers to be added to the products.

80.    Consumers would not know the true nature of the ingredients merely by reading the ingredient label.  Discovery of the true nature of the ingredients requires knowledge of chemistry and federal regulations beyond that of the average reasonable consumer.

---

[5] Its 2009 Annual Report states:
   The A-B-Cs of Natural
   Some of the most common ingredients you **won't** find in Hain Celestial products.
   A.  **A**rtificial.  Lacking in natural quality, man-made.  Most commonly associated with flavor, color, and preservatives.
   …
   N.  **N**itrates/Nitrites.  Commonly used as preservatives.  Although safe when occurring in nature, when processed and added to foods, they may be harmful to your health.
   S.  **S**odium Benzoate.  A common artificial preservative that may form carcinogenic compounds when combined with other food ingredients.

Hain Celestial 2009 Annual Report at 4, 6, attached in Exhibit 3.

## HAIN CELESTIAL'S DECEPTIVE AND MISLEADING OMISSIONS

81.     Acting through its Earth's Best brand, Hain Celestial deceptively and misleadingly conceals other material facts about the Falsely Labeled Organic Products and the Falsely Labeled Natural Products (collectively, "Falsely Labeled Products"), including:

     a.     the true nature of the Falsely Labeled Products' ingredients;

     b.     the identity, source, or nature of the ingredients identified as "natural flavors," "natural flavoring," and/or "flavoring;"

     c.     that the Falsely Labeled Products contain artificial substances, synthetic substances; substances that are synthetically manufactured, or are produced or processed using synthetic ingredients, artificial ingredients, toxins, carcinogens, pollutants, genetically modified organisms, and/or hazardous substances;

     d.     that the Falsely Labeled Products are not "natural" and/or not "organic;"

     e.     that the Falsely Labeled Products are not what a reasonable consumer would consider to be "natural" and/or "organic;"

     f.     that the Falsely Labeled Product did not contain ingredients claimed, such as the vitamins claimed.

82.     Plaintiff Segedie, by and through her attorneys, discovered Hain Celestial's wrongs in January 2013 through investigation of the production processes of the ingredients and the packages of the Falsely Labeled Products.  Plaintiff Shneyder, by and through his attorneys, discovered Hain Celestial's wrongs in June 2014 through investigation of the production processes of the ingredients and the packages of the Falsely Labeled Products.  Plaintiffs and the members of the Class are not at fault for failing to discover Hain Celestial's wrongs earlier, and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

83.     To this day, Hain Celestial continues to conceal and suppress the true nature, identity, source, and method of production of some of the ingredients in the Falsely Labeled Products.

84.     The production process Hain Celestial uses for these ingredients is known only to it.  Hain Celestial has not disclosed such information to Plaintiffs and the Class members.  These facts are not ascertainable and are still not known to Plaintiffs, the Class members, and reasonable consumers.  Hain Celestial's concealment tolls the applicable statute of limitations.

## HAIN CELESTIAL KNEW THE REPRESENTATIONS WERE FALSE

85.     Hain Celestial holds itself out to the public as a trusted expert in the natural and organic products arena.  Acting through its Earth's Best brand, Hain Celestial has also retained expert nutritionists, pediatricians, and other scientists and has spent much time and money in marketing its expertise in organic and natural foods and products for infants and young children.

86.     Hain Celestial knew what representations it made regarding the Falsely Labeled Products.  It also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages.

87.     Hain Celestial is governed by and knows the federal regulations that control the labeling of the Falsely Labeled Products, and thus was aware that many of the ingredients are not permitted in organic products, have been federally declared to be synthetic substances, and/or require extensive processing to be used as an ingredient.

88.     In April 2013, Plaintiffs' counsel provided Hain Celestial with all the material allegations included in this Complaint.  Hain Celestial was thus specifically notified that its products labeled as "organic" contained ingredients not permitted in organic products, and that its products labeled as "natural" contained synthetic ingredients.

89.     Hain Celestial thus knew all the facts demonstrating that its Falsely Labeled Products contain artificial ingredients, ingredients prohibited in organic products, and/or ingredients it promises are not in its products.  Hain Celestial thus knew that the Falsely Labeled Products are falsely labeled.

## HAIN CELESTIAL INTENDED FOR CONSUMERS TO RELY ON ITS MISREPRESENTATIONS

90.     Acting through its Earth's Best brand, Hain Celestial made the false, deceptive, and misleading representations and omissions, intending for Plaintiffs and the Class members to rely upon these representations and omissions in purchasing one or more of the Falsely Labeled Products.

91.     In making the false, misleading, and deceptive representations and omissions at issue, Hain Celestial knew and intended that consumers would purchase the Hain Celestial products when consumers would otherwise purchase a competing product or employ an alternate regimen (such as breastfeeding instead of using Earth's Best infant formulas or using a hat for sun protection instead of using Earth's Best sunscreen products).

92.     In making the false, misleading, and deceptive representations and omissions at issue, Hain Celestial also knew and intended that consumers would pay a premium for natural products, organic products, products that are free of artificial additives and other ingredients listed in its "ABCs of Natural" list, furthering Hain Celestial's private interest of increasing sales of its products and decreasing the sales of the all-natural and/or organic products that are truthfully marketed by its competitors.

93.     Hain Celestial knows that consumers prefer organic and natural products.  Hain Celestial knows that consumers will pay a premium for organic and natural products or would

not purchase packaged goods at all unless they were organic and/or natural. *See, e.g.,* Hain Celestial 2006-2012 Annual Reports.

94. Similarly, independent surveys confirm that consumers will purchase more organic or natural products than conventional products, pay a premium for organic products, and pay an even greater premium for natural products.

## CONSUMERS REASONABLY RELIED ON HAIN CELESTIAL'S
## MISREPRESENTATIONS

95. Hain Celestial believes its message has been communicated to its customers so well that it ascribes its organic and natural products offerings as the basis for consumers' decision to buy Earth's Best products.

96. Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food, personal care, or household products.

97. When Plaintiffs and the Class members purchased the Falsely Labeled Products, Plaintiffs and the Class members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed, as detailed above.

98. These misrepresentations were uniform and were communicated to Plaintiffs and every other member of the Class at every point of purchase and consumption.

99. Plaintiffs and the Class members were among the intended recipients of Hain Celestial's deceptive representations and omissions.

100. Plaintiffs and the Class members reasonably relied to their detriment on Hain Celestial's misleading representations and omissions.

101. Hain Celestial's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiffs, the

Class members, reasonable consumers, and the general public.

102.    Hain Celestial's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Hain Celestial's misleading and deceptive representations and omissions may be presumed.

103.    Hain Celestial made the deceptive representations and omissions with the intent to induce Plaintiffs and the Class members to purchase the Falsely Labeled Products. Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed.

104.    Hain Celestial's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Hain Celestial's conduct and the injuries sustained by Plaintiffs and the Class members.

## HAIN CELESTIAL'S WRONGFUL CONDUCT CAUSED PLAINTIFFS' INJURY

105.    As an immediate, direct, and proximate result of Hain Celestial's false, misleading, and deceptive representations and omissions, Hain Celestial injured Plaintiffs and the Class members in that they:

a.    paid a sum of money for a product that was not as represented;

b.    paid a premium price for a product that was not as represented;

c.    were deprived the benefit of the bargain because the Falsely Labeled Products they purchased were different from what Hain Celestial warranted;

d.    were deprived the benefit of the bargain because the Falsely Labeled Products they purchased had less value than what was represented;

e.       did not receive a product that measured up to their expectations as created by Hain Celestial;

f.       used or ingested (or caused their children to ingest) a substance that was other than what was represented;

g.       used or ingested (or caused their children to ingest) a substance that Plaintiffs and the members of the Class did not expect or consent to;

h.       used or ingested (or caused their children to ingest) a product that was artificial, synthetic, or otherwise unnatural;

i.       without their knowing consent, used or ingested (or caused their children to ingest) a substance that is generally harmful to their health or their children's health;

j.       without their knowing consent, used or ingested (or caused their children to ingest) a substance that is, contains, or is produced by a known or suspected toxin, carcinogen, hazardous substance, poses health or environmental risks, or otherwise is harmful to the environment and/or the factory workers that produce or process such substances;

k.       used or ingested (or caused their children to ingest) a substance that was of a lower quality than what Hain Celestial promised;

l.       were denied the benefit of knowing what they used or ingested (or caused their children to ingest);

m.       were forced to unwittingly support an industry that contributes to environmental, ecological, or health damage;

n.       were denied the benefit of supporting an industry that sells organic or all-natural products and contributes to environmental sustainability;

o.       were denied the benefit of the beneficial properties of the organic or all-

natural products promised.

106.    Had Hain Celestial not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been injured as listed above. Accordingly, Plaintiffs and the Class members have suffered "injury in fact" as a result of Hain Celestial's wrongful conduct

107.    Plaintiffs and the Class members all paid money for the Falsely Labeled Products. However, Plaintiffs and the Class members did not obtain the full value of the advertised products due to Hain Celestial's misrepresentations and omissions.    Plaintiffs and the Class members purchased, purchased more of, or paid more for, the Falsely Labeled Products than they would have had they known the truth about the Falsely Labeled Products.    Accordingly, Plaintiffs and the Class members have suffered "injury in fact" and lost money or property as a result of Hain Celestial's wrongful conduct.

## HAIN CELESTIAL BENEFITTED FROM ITS MISLEADING AND DECEPTIVE REPRESENTATIONS AND OMISSIONS

108.    As the intended, direct, and proximate result of Hain Celestial's false, misleading, and deceptive representations and omissions, Hain Celestial has been unjustly enriched through more sales of Falsely Labeled Products and higher profits at the expense of Plaintiffs and the Class members.    As a direct and proximate result of its deception, Hain Celestial also unfairly obtained other benefits, including the higher value associated with a "natural and organic" brand and the resulting higher stock value, redirecting sales to it and away from its competitors, and increased sales of its other products.

## CLASS ALLEGATIONS

109.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following nationwide class (the "Class"):

> All persons in the United States who purchased Hain Celestial's "Earth's Best"
> brand Falsely Labeled Products (as defined herein) from April 15, 2007 to the
> date of certification of the Class (the "Class Period").

110.    Additionally, Plaintiffs bring this action as a class action pursuant to Rule 23 of

the Federal Rules of Civil Procedure on behalf of the following sub-class (the "California Sub-

Class"):

> All California residents who purchased Hain Celestial's "Earth's Best" brand
> Falsely Labeled Products (as defined herein) in California during the Class
> Period.

111.    Additionally, Plaintiffs bring this action as a class action pursuant to Rule 23 of

the Federal Rules of Civil Procedure on behalf of the following sub-class (the "New York Sub-

Class"):

> All New York residents who purchased Hain Celestial's "Earth's Best" brand
> Falsely Labeled Products (as defined herein) in New York during the Class
> Period.

112.    Excluded from the Class and the Sub-Classes are officers and directors of Hain

Celestial; members of the immediate families of the officers and directors of Hain Celestial; Hain

Celestial's legal representatives, heirs, successors, or assigns; and any entity in which they have

or have had a controlling interest.

113.    Plaintiffs bring the Class and the Sub-Classes pursuant to Federal Rules of Civil

Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

114.    At this time, Plaintiffs do not know the exact number of members of the Class or

the Sub-Classes; however, given the nature of the claims and the number of Falsely Labeled

Products sold, Plaintiffs believe that there are approximately hundreds of thousands of members and that joinder of all of them is impracticable.

115.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and the Sub-Classes that predominate over questions that may affect individual members include:

a.    Whether Hain Celestial labeled, marketed, advertised, and/or sold the Falsely Labeled Products to Plaintiffs and the other members of the Class and the Sub-Classes using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nature, quality, and/or ingredients of the Falsely Labeled Products;

b.    Whether Hain Celestial omitted and/or misrepresented material facts in connection with the sales of the Falsely Labeled Products;

c.    Whether Hain Celestial participated in and pursued the common course of conduct complained of herein; and

d.    Whether Hain Celestial's labeling, marketing, advertising, and/or selling of the Falsely Labeled Products constitutes an unfair or deceptive consumer sales practice.

116.    Plaintiffs' claims are typical of those of the Class and Sub-Classes because Plaintiffs, like all members of the Class and the Sub-Classes, purchased the Falsely Labeled Products, relying on Hain Celestial's false and misleading representations in a typical consumer setting at a premium price and sustained damages from Hain Celestial's wrongful conduct.

117.    Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Classes because Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class and the Sub-Classes they seek to represent. Plaintiffs feel that they have

been deceived, wish to obtain redress of the wrong, and want Hain Celestial stopped from perpetrating similar wrongs on others. Plaintiffs are adequate representatives of the Class and the Sub-Classes also because their interests do not conflict with the interests of the Class members and Sub-Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, who led the investigation uncovering Hain Celestial's wrongs, who were the first to publicly uncover Hain Celestial's wrongs, who have no interests adverse to those of the Class members or the Sub-Class members, and who can and will vigorously prosecute this litigation.

118. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Specifically, no member of the Class or Sub-Class has a substantial interest in individually controlling the prosecution of a separate action. The damages suffered by each individual Class member likely will be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Hain Celestial's conduct. Thus, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them.

119. Upon information and belief, there are no pending lawsuits concerning this controversy. Concentration of the litigation concerning this matter in this Court is desirable; and the Class is of a moderate size and the difficulties likely to be encountered in the management of a class action are not great. The resolution of the claims of all Class members and Sub-Class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

120. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Hain Celestial has acted or

refused to act on grounds generally applicable to the Class and the Sub-Classes, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole and the Sub-Classes as a whole.

121.     The prosecution of separate actions by members of the Class or the Sub-Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Hain Celestial.

122.     Hain Celestial's conduct is generally applicable to the Class as a whole and the Sub-Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole and the Sub-Classes as a whole. As such, Hain Celestial's systematic policies and practices make declaratory relief with respect to the Class as a whole and the Sub-Classes as a whole appropriate.

123.     The Class and the Sub-Classes are specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action. Notice to the Class and the Sub-Classes can be made through various means, such as in-store leaflets, website advertisements, notices on the labels of the packages, and/or direct notice to those consumers for which Hain Celestial knows the e-mail or physical mailing address, such as purchasers of Earth's Best products through Hain Celestial's or Earth's Best online store.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**(Violation of the California Organic Products Act)**

124.     The allegations in each Cause of Action are repeated and realleged in every other Cause of Action as if set forth in full therein.

125.     This action is brought pursuant to the California Organic Products Act of 2003

("COPA"), Cal. Health & Safety Code §§ 110810-110959.

126.    Plaintiffs are each a "person" as that term is defined in COPA, Cal. Health & Safety Code § 111910(a).

127.    Hain Celestial has violated and continues to violate the provisions of COPA, Cal. Health & Safety Code § 110820, as described above.

128.    COPA provides for injunctive relief for any violation of COPA and affords standing to "any person" to enforce such violations. *See* Cal. Health & Safety Code § 111910(a).

129.    COPA further provides that actions for injunctive relief to remedy violations of COPA are not subject to the same restrictions as other actions for injunctive relief. Specifically, COPA provides that "the person shall not be required to allege facts necessary to show, or tending to show, lack of adequate remedy at law, or to show, or tending to show, irreparable damage or loss, or to show, or tending to show, unique or special individual injury or damages." *Id.*

130.    Thus, Plaintiffs are entitled to preliminary and permanent injunctive relief to restrain Hain Celestial's violations of COPA. Cal. Health & Safety Code § 111910(a).

131.    THEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Violation of the California Consumers Legal Remedies Act)

### (on behalf of the California Sub-Class only)

132.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750 *et seq.*, on Plaintiffs' behalf and on behalf of the California Sub-Class.

133.    Plaintiffs and the other members of the California Sub-Class are "consumers," as

the term is defined by California Civil Code § 1761(d), because they bought the Falsely Labeled Products for personal, family, or household purposes. The named defendants are all "person[s]" under Cal. Civ. Code § 1761(c).

134. The Falsely Labeled Products are "goods" under Cal. Civ. Code § 1761(a). Plaintiffs, the other members of the California Sub-Class, and Hain Celestial have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

135. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Hain Celestial in transactions intended to result in, and which did result in, the sale of goods to consumers.

136. Hain Celestial's false and fraudulent representations and omissions have violated, and continue to violate the CLRA because they extend to transactions that are intended to result, or have resulted, in the sale of goods to consumers, including the Plaintiffs and the Class members.

137. Hain Celestial's conduct violates Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that goods . . . have . . . characteristics [or] ingredients . . . which they do not have," and Cal. Civ. Code § 1770(a)(7), which prohibits: "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," causing injury to Plaintiffs and the Putative Class.

138. As a result of engaging in such conduct, Hain Celestial has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

139. Plaintiffs served Hain Celestial with notice of its CLRA violations by certified mail, return receipt requested, on April 15, 2013. Since then, Plaintiffs and Hain Celestial have

engaged in active communications in an attempt to resolve the matter. However, negotiations came to an impasse when, well after the requisite thirty days of receiving the notice, Hain Celestial still failed to provide relief for its CLRA violations.

140. Plaintiffs and the Class members seek punitive damages, preliminary injunctive relief, and permanent injunctive relief against Defendants' unfair and deceptive acts and conduct.

141. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiffs seek an order of this Court that includes, but is not limited to, an order enjoining Hain Celestial from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

142. Plaintiffs and the other members of the California Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

143. The unfair and deceptive acts and practices of Hain Celestial, as described above, present a serious threat to Plaintiffs and the other members of the California Sub-Class.

144. THEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION

**(Violation of the California False Advertising Law)**

**(on behalf of the California Sub-Class only)**

145. This cause of action is brought pursuant to California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, on Plaintiffs' behalf and on behalf of the California Sub-Class.

146. Such acts of Hain Celestial, as described above, and each of them constitute unlawful, deceptive, and fraudulent business acts and practices.

147. At all material times, Hain Celestial engaged in a scheme of offering the Falsely

Labeled Products for sale to Plaintiffs and the other members of the California Sub-Class by way of distributing within the State of California to the public, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), Falsely Labeled Product packaging and labeling, and other promotional materials and offered for sale the Falsely Labeled Products on a nationwide basis, including in California.

148.    The misrepresentations and non-disclosures by Hain Celestial of the material facts detailed above constitute false and misleading advertising, and therefore constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

149.    Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase Hain Celestial's Falsely Labeled Products and are statements disseminated by Hain Celestial to Plaintiffs and the other California Sub-Class members that were intended to reach Plaintiffs and the other California Sub-Class members.  Hain Celestial knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

150.    Consumers, including Plaintiffs and the other California Sub-Class members, necessarily and reasonably relied on these materials concerning Hain Celestial's Falsely Labeled Products.  Consumers, including Plaintiffs and the other California Sub-Class members, were among the intended targets of such representations.

151.    The above acts of Hain Celestial did and were likely to deceive reasonable consumers, including Plaintiffs and the other members of the California Sub-Class, by obfuscating the nature, quality, and/or ingredients of the Falsely Labeled Products, in violation of the "misleading" prong of the FAL.

152. The business practices alleged above are unlawful under the CLRA, which forbids misleading and deceptive advertising.

153. Plaintiffs and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Hain Celestial's violations of the FAL.

154. As a result, Hain Celestial has been unjustly enriched at the expense of Plaintiffs and the other members of the California Sub-Class. Plaintiffs and the California Sub-Class, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Hain Celestial, and such other orders and judgments which may be necessary to disgorge Hain Celestial's ill-gotten gains and restore to any person in interest any money paid for its Falsely Labeled Products as a result of the wrongful conduct of Hain Celestial.

155. THEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Violation of the California Unfair Competition Law)

### (on behalf of the California Sub-Class only)

156. This cause of action is brought pursuant to California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, on Plaintiffs' behalf and on behalf of the California Sub-Class.

157. By committing the acts and practices alleged herein, Hain Celestial has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL.

158. Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Hain Celestial's actions as set forth above. Class members also have suffered injury in fact and have lost money or property as a result of Hain

Celestial's actions as set forth above.

159. The violation of any law constitutes an "unlawful" business practice under Cal. Bus. & Prof. Code § 17200.

160. Each of Hain Celestial's false representations alleged herein violates 21 U.S.C. § 343; 21 U.S.C. § 331; Cal. Civ. Code § 1709; Cal. Civ. Code § 1750 *et seq*.; Cal. Com. Code § 2313; Cal. Com. Code § 2315; and Cal. Bus. & Prof. Code § 17500 *et seq.*

161. Each of Hain Celestial's false representations alleged herein also violates California's criminal laws. Cal. Penal Code § 383 (forbidding the offering for sale food that is adulterated, e.g., "by any means it is made to appear better or of greater value than it really is").

162. Hain Celestial has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of (i) the CLRA, as alleged above, and (ii) the FAL, as alleged above.

163. In addition, Hain Celestial has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the Sherman Law, Cal. Health & Safety Code § 109875 *et seq*., which forbids (1) misbranding of any food or drug, *id.* at §§ 110398 and 111445, and (2) manufacturing, selling, delivering, holding, or offering for sale any food or drug that is misbranded or delivering or proffering such for delivery. Cal. Health & Safety Code §§ 110390, 110395, 110398, 110400, 110550, 110585, 110620, 110625, 110660, 110770, 110705, 110740, 110760, 110765, 110770, 111445, and 111450

164. In relevant part, the Sherman Law declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food. California Health & Safety Code §§ 110660 and 110765.

165. The Sherman Law defines a "person" as "any individual, firm, partnership, trust,

corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Safety Code § 109995. The named defendants are "persons" within the meaning of the Sherman Law.

166.    As more fully described herein, Hain Celestial's misleading marketing, advertising, packaging, and labeling of the Falsely Labeled Products is likely to deceive a reasonable consumer.  Indeed, Plaintiffs and the other California Sub-Class members were unquestionably deceived regarding the characteristics of Hain Celestial's Falsely Labeled Products, as Hain Celestial's marketing, advertising, packaging, and labeling of the Falsely Labeled Products misrepresents and/or omits the true nature, quality, and/or ingredients of the Falsely Labeled Products.

167.    There is no benefit to consumers or competition from deceptively marketing and labeling products.  Indeed, the harm to consumers and competition is substantial.  Plaintiffs and the other members of the California Sub-Class who purchased the Falsely Labeled Products suffered a substantial injury as alleged herein.

168.    Plaintiffs and the other members of the California Sub-Class who purchased the Falsely Labeled Products had no way of reasonably knowing that the Falsely Labeled Products they purchased were not as marketed, advertised, packaged, and labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

169.    Hain Celestial's acts and omissions alleged above constitutes unfair business practices under Cal. Bus. & Prof. Code § 17200 because the gravity of the consequences of Hain Celestial's conduct as described above outweighs any justification, motive, or reason therefor,

particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Sub-Class. Hain Celestial's false and misleading representations and omissions also violate legislatively declared policy as they have violated numerous state and federal laws. Moreover, the gravity of the harm to Plaintiffs and Class members resulting from Hain Celestial's conduct outweighs Hain Celestial's legitimate reasons, justifications and/or motives for engaging in such deceptive acts and practices

170. Each false and misleading representation and omission constitutes fraudulent business practices under Cal. Bus. & Prof. Code § 17200 because the representations and omissions were false. Even if these representations were true, Hain Celestial's representations and deceptive concealment were nonetheless fraudulent under the statute because they were misleading and were likely to and did deceive the reasonable consumer, including Plaintiffs and the Class members.

171. Hain Celestial's violations of the UCL continue to this day.

172. Pursuant to California Business and Professions Code § 17203, Plaintiffs and the other members of the California Sub-Class seek an order of this Court that includes, but is not limited to, an order enjoining such future conduct on the part of Hain Celestial and such other orders and judgments which may be necessary to disgorge Hain Celestial's ill-gotten gains and to restore to any person in interest any money paid for Hain Celestial's Falsely Labeled Products as a result of the wrongful conduct of Hain Celestial.

173. THEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Violation of the New York General Business Law § 349)

174.    This cause of action is brought pursuant to New York General Business Law § 349 on Plaintiffs' behalf and on behalf of the Class and New York Sub-Class.

175.    Such acts of Hain Celestial, as described above, and each of them constitute unlawful, deceptive, and fraudulent business acts and practices.

176.    Hain Celestial has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Hain Celestial's violation of § 349, Plaintiffs and other members of the Class and New York Sub-Class have suffered damages in an amount to be determined at trial

177.    Pursuant to New York General Business Law § 349, Plaintiffs seek an order of this Court that includes, but is not limited to, an order enjoining Hain Celestial from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

178.    Plaintiffs and the other members of the Class and New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

179.    The unfair and deceptive acts and practices of Hain Celestial, as described above, present a serious threat to Plaintiffs and the other members of the Class and New York Sub-Class.

180.    THEREFORE, Plaintiffs pray for relief as set forth below.

## SIXTH CAUSE OF ACTION

### (Breach of Express Warranty)

181.    This cause of action is brought on Plaintiffs' behalf and on behalf of the

nationwide Class and the California and New York Sub-Classes, pursuant to New York law for the Class and New York Sub-Class, and pursuant to California law for the California Sub-Class.

182.   Hain Celestial provided Plaintiffs and other members of the Class and Sub-Classes with written express warranties including, but not limited to, warranties that its Falsely Labeled Products were "organic," contained no artificial ingredients, contained no GMOs, and contained no ingredients listed in its Unacceptable Ingredient List, as set forth above.

183.   These affirmations of fact or promises by Hain Celestial relate to the good and became part of the basis of the bargain.

184.   Plaintiffs and members of the Class purchased the Falsely Labeled Products, believing them to conform to the express warranties.

185.   Hain Celestial breached these warranties. This breach resulted in damages to Plaintiffs and other members of the Class and the Sub-Classes, who bought Falsely Labeled Products but did not receive the goods as warranted.

186.   As a proximate result of the breach of warranties by Hain Celestial, Plaintiffs and the other members of the Class and the Sub-Classes did not receive goods as warranted. Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class members known the true facts, they either would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Hain Celestial charged for the products.

187.   THEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTH CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

188.     This cause of action is brought on Plaintiffs' behalf and on behalf of the nationwide Class and the California and New York Sub-Classes, pursuant to New York law for the Class and New York Sub-Class, and pursuant to California law for the California Sub-Class.

189.     Hain Celestial impliedly warranted that the Falsely Labeled Products conformed to the promises or affirmations of fact as detailed above.  Hain Celestial thereby impliedly warranted that the products were merchantable and fit for the ordinary purposes for which such goods are used and would conform to the promises or affirmations of fact made in the Falsely Labeled Products' promotions, marketing, advertising, packaging, and labels.

190.     Hain Celestial did so with the intent to induce Plaintiffs and the Class members purchase the Falsely Labeled Products.  Plaintiffs and the other members of the Class and the Sub-Classes relied on Hain Celestial's representations that the Falsely Labeled Products had particular characteristics, as set forth above, and, at or about that time, Hain Celestial sold the Falsely Labeled Products to Plaintiffs and the other members of the Class and the Sub-Classes.

191.     Hain Celestial breached the warranty implied at the time of sale in that Plaintiffs and the other members of the Class and the Sub-Classes did not receive goods that were as represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

192.     Hain Celestial had prior knowledge and notice of the true nature of the Falsely Labeled Products and, therefore, its breach of the warranty, but took no action to remedy the inferiority or to cure the breach.

193.     As a proximate result of the breach of warranties by Hain Celestial, Plaintiffs and

the other members of the Class and the Sub-Classes did not receive goods as warranted. Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class members known the true facts, they either would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Hain Celestial charged for the products.

194.    THEREFORE, Plaintiffs pray for relief as set forth below.

### EIGHTH CAUSE OF ACTION

**(Deceit and/or Misrepresentation, Fraudulent Concealment, and Constructive Fraud, in Violation of Common Law and Cal. Civ. Code §§ 1709, 1573 *et seq.*)**

195.    This cause of action is brought on Plaintiffs' behalf and on behalf of the nationwide Class and the California and New York Sub-Classes, pursuant to New York law for the Class and New York Sub-Class, and pursuant to California law for the California Sub-Class.

196.    Hain Celestial falsely and fraudulently represented to the public, including Plaintiffs and Class Members, those false representations listed above. Hain Celestial also fraudulently concealed from the public, including Plaintiffs and Class Members, those material facts listed above. These misrepresentations and omissions constitute deceit under Cal. Civ. Code § 1710.

197.    Hain Celestial knew that these misrepresentations are false and that their omissions are fraudulent and deceptive, but nonetheless misrepresented and concealed these facts to induce Plaintiffs and the Class members to act in reliance on the misrepresentations and omissions and purchase the Falsely Labeled Products.

198. Hain Celestial intentionally made the false representations and intentionally concealed and suppressed these material facts with the intent to defraud the Plaintiffs and the Class. Hain Celestial made these false representations and omissions to make the Falsely Labeled Products appear more attractive to consumers. Hain Celestial knew and intended that Plaintiffs and the members of the Class would rely on Hain Celestial's representations and omissions and purchase the Falsely Labeled Products. Hain Celestial thereby violated Cal. Civ. Code § 1709.

199. Plaintiffs and the other members of the Class and the Sub-Classes would have acted differently had they not been misled – *i.e.*, they would not have paid money for the Falsely Labeled Products in the first place and/or they would not have paid a premium price for the Falsely Labeled Products over similar products.

200. Hain Celestial has a duty to correct the misinformation it disseminates through its advertising of the Falsely Labeled Products. By not informing Plaintiffs and the other members of the Class and the Sub-Classes, Hain Celestial breached this duty. Hain Celestial also gained financially from, and as a result of, this breach. Moreover, Hain Celestial has a duty to disclose the omitted facts because it was in possession of knowledge about the identity, formulation, and production of the Falsely Labeled Products and of their ingredients, and this information is not reasonably available to consumers. By not disclosing the material facts to Plaintiffs and other members of the Class, Hain Celestial breached this duty.

201. Hain Celestial gained an advantage by these fraudulent representations and omissions.

202. These misrepresentations and omissions were material. A reasonable person would attach importance to the existence or nonexistence of these representations in determining

whether to purchase the Falsely Labeled Products.

203.    Plaintiffs and the other members of the Class and the Sub-Classes justifiably and reasonably relied on Hain Celestial's misrepresentations, and, as such, were damaged by Hain Celestial.    Plaintiffs and the other Class members were unaware of the truth of these misrepresentations and these concealed facts and would have not acted as they did had they known the truth.

204.    As a direct and proximate result of Hain Celestial's deceits and/or misrepresentations, Plaintiffs and the other Class and Sub-Class members have suffered damages in an amount equal to the amount they paid for Hain Celestial's Falsely Labeled Products.  The exact amount of these damages will be proven at trial.

205.    Hain Celestial acted with intent to defraud, or with reckless or negligent disregard of the rights of, Plaintiffs and the other Class and Sub-Class members, and did so with fraud, oppression, and malice.

206.    Plaintiffs and the Class and Sub-Class members are entitled to punitive damages.

207.    THEREFORE, Plaintiffs pray for relief as set forth below.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

208.    This cause of action is brought on Plaintiffs' behalf and on behalf of the nationwide Class and the California and New York Sub-Classes, pursuant to New York law for the Class and New York Sub-Class, and pursuant to California law for the California Sub-Class.

209.    As a result of Hain Celestial's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Falsely Labeled Products, Hain Celestial was enriched at the expense of Plaintiffs and the other members of the Class and Sub-Classes through the

payment of the purchase price for Hain Celestial's Falsely Labeled Products.

210.    Under the circumstances, it would be against equity and good conscience to permit Hain Celestial to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Class and the Sub-Classes, in light of the fact that the Falsely Labeled Products purchased by Plaintiffs and the other members of the Class and the Sub-Classes were not what Hain Celestial purported them to be.  Thus, it would be unjust or inequitable for Hain Celestial to retain the benefit without restitution to Plaintiffs and the other members of the Class and the Sub-Classes for the monies paid to Hain Celestial for such Falsely Labeled Products.

211.    THEREFORE, Plaintiffs pray for relief as set forth below.

## TENTH CAUSE OF ACTION

### (Negligence and Negligent Misrepresentations)

212.    This cause of action is brought on Plaintiffs' behalf and on behalf of the nationwide Class and the California and New York Sub-Classes, pursuant to New York law for the Class and New York Sub-Class, and pursuant to California law for the California Sub-Class.

213.    Hain Celestial had a duty to use due care in formulating, labeling, marketing, advertising, and selling its products.  Hain Celestial breached that duty.  Hain Celestial's false and misleading representations detailed above were negligently made without any reasonable grounds for believing it was true.

214.    Hain Celestial made the negligent misrepresentations intending to induce consumers' reliance on the facts misrepresented and matters concealed.  Plaintiffs and other consumers saw, believed, and relied on Hain Celestial's misrepresentations and, in justifiable reliance on them and as a result of them, purchased the Falsely Labeled Products.

215.    Hain Celestial is also negligent due to their violation of statutes and regulations

referenced above. Their violation proximately caused Plaintiffs and Class member's injury, their injury being the type that the statutes and regulations were designed to prevent, and these consumers being within the class of persons for whose protection the statutes and regulations were adopted.

216. As a proximate and actual result of Hain Celestial's negligence and negligent representations, Plaintiffs and the Class have suffered damages in an amount not presently known, but which will be shown by proof at time of trial,

217. THEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment on behalf of themselves and the proposed Class, California Sub-Class, and New York Sub-Class providing such relief as follows:

A. Certification of the nationwide Class, California Sub-Class, and New York Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiffs as representatives of the Class, California Sub-Class, and New York Sub-Class; and appointment of their undersigned counsel as counsel for the Class, California Sub-Class, and New York Sub-Class;

B. A declaration that Hain Celestial is financially responsible for notifying members of the Class, California Sub-Class, and New York Sub-Class of the pendency of this suit;

C. An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Hain Celestial as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein;

D. Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes

and prejudgment interest at the maximum rate allowable by law;

E.    Injunctive relief on behalf of the California Sub-Class pursuant to California Health and Safety Code § 111910(a), California Business and Professions Code §§ 17203 and 17535, and California Civil Code § 1780, enjoining Hain Celestial's unlawful and deceptive acts;

F.    Injunctive relief on behalf of the Class and New York Sub-Class pursuant to New York General Business Code § 349, enjoining Hain Celestial's unlawful and deceptive acts;

G.    Statutory damages in the maximum amount provided by law;

H.    Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

I.    Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs and the Class members hereby demand a trial by jury.

Dated: July 3, 2014

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

Todd S. Garber
*tgarber@fbfglaw.com*
D. Gregory Blankinship
gblankinship@fbfglaw.com
Shin Hahn
shahn@fbfglaw.com
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
Telephone: (914) 298-3281 ext. 2803
Facsimile: (914) 824-1561

**THE GOLAN FIRM**
Yvette Golan (pro hac forthcoming)
*ygolan@tgfirm.com*
1919 Decatur Street, 3rd Floor
Houston, Texas 77007
Telephone: (866) 298-4150, ext. 101

Facsimile: (928) 441-8250

**REESE RICHMAN LLP**
Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*