UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LEAH SEGEDIE and DMITRIY SHNEYDER,
on behalf of themselves and all others
similarly situated,

                                               Case No. 14-CV-5029
                                               (Román, J.)

                             *Plaintiffs,*

           - v -

THE HAIN CELESTIAL GROUP, INC.,
and DOES ## 1-99,

                           *Defendants.*
--------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

                                    LYNN, GARTNER, DUNNE & COVELLO, LLP
                                    *Attorneys for Defendants*
                                    330 Old Country Road, Suite 103
                                    Mineola, New York 11501
                                    (516)  742-6200

<u>*Of Counsel*</u>
Robert P. Lynn, Jr.
John W. Dunne
Tiffany D. Frigenti

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................................................iv

Preliminary Statement.................................................................................................1

The Operative Allegations.................................................................................................2

      (1)     Alleged organic misrepresentations.................................................................4
      (2)     Alleged natural misrepresentations.................................................................6

ARGUMENT

Point I

Plaintiffs lack standing to sue for products they
never purchased and misrepresentations they never saw.................................................9

A.     Plaintiffs must satisfy both Article III and
      statutory standing requirements.................................................................9

B.     Plaintiffs lack standing to sue for products they
      never purchased.................................................................10

C.     Plaintiffs lack standing to sue based on representations
      they never saw.................................................................12

Point II

Plaintiffs' state law claims -- based on HCG's labeling
of its products as organic -- are preempted by the Organic
Foods Production Act, 7 U.S.C. §§ 6501, *et seq.*.................................................14

A.     Regulatory Background.................................................................14

Point III

All of the ingredients challenged by Plaintiffs are
permitted in organic foods by the USDA.................................................................20

Point IV

Plaintiffs' "natural" and "organic" claims invoke
the primary jurisdiction of the USDA.................................................................23

Point V

Plaintiffs' claims under the UCL, FAL, CLRA, GBL and
for common-law fraud and negligent misrepresentation
should be dismissed because they are based on implausible
claims of deception of a reasonable consumer ............................................................26

A.     Plaintiffs fail to state a plausible claim because
they do not articulate why a reasonable consumer
would deem USDA-certified organic waffles to be
not "natural"................................................................................................26

B.     Plaintiffs' complaint fails because it does not offer a
plausible, objective definition of "natural"......................................................27

C.     The challenged products are not deceptive under the
FDA's informal policy for "natural." ...............................................................30

D.     The USDA's definition of "natural" for livestock, meat
and poultry is not applicable to packaged food products....................................32

Point VI

Plaintiffs fail to plead their claims with particularity ...................................................32

Point VII

Plaintiffs remaining causes of action also fail to state a claim ......................................37

A.     Plaintiffs' GBL claim also fails as a matter of law
because Plaintiffs have not alleged -- and they cannot
allege -- any cognizable "actual injury" ...........................................................37

B.     Plaintiffs have failed to state a claim for deceit and/or
intentional misrepresentation, fraudulent concealment,
and constructive fraud.....................................................................................39

C.     Plaintiffs fail to state a claim for negligence or
negligent misrepresentation ............................................................................40

D.     Plaintiffs' "after-thought" allegations of breach of express
and implied warranties are also insufficient as a matter of
law, as Plaintiffs do not and cannot allege the critical
elements of both claims ..................................................................................41

E.     Plaintiffs' unjust enrichment claim fails as a matter of law ...............................44

Point VIII

Plaintiffs should not be given leave to amend ...............................................................................45

Conclusion ......................................................................................................................................48

# TABLE OF AUTHORITIES

Page

## Federal Cases

*All One God Faith, Inc. v. Hain Celestial Grp., Inc.,*
   2010 WL 2133209 (N.D. Cal. May 24, 2010)..........................................................................29

*All One God Faith, Inc. v. The Hain Celestial Group, Inc.,*
   2012 WL 3257660 (N.D. Cal. Aug. 8, 2012) ...........................................................................24

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
   2012 WL 2990766 (N.D. Cal. July 20, 2012)..........................................................................42

*Astiana v. The Hain Celestial Group,*
   905 F. Supp. 2d 1013 (N.D. Cal. 2011)...................................................................................24

*Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.,*
   621 F.3d 781 (8th Cir. 2010) ...............................................................................17, 18, 19, 24

*Barocio v. Bank of Am.,*
   2012 WL 3945535 (N.D. Cal. Sept. 10, 2012) ........................................................................44

*Bates v. United Parcel Serv.,*
   511 F.3d 974 (9th Cir. 2007) ..................................................................................................10

*Brazil v. Dole Food Company, Inc.,*
   2013 WL 5312418 (N.D. Cal. September 23, 2013) ................................................................13

*Bruton v. Gerber Prods. Co.,*
   No. 12-2412, 2014 WL 172111 (N.D. Cal. Jan. 15 2014)........................................................13

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011).............................................................................11

*Cattie v. Wal-Mart,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007).....................................................................................13

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) ..................................................................................................9

*Chin v. General Mills,*
   2013 WL 2420455 (D. Minn. June 3, 2013).............................................................................42

*Cibolo Waste, Inc. v. City of San Antonio,*
   718 F.3d 469 (5th Cir. 2013) ..................................................................................................10

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ................................................................................ 23

*College v. Americans United*,
   454 U.S. 464 (1982) .............................................................................................. 10

*Colwell v. Dept. of Health & Human Servs.*,
   558 F.3d 1112 (9th Cir. 2009) .................................................................................. 9

*Cox v. Gruma*,
   2013 WL 3828800 (N.D. Cal. July 11, 2013) ........................................................ 24

*Dealertrack, Inc. v. Huber*,
   460 F. Supp. 2d 1177 (C.D. Cal. 2006) ................................................................. 39

*Dvora v. Gen. Mills, Inc.*,
   2011 WL 1897349 (C.D. Cal. May 16, 2011) ....................................................... 13

*Dysthe v. Basic Research LLC*,
   No. CV-09-8013-AG, 2011 WL 5868307 (C.D. Cal. June 13, 2011) ..................... 12

*Ellis v. Chao*,
   336 F.3d 114 (2d Cir. 2003) .................................................................................. 46

*Former v. Yogel*,
   50 F. Supp. 2d 227 (S.D.N.Y. 1999) ..................................................................... 39

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ............................................................................ 26, 28

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000) .............................................................................................. 10

*Frito-Lay North America, Inc.*,
   2013 WL 5777920 ......................................................................................... 11, 36

*Girard v. Toyota Motor Sales, U.S.A, Inc.*,
   316 F. App'x 561 (9th Cir. 2008) .......................................................................... 26

*Grp. Health Plan v. Philip Morris, Inc.*,
   68 F. Supp. 2d 1064 (D. Minn. 1999) ................................................................... 46

*Gulf States Utilities Co. v. Alabama Power Co.*,
   824 F.2d 1465 (5th Cir. 1987) .............................................................................. 24

*Gustavon v. Wrigley Sales Co.*,
  No. 12-1861, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014)............................................................ 14

*Hairston v. S. Beach Beverage Co.*,
  No. CV 12-1429-JFW DTBX, 2012 WL 1893818(C.D. Cal. May 18, 2012),................... 27, 43

*Hood v. Wholesoy & Co.*,
  2013 WL 3553979 (N.D. Cal. July 12, 2013)........................................................................... 24

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  441 F. Supp. 2d 1066 (N.D. Cal. 2006).................................................................................... 41

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011)..................................................................................... 13

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012).................................................................................... 45

*Johns v. Bayer Corp.*,
  2010 WL 476688 (S.D. Cal. Feb. 9, 2010)............................................................................... 11

*Jones v. ConAgra Foods, Inc., No. C,*
  12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) .......................................... 27, 43

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) .................................................................................................... 46

*Jurgensen v. Felix Storch, Inc.*,
  No. 12 CIV. 1201 KBF, 2012 WL 2354247 (S.D.N.Y. June 14, 2012)............................... 42, 47

*Kane v. Chobani, Inc.*,
  No 12-2425, 2013 WL 5289253 (N.D. Cal. Sept 19, 2013)...................................................... 30

*Lanovaz v. Twinings North America*,
  2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ...................................................................... 11, 46

*Larsen v. Trader Joe's*,
  2012 WL 5458396 (N.D. Cal. June 14, 2012)........................................................................... 10

*Lewis v. Casey*,
  518 U.S. 343 (1996)................................................................................................................... 10

*Lilani v. Noorali*,
  2011 WL 13667 (S.D. Tex. Jan. 3, 2011).................................................................................. 45

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................................................................ 10

*Mazzuocola v. Thunderbird Products Corp.,*
   No. 90-CV-0405 (ARR), 1995 WL 311397 (E.D.N.Y. May 16, 1995) ................................... 45

*McKinniss v. Gen. Mills, Inc.,*
   No. 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) .................................................. 30

*Miller v. Ghirardelli Chocolate Co.,*
   2012 WL 6096593 (N.D. Cal. Dec. 7, 2012) ............................................................................ 11

*Naughright v. Weiss,*
   826 F. Supp. 2d 676, 2011 WL 5835047 (S.D.N.Y. 2011) ...................................................... 42

*Park v. Welch Foods, Inc.,*
   No. 5:12-CV-06449-PSG, 2013 WL 5405318 (N.D. Cal. Sept. 26, 2013) .............................. 33

*Pelayo v. Nestle USA, Inc.,*
   2013 WL 5764644 (C.D. Cal. 2013) ......................................................................... 27, 28, 29

*Pelman v. McDonald's Corp.,*
   272 F.R.D. 82 (S.D.N.Y. 2010) ....................................................................................... 37, 38

*Rhynes v. Stryker Corp.,*
   2011 WL 2149095 (N.D. Cal. May 31, 2011) .......................................................................... 46

*Rosenblatt v. United Way of Greater Houston,*
   607 F.3d 413 (5th Cir. 2010) .................................................................................................. 46

*Saltz v. First Frontier, LP,*
   782 F. Supp. 2d 61(S.D.N.Y.2010) (internal citations omitted), ............................................ 42

*Silber v. Barbara's Bakery, Inc.,*
   950 F. Supp. 2d 432 (E.D.N.Y. 2013) ..................................................................................... 39

*Smedt v. Hain Celestial Grp., Inc.,*
   No. 12-3029, 2013 WL 4455495 (N.D. Cal. Aug. 16, 2013) .................................................. 33

*Spiller v. City of Tex. City,*
   130 F.3d 162 (5th Cir. 1997) .................................................................................................. 46

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) ................................................................................................ 10

*Stuart v. Cadbury Adams USA, LLC*,
 458 F. App'x 689 (9th Cir. 2011)................................................................ 26, 31

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
 307 F.3d 775 (9th Cir. 2002) ............................................................................ 24

*Taradejna v. General Mills*,
 909 F. Supp. 2d 1128 (D. Minn. 2012)............................................................. 24

*Tomek v. Apple, Inc.*,
 No. 11-2700, 2012 WL 2857035 (E.D. Cal. July 11, 2012).............................. 36

*Torch Liquidating Trust ex rel. Bridge Assoc. L.L.C. v. Stockstill*,
 561 F.3d 377 (5th Cir. 2009) ............................................................................ 46

*Trazo v. Nestlé USA, Inc.*,
 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ................................................... 10

*United States ex rel. Adrian v. Regents of the Univ. of Cal.*,
 363 F.3d 398 (5th Cir. 2004) ............................................................................ 47

*United States v. Chestman*,
 947 F.2d 551 (2d Cir. 1991) ............................................................................. 41

*United States v. Hays*,
 515 U.S. 737 (1995)........................................................................................... 9

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) .......................................................................... 33

*Viggiano v. Hansen Natural Corp.*,
 944 F. Supp. 2d 877(C.D. Cal. 2013) (.............................................................. 43

*Viscusi v. Proctor & Gamble*,
 No. 05–CV–01528 (DLI) (LB), 2007 WL 2071546 (E.D.N.Y. July 16, 2007) ...... 44

## State Cases

*Arell's Fine Jewelers, Inc. v. Honeywell, Inc.*,
 170 A.D.2d 1013, 566 N.Y.S.2d 505 (4th Dep't 1991) ............................................ 45

*BMG Direct Mktg. v. Peake*,
 178 S.W.3d 763 (Tex. 2005)............................................................................... 46

*Brown v. Lockwood*,
 76 A.D.2d 721, 432 N.Y.S.2d 186................................................................... 41

*Cadlo v. Owens-Illinois, Inc.,*
  125 Cal. App. 4th 513 (2004) ........................................................................... 36

*Collins v. eMachines, Inc.,*
  202 Cal. App. 4th 249 (2011) ........................................................................... 46

*Denny v. Ford Motor Co.,*
  87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730 (N.Y. 1995) ........................................... 44

*Durell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010) ........................................................................... 45

*Fairbank Canning Co. v. Metzger,*
  118 N.Y. 260, 23 N.E. 372 (1890) ........................................................................... 43

*Gale v. Int'l Bus. Machines Corp.,*
  9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) ........................................................................... 13

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310, 246 P.3d 877 (2011) ........................................................................... 10

*Lavie v. Procter & Gamble Co,*
  105 Cal. App. 4th 496 (2003) ........................................................................... 26, 30

*Leifester v. Dodge Country, Ltd.,*
  2007 WL 283019 (Tex. App. Feb. 1, 2007) ........................................................................... 44

*Mocek v. Alfa Leisure, Inc.,*
  114 Cal. App. 4th 402 (2003) ........................................................................... 44

*Quesada v. Herb Thyme Farms, Inc.,*
  222 Cal. App. 4th 642 (Dec. 23, 2013) ........................................................................... 19

*Rice v. Penguin Putnam, Inc.,*
  289 A.D.2d 318, 734 N.Y.S.2d 98 (2d Dep't 2001) ........................................................................... 38

*Schimmenti v. Ply Gems Industries Inc.,*
  156 A.D.2d 658, 549 N.Y.S.2d 152 (2d Dep't 1989) ........................................................................... 43

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43, 720 N.E.2d 892 (1999) ........................................................................... 37, 38

*State by Abrams v. General Motors Corp.,*
  120 Misc.2d 371, 466 N.Y.S.2d 124 (Sup. Ct., N.Y. Co. 1983) ........................................................................... 45

*Sykes v. RFD Third Ave. 1 Assocs., LLC,*
   15 N.Y.3d 370, 912 N.Y.S.2d 172, 938 N.E.2d 325 (2010)...................................................... 42

## Federal Statutes

21 U.S.C. § 341 et seq. .................................................................................................... 25

7 U.S.C. § 6501(1) ........................................................................................................... 19

7 U.S.C. § 6501-23 .......................................................................................................... 14

7 U.S.C. § 6503(a) ........................................................................................................... 15

7 U.S.C. § 6505................................................................................................................. 14

7 U.S.C. § 6513................................................................................................................. 16

7 U.S.C. § 6514(b)(2) ...................................................................................................... 16

7 U.S.C. §§ 6501, 6503, 6505......................................................................................... 14

7 U.S.C. §§ 6501, et seq. ......................................................................................... i, 14, 18

7 U.S.C. §§ 6503, 6505, 6513.......................................................................................... 15

7 U.S.C. §§ 6503-06 .................................................................................................. 14, 18

7 U.S.C. §§ 6506, 6513.................................................................................................... 15

7 U.S.C. §§ 6514-16 ................................................................................................. 15, 16

## State Statutes

Cal. Com. Code § 2314...................................................................................................... 42

Cal. Comm. Code § 2314(2)............................................................................................. 43

Cal. Comm. Code § 2317.................................................................................................. 42

GBL §§ 349 and 350......................................................................................................... 37

N.Y. UCC § 2-314 ........................................................................................................... 42

New York's General Business Law § 349 .............................................................. 4, 13, 37, 39

UCC § 2-314(2)(c)............................................................................................................ 42

**Federal Rules**

Fed. R. Civ. P. 9(b) .................................................................................................. passim

Rule 9 ....................................................................................................................... 34, 35

**Federal Regulations**

21 C.F.R. 104.20 ...................................................................................................... 20, 21

7 C.F.R. § 205.105 ..................................................................................................... 9, 32

7 C.F.R. § 205.201 ......................................................................................................... 16

7 C.F.R. § 205.400-06 .................................................................................................... 16

7 C.F.R. § 205.404(a) .................................................................................................... 16

7 C.F.R. § 205.404(c) .................................................................................................... 16

7 C.F.R. § 205.406 ......................................................................................................... 15

7 C.F.R. § 205.510(c) .................................................................................................... 16

7 C.F.R. § 605(b) ........................................................................................................... 20

7 C.F.R. §§ 205.102, 205.300 ....................................................................................... 15

7 C.F.R. §§ 205.102, 205.300(a) ................................................................................... 14

7 C.F.R. §§ 205.1-690 .................................................................................................... 15

7 C.F.R. §§ 205.400-06, 205.660-63 ............................................................................. 15

7 C.F.R. §§ 205.501, 205.504 ....................................................................................... 16

7 C.F.R. §§ 205.501-10 .................................................................................................. 16

7 C.F.R. §§ 205.508, 205.510 ....................................................................................... 16

7 C.F.R. 205.301 ........................................................................................................... 9, 22

7 C.F.R. part 205 ........................................................................................................... 15

7 CFR § 205.605(b) ....................................................................................................... 29

**Other Authorities**

56 FR 60421 (Nov. 27, 1991) ........................................................................................... 25

58 Fed. Reg. at 2408 ...................................................................................................... 30

71 Fed. Reg. 24,820 0 (Apr. 27, 2006) ........................................................................... 15

U.S. Chamber Institute for Legal Reform: Trends, Targets and Players,
     The New Lawsuit Ecosystem, Food Class Action Litigation, (Oct. 2013)
     (available at http://www.instituteforlegalreform.com/uploads/sites/1/web-The_New-Lawsuit-
     Ecosystem-Report-Oct2013_2.pdf) ........................................................................... 3

## PRELIMINARY STATEMENT

This lawsuit is part of an expanding series of punitive class action attacks against the food industry. Faced with increasingly unfavorable rulings in the Northern District California and the recent dismissal of a practically identical complaint filed by Plaintiffs' counsel against Whole Foods in the Southern District of Texas, counsel for Plaintiffs now test the waters in the Southern District of New York.

Plaintiffs Leah Segedie and Dmitriy Sheyder ("Plaintiffs") proposed class action complaint, dated July 3, 2014 (the "Complaint"), follows a familiar but fatally-defective script -- a voluminous (217 paragraphs, spanning 68 pages) and highly-technical pleading but one that is comprised largely of faulty legal argument, speculative musings on the source and function of ingredients, and mischaracterization of arcane food-labeling regulations and administrative materials, challenging over eighty (80) different products within defendant Hain Celestial Group, Inc.'s ("HCG") Earth's Best® brand, including infant foods, baby foods, kids foods, baby care products, and home care products. *See* Compl., Ex. "A". Plaintiffs launch a volley of attacks at product labels, challenging everything from ingredient lists to "organic" designations to statements about said products being "natural" and "all natural."

Although Plaintiffs frame their challenges as consumer protection claims, the Complaint says very little about how Plaintiffs themselves were affected by the alleged labeling violations, and next to nothing about how they were purportedly deceived or injured. And no effort is made to tie Plaintiffs to their counsel's legal contentions beyond generalized allegations of a few product purchases. Nevertheless, based on these limited product purchases, Plaintiffs attempt to recover for untold numbers of types of products regardless of whether they purchased them.

What sets this pleading apart is incoherence. Plaintiffs attach voluminous "example"

1

product label images to the Complaint without explanation of how each of the products they challenge are purportedly "falsely labeled." And the pleading is riddled with misstatements and omissions rendering it ripe for dismissal.

Enough is alleged (or not alleged), however, to allow the Court to dismiss the Complaint for substantive reasons: (1) Plaintiffs lack standing to sue for products they never purchased (they collectively purchased eleven (11) different products but base their claims on untold numbers and types of products); (2) Plaintiffs lack standing to challenge representations they never saw (and Plaintiffs do not specifically allege that they saw *any* of the representations identified in the Complaint); (3) Plaintiffs' organic claims are pre-empted under the USDA's comprehensive plan governing organic foods; (4) even if such claims are not preempted, Plaintiffs' organic and natural claims invoke the Primary Jurisdiction of the USDA and FDA, respectively; (5) because consumers are not permitted to enforce the FDCA, Plaintiffs attempts to enforce the FDA's non-binding informal policy statement regarding the meaning of "natural" is impliedly preempted; (6) Plaintiffs' state law claims fail because they are wholly implausible—Plaintiffs fail to credibly allege actual or reasonable reliance; (7) Plaintiffs fail to plead their claims with the required particularity under Rule 9(b); and (8) Plaintiffs' warranty and unjust enrichment claims fail as a matter of law.

## THE OPERATIVE ALLEGATIONS

Plaintiff Leah Segedie is a mother of three who resides in Simi Valley, California. (Compl., ¶ 20). In the three years prior to filing the Complaint, Segedie allegedly purchased: (1) Organic Infant Formula with DHA and ARA, (2) First Foods, First Banana's, (3) Crunchin' Crackers – Original, (4) Crunchin' Grahams – Honey Sticks, (5) Letter of the Day Cookies – Very Vanilla Multipack and (6) Soothing Lotion Lavender. (*Id.*, ¶¶ 20-21).

2

Plaintiff Dmitry Shneyder is a father who resides in Hopewell Junction, New York. (*Id.*, ¶ 22). Specifically, Shneyder purchased: (1) Organic Infant Formula with DHA and ARA, (2) 2nd Wholesome Breakfast Pear Apple Oatmeal, (3) Apple Yogurt Oatmeal, (4) Peach Pear Barley, (5) Strawberry & Banana Toothpaste, and (6) Non-Petroleum Jelly – Fragrance Free. (*Id.*, at ¶¶ 22, 26).

Plaintiffs make no allegation that any of the products they purchased were tainted or spoiled or harmed them or anyone else in any way. Indeed, Plaintiffs allege to have "regularly" purchased these products over many years. (*Id.*, ¶¶ 20-21).

Plaintiffs' allegations time and again repeat the contention that HCG's products were falsely and misleadingly labeled as "organic" and/or "natural"/"all natural" despite containing "a spectacular array of ingredients that federal law prohibits in organic foods, that are synthetic substances, or that are ingredients that HCG promised never to include in its products." (*Id.*, at ¶ 4).[1]

The labeling allegations, in turn, are the sole basis of Plaintiffs' ten causes of action for various violations of state law, including California's Organic Products Act ("OPA") (First Cause of Action), California's Consumers Legal Remedies Act ("CLRA") (Second Cause of Action), California's False Advertising Law ("FAL") (Third Cause of Action), California's Unfair Competition Law ("UCL") (Fourth Cause of Action), New York's General Business Law

---

[1] Coincidentally, the same allegations (concerning the same offending ingredients) were made by the same attorneys against Whole Foods in the matter of *Gedalia v. Whole Foods Market Servs., Inc.*, 13-CV-3517, 2014 WL 5315030 (S.D. Tex. Sept. 30, 2014), which was dismissed on September 30, 3014. Thus, it comes as no surprise that both law firms representing Plaintiffs, Reese Richman LLP and the Golan Law Firm are listed amongst the leading law firms in bringing food lawsuits. *See* U.S. Chamber Institute for Legal Reform: Trends, Targets and Players, The New Lawsuit Ecosystem, Food Class Action Litigation, at pp. 88-100, (Oct. 2013) (available at http://www.instituteforlegalreform.com/uploads/sites/1/web-The_New-Lawsuit-Ecosystem-Report-Oct2013_2.pdf). However, it does come as a surprise that Plaintiffs' counsel, with prior knowledge of this dismissal, refused this Court's offer during the pre-motion conference on September 24, 2014, to file an Amended Complaint by October 9, 2014.

§ 349 ("GBL") (Fifth Cause of Action), and for breach of express warranty (Sixth Cause of Action), breach of implied warranty of merchantability (Seventh Cause of Action), deceit and/or misrepresentation, fraudulent concealment, and constructive fraud (Eighth Cause of Action), unjust enrichment (Ninth Cause of Action), and negligence and negligent misrepresentation (Tenth Cause of Action).

Although the Complaint is not clear about which of the alleged mislabeled products support which claims, the Complaint can be broken down into two categories of alleged misrepresentations: (1) the alleged organic misrepresentations, and (2) the alleged natural and/or all natural misrepresentations.

### (1) Alleged Organic Misrepresentations

Plaintiffs allege that the labels of the following Earth's Best® products are false, misleading, and deceptive because the labels state that the product is "organic" but contain ingredients that federal law does not permit in organic foods (*Id.*, ¶ 4):

**Infant Formula**
Organic Infant Formula with DHA & ARA
Organic Soy Infant Formula with DHA & ARA
Organic Sensitivity Infant Formula with DHA & ARA
**Infants' Second Foods**
2nd Super Fruits
Acai Grape Oatmeal Super Fruits
Cherry Pear Brown Rice Super Fruits
Yumberry Banana Barley Super Fruits
**2nd Wholesome Breakfast**
Pear Apple Oatmeal
Apple Yogurt Oatmeal
Peach Pear Barley
**2nd Wholesome Grains**
Apple Peach Oatmeal Yogurt
Blueberry Banana Brown Rice Yogurt
Banana Apricot Barley Yogurt
**Infant Puree Pouches**
**1st Foods**
First Bananas

4

First Pears
**2nd Foods**
Apple Peach Oatmeal
Apple Plum Kamut
Banana Raspberry Brown Rice
Pear Apricot Barley
Banana Blueberry
Orange Banana
Peach Mango
Sweet Potato Apple
Butternut Squash Pear
**3rd Foods**
Pear Carrot Apricot
Pumpkin Cranberry Apple
**Sesame Street Snax**
Veggie Crisps Canister
Organic Pop Snax - Veggie Crisps
Sweet Potato Cinnamon
Sweet Potato Cinnamon Canister
Apple Cinnamon Canister
Blueberry Canister
Graham Canister
Peach Canister
**Sesame Street Crunchin' Blocks**
Banana
Honey Graham
**2% Reduced Fat Milk**
Original
Chocolate
**Sesame Street Breakfast**
Yummy Tummy Instant Oatmeal- Maple & Brown Sugar
Yummy Tummy Instant Oatmeal- Apples & Cinnamon
On-the-GoO's Cereal- Honey Nut
On-the-GoO's Cereal- Apple Cinnamon
Frozen Mini Waffles- Homestyle
Frozen Mini Waffles - Blueberry
**Sesame Street Meals**
Soup - Elmo Noodlemania
Soup- Elmo Tomato
Soup - Elmo Vegetable
Frozen Entrees- Elmo Pasta 'n Sauce with Carrots & Broccoli
Mini Meals - Organic Elmo Cheese Ravioli
Mini Meals - Organic Elmo Pasta & Sauce
**Sesame Street Snacks**
Crunchin' Crackers - Veggie
Crunchin' Crackers- Original

> Crunchin' Grahams- Honey Sticks
> Crunchin' Grahams - Chocolate
> Crunchin' Grahams - Cinnamon Sticks
> Letter of the Day Cookies - Very Vanilla Multi pack
> Letter of the Day Cookies - Oatmeal Cinnamon
> Smiley Snacks - Vanilla
> Smiley Snacks - Banana
> Snackin' Fruit Hearts & Rings - Blueberry
> Snackin' Fruits Hearts & Rings - Banana
> Yogurt Rice Crisp Bars - Vanilla
> Yogurt Rice Crisp Bars – Banana

It is undisputed that the U.S. Department of Agriculture ("USDA") has adopted a well-known regulatory framework for certifying food products as USDA-approved "organic." The USDA's National Organic Program ("NOP") strictly regulates which ingredients can be used in certified organic foods and provides an exhaustive list of banned substances. It is further undisputed that all of the foregoing Earth's Best® brand products are USDA-certified organic and that the organic labels include USDA and third-party certification seals. Nevertheless, Plaintiffs simply ignore that these products are certified and marketed as USDA-approved organic foods and that the challenged substances are *expressly allowed* in certified organic foods under USDA regulations.

### (2) Alleged Natural Misrepresentations

Relying on a highly literal definition of "natural," Plaintiffs claim that HCG misrepresented that the following products are "natural"/"all natural" and that they contain no artificial substances. Several of the alleged natural misrepresentations appear on products that are USDA-certified organic, including:

**Sesame Street Breakfast**
> Frozen Mini Waffles- Homestyle (USDA-Organic)
> Frozen Mini Waffles- Blueberry (USDA-Organic)
> Frozen French Toast Sticks- Homestyle (70% Organic)

**Sesame Street Meals**
> Frozen Whole Grain Pizza- Cheese (70% Organic)

> Frozen Mini Ravioli- Cheese (85% Organic)
> Frozen Entrees- Elmo Pasta 'n Sauce with Carrots and Broccoli (75% Organic)
> Frozen Entrees- Elmo Mac n' Cheese with Carrots and Broccoli (75% Organic)

Plaintiffs' claims regarding these products are particularly implausible because these Earth's Best® Sesame Street Breakfast and Sesame Street Meals are touted as USDA-certified organic, a standard that is understood by consumers to be more stringent than the vague "natural" description. Yet, Plaintiffs never explain why ingredients that are expressly permitted by the federal government to be used in certified "organic" foods somehow render those same foods "non-natural." Nor do Plaintiffs articulate why a reasonable consumer who buys a product certified as organic by the USDA -- which encourages sustainable farming practices, prohibits pesticides and antibiotics, and has a banned list of synthetic substances -- would be deceived by the term "all natural."

The remainder of the Allegedly Falsely Labeled Natural Products include the following personal, baby and home care items:

**Body Care**
> Calming Bubble Bath - Vanilla
> Cold Soothing Baby Wash- Eucalyptus & Tea Tree
> Diaper Relief Ointment - Aloe Vera & Vitamin E
> Extra Rich Therapy Creme - Calendula
> Sensitive Skin Lotion Fragrance Free
> Sensitive Skin Shampoo & Body Wash- Fragrance Free
> Sleepytime Shampoo & Body Wash Chamomile
> Soothing Bubble Bath- Lavender
> Soothing Lotion - Lavender
> Soothing Shampoo & Body Wash- Lavender
> Tear-Free Shampoo- Aloe Vera
> Teething Gel- Non-Medicated

**Baby Care and Home Care**
> Mineral Based Sunblock SPF 30+
> Tangle Taming Shampoo
> TOTS Tangle Taming Leave-In-Spray- Fruit Punch
> All Purpose Nursery Cleaner
> TOTS Water Play Sunblock
> Strawberry & Banana Toothpaste

Teething Gel- Non-Medicated
Non-Petroleum Jelly- Fragrance Free

Plaintiffs assert that these representations are deceptive because some products are not "natural" according to definitions Plaintiffs attribute to HCG, the FDA and the USDA.

First, Plaintiffs claim that some products contain ingredients that are not natural under HCG's purported definition of natural. Specifically, Plaintiffs contend that HCG defined natural in its 2011 Annual Report to include:  products that are "minimally processed, *largely* or completely free of artificial ingredients, preservatives, and other non-naturally occurring chemicals, and are not genetically modified and as near to their whole natural state as possible." (Compl., ¶ 57 (citing HCG 2011 Annual Report, p. 2)) (emphasis added). Plaintiffs conveniently overlook the word "largely" – meaning not completely free. Moreover, Plaintiffs do not specifically allege that they ever read HCG's Annual Report prior to purchasing HCG's products. Nevertheless, Plaintiffs impossibly claim in a conclusory fashion that they relied on the representations.

Second, Plaintiffs contend that HCG's representation is false under non-binding and un-enforceable FDA policy statement. Plaintiffs cannot rely on the FDA's informal "natural" policy, as Plaintiffs' literal and absolutist definition of "natural" was specifically rejected by the FDA in recognition of the fact that a reasonable consumer expects "natural" packaged foods to undergo some man-made or synthetic processing.

Lastly, Plaintiffs argue that the products do not meet the USDA's definition for natural as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than minimally processed. However, the USDA definition applies to meat and poultry, neither of which are at issue here. Furthermore, the USDA, like the FDA, eschews Plaintiffs' ultra-formalistic line-drawing and instead has adopted the reasonable view that a

8

product that has certain synthetically-processed ingredients can still be designated "organic" (and

conversely, the use of certain non-synthetic substances can be disqualifying). As set forth above,

all of the challenged substances are expressly permitted by the USDA in certified organic food

products. *See* 7 C.F.R. § 205.105. *See Gadalia, supra,* 2014 WL 5315030, at *9 ("The OFPA,

allows non-organic ingredients in "organic" labeled food, depending on the type of label." (citing

7 C.F.R. 205.301)).

## ARGUMENT

### POINT I

#### PLAINTIFFS LACK STANDING TO SUE FOR PRODUCTS THEY NEVER PURCHASED AND MISREPRESENTATIONS THEY NEVER SAW.

Plaintiffs allege that their cumulative purchase of eleven (11) different products entitles

them to assert virtually unbounded claims based on untold numbers and varieties of products

misleadingly and meaninglessly defined as "Falsely Labeled Products." However, for the reasons

set forth below, Plaintiffs have neither standing under Article III, nor do they have sufficient

standing to assert claims under the UCL, FAL, and CLRA.

### A. Plaintiffs must satisfy both Article III and statutory standing requirements.

Standing is a jurisdictional issue and may properly be addressed on a pleadings challenge

under Rule 12(b)(1). *See United States v. Hays,* 515 U.S. 737, 742 (1995); *Chandler v. State*

*Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiffs, as the parties asserting

the claims, have the burden of establishing standing. *See Colwell v. Dept. of Health & Human*

*Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009).

Article III's constitutional case-in-controversy requirement requires that, for each claim:

(1) Plaintiffs must have suffered some actual or threatened injury; (2) the injury must be fairly

9

traceable to the challenged conduct; and (3) a favorable decision would likely redress or prevent the injury. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The fact that Plaintiffs allege a putative class "adds nothing to the question of standing." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). At least one named plaintiff must meet the requirements. *See Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).

Standing also imposes prudential limitations to the Court's jurisdiction: (1) a party must assert his own legal rights and interests, not those of others; (2) courts will not adjudicate "generalized grievances;" and (3) a party's claims must fall within the zone of interests that is protected or regulated by the statue or constitutional guarantee in question. *See Valley Forge Christ. College v. Americans United*, 454 U.S. 464, 474-75 (1982); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009); *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013). To the extent Plaintiffs seek to recover under California consumer protection statutes, they must also establish the narrower standing requirements of those statutes. The UCL, CLRA, and FAL each require that Plaintiffs show that they have suffered an "economic injury." *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-24, 246 P.3d 877 (2011) (economic injury requirement is "substantially narrower than federal standing … which may be predicated on a broader range of injuries."); *Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) (economic injury required under the UCL, FAL, and CLRA).

### B. Plaintiffs lack standing to sue for products they never purchased.

Courts routinely grant motions to dismiss where a plaintiff has failed to purchase the subject product. *See Larsen v. Trader Joe's*, 2012 WL 5458396 (N.D. Cal. June 14, 2012); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011)

(dismissing claims based on an ice cream product not purchased by named plaintiff even though it contained one of the same alleged misrepresentations as another ice cream product purchased by plaintiff); *Miller v. Ghirardelli Chocolate Co.*, 2012 WL 6096593 (N.D. Cal. Dec. 7, 2012) (dismissing claims based on misleading "white chocolate" representations where plaintiff purchased chocolate chips but not other chocolate products with similar alleged misrepresentations); *Johns v. Bayer Corp.*, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (dismissing claims based on vitamins not purchased by plaintiff even though similar alleged misrepresentation regarding health benefits of ingredient as the product purchased by plaintiff); *Lanovaz v. Twinings North America*, 2013 WL 675929, at *4 (N.D. Cal. Feb. 25, 2013) (plaintiff purchased green tea; all claims related to products other than green tea bearing the same alleged misrepresentation were dismissed).

Moreover, while a few courts have allowed some claims based on un-purchased products to survive the pleadings stage, those cases are inapplicable here, as even the most permissive courts have required that both the products *and* the alleged misrepresentations be similar. *See Miller*, 2012 WL 6096593, at *6-7 (explaining different outcomes of standing decisions). And the plaintiff must adequately state in the Complaint how each product and misrepresentation is similar. *See, e.g., Frito-Lay North America, Inc.*, 2013 WL 5777920, at *4 ("Plaintiffs take no time to explain how each of the eighty-five new products are actionably mislabeled, and the Court is not inclined to pore over each ingredient list and guess. Plaintiffs simply provide a list of Non-Purchased Products, attach barely-legible labels (purportedly as they appeared in the Class Period), and assert that these labels are unlawful or misleading.") Thus, in these permissive courts, different flavors of the same product might be able to proceed past the pleadings stage (but will not necessarily be certified), *if* the different flavors of the product have the same

11

representation *and* the representation is not related to aspects of the particular flavor *and* the similarities are explained in the pleading.

Here, Plaintiffs purport to assert claims based on products they purchased *and* entirely different products. Plaintiffs fail, however, to limit the un-purchased products to those products that are substantially similar to the few products Plaintiffs purchased. There is nothing in the Complaint regarding the products' respective ingredients or packaging showing how the un-purchased products are substantially similar to the purchased products. *See Ghirardelli*, 912 F. Supp. 2d at 871; *Dysthe v. Basic Research LLC*, No. CV-09-8013-AG, 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) (un-purchased products were not "nearly identical" to purchased products because the number of ingredients was different and the packaging was different). Plaintiffs have failed to even allege that the products are "essentially the same" and even if they did such assertion would be too ambiguous, especially considering that the heightened pleading standard of Fed. R. Civ. P. 9(b) applies as plaintiff's allegations "sound in fraud." Therefore, Plaintiffs have not alleged the similarity of the products with sufficient particularity and lack standing to bring claims as to un-purchased products. Plaintiffs also fail to explain how any of these unpurchased products are unlawful or misleading much less unlawful or misleading in a manner substantially similar to the products Plaintiffs' purchased. Accordingly, the Court cannot determine from the pleadings whether the named products are, in fact, substantially similar to the purchased products and Plaintiffs' allegations are insufficient to withstand dismissal even under a permissive standard.

### C. Plaintiffs lack standing to sue based on representations they never saw.

Just as Plaintiffs lack standing to pursue claims based on products they never purchased, Plaintiffs may not sue based on representations they never saw prior to making their purchases.

12

*See, e.g., Cattie v. Wal-Mart*, 504 F. Supp. 2d 939, 947-48 (S.D. Cal. 2007) (dismissing claim by buyer alleging that thread count of linens purchased from website were lower than advertised; the plaintiff did not allege that she had actually seen advertisement on website); *Dvora v. Gen. Mills, Inc.*, 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011) (no claim over website statements plaintiff never read); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (plaintiff cannot pursue claims based on false advertisements on which he did not rely); *Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dep't 2004) (plaintiff who did not see any of defendant's misleading statements prior to purchasing computer hard drive failed to state a claim under GBL § 349 because these statements could not have caused the plaintiff's injury).

This concept was recently affirmed in *Brazil v. Dole Food Company, Inc.*, 2013 WL 5312418, *15 (N.D. Cal. September 23, 2013). In *Brazil*, Judge Koh explained the issue:

> Initially, the Court notes that it is doubtful whether Brazil's 'illegal product' theory is sufficient to establish causation for purposes of Article III standing. While Defendants' website statements may violate federal law ..., it is far from apparent how this regulatory violation could have *caused* Brazil to purchase Defendants' products when he neither saw the allegedly offending statements nor relied on them in deciding to purchase Defendants' products.

Here, Plaintiffs allege that HCG included false or misleading material in its Annual Reports. (Compl., ¶¶ 56, 57). But, critically, Plaintiffs *never* allege that they viewed the Annual reports and, accordingly, never allege that they read or relied upon the supposedly misleading material. Because it is axiomatic that a party lacks standing to challenge statements on advertisements that she never saw, Plaintiffs' claims must be dismissed to the extent they purport to rely on materials other than the labels of the products they purchased and, accordingly, all references to HCG's Annual Reports are irrelevant and immaterial. *See Bruton v. Gerber Prods. Co.*, No. 12-2412, 2014 WL 172111, at *9 (N.D. Cal. Jan. 15 2014) (dismissing website claims

13

because a plaintiff "does not have standing to assert claims based on statements she did not view"); *Gustavon v. Wrigley Sales Co.*, No. 12-1861, 2014 WL 60197, at *9 (N.D. Cal. Jan. 7, 2014) ("[T]o the extent Gustavson asserts claims based on statements appearing on a Wrigley website that Gustavon does not claim to have viewed, these claims fail for lack of standing.").

## POINT II

**PLAINTIFFS' STATE LAW CLAIMS --
BASED ON HCG'S LABELING OF ITS
PRODUCTS AS ORGANIC -- ARE
PREEMPTED BY THE ORGANIC FOODS
PRODUCTION ACT, 7 U.S.C. §§ 6501, *ET SEQ.***

### A. Regulatory Background

Congress enacted the Organic Foods Production Act ("OFPA") in 1990 in order to (a) eliminate conflicting standards under state law as to what foods are properly labeled "organic" and (b) accelerate public acceptance of and interstate commerce in organic food products by creating a consistent set of rules and regulations across the country. *See* S. Rep. No. 101-357 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4656, 4944-45; 7 U.S.C. § 6501-23. The OFPA sets forth a detailed process for determining which products are entitled to bear the USDA-Organic seal and be called organic.[2] *See,* 7 U.S.C. §§ 6503-06. In order to implement the national standards called for by the OFPA, Congress, in turn, delegated to the USDA *exclusive* responsibility for establishing a comprehensive set of national regulations (known as the National Organic Program or "NOP"), setting forth the criteria that must be met in order for food

---

[2] It is important to note that the OFPA and NOP govern not only use of the USDA-Organic seal, but also the use of the term "organic" itself. *See* 7 U.S.C. § 6505; 7 C.F.R. §§ 205.102, 205.300(a). No producer of agricultural products can describe its goods as "organic" in the United States unless it follows the procedures set forth in the OFPA and NOP and becomes a certified operation. *See* 7 U.S.C. § 6505; 7 C.F.R. §§ 205.102, 205.300(a). This demonstrates that Congress intended to create uniform national standards for "organic" agriculture. *See* 7 U.S.C. §§ 6501, 6503, 6505.

products in the United States to be labeled "organic." *See* 7 U.S.C. § 6503(a) ("The Secretary shall establish an organic certification program for producers and handlers of agricultural products that have been produced using organic methods as provided for in this title."). As contemplated by Congress, the USDA -- through its Agricultural Marketing Service ("AMS") -- promulgated the NOP after notice and comment, and the NOP became effective on October 21, 2002. *See* 71 Fed. Reg. 24,820, 24,820 (Apr. 27, 2006) ("On October 21, 2002, the NOP regulations became fully implemented by USDA as the uniform standard of production and handling for organic agricultural products in the United States."). The resulting regulations, published at 7 C.F.R. part 205, establish comprehensive guidelines for all stages of the production, handling and sale of organic products. *See* 7 C.F.R. §§ 205.1-690.

   In addition to regulating the use of the USDA-Organic seal, AMS administers a national accreditation program for states and private entities wishing to be "certifying agents." *See* 7 U.S.C. §§ 6514-16; S. Rep. No. 101-357 at 4947-48. Certifying agents "certify production and handling operations in compliance with the requirements of [the NOP] regulation[s] and initiate compliance actions to enforce [the NOP] requirements." 65 Fed. Reg. at 80,548. The NOP also delegates to certifying agents the decision as to which producers are allowed to use the USDA-Organic seal. *See* 7 U.S.C. §§ 6506, 6513; 7 C.F.R. §§ 205.400-06, 205.660-63. As contemplated by Congress, food products sold in the United States may only be labeled "organic" if they are produced by operations that have been certified by USDA-approved certifying agents. *See* 7 U.S.C. §§ 6503, 6505, 6513; 7 C.F.R. §§ 205.102, 205.300. These certifications are renewed on an annual basis. *See* 7 C.F.R. § 205.406. An organic producer possessing certifications issued by the USDA's certifying agents is, however, entitled to label its products organic and to use the USDA-Organic seal so long as its certifications remain in effect. *See* 7 C.F.R. § 205.404(c). In

15

addition, organic certifications remain in effect in perpetuity, unless and "until surrendered by the organic operation or suspended or revoked by the certifying agent ... or the Administrator[ ]" of AMS. 7 C.F.R. § 205.404(c).

The process by which producers are certified under the OFPA is directly overseen by AMS, pursuant to express requirements set out in detail in the NOP. *See* 7 C.F.R. § 205.400-06; 65 Fed. Reg. at 80,548. Certifying agents -- such as HCG's (i.e., Qualified Assurance International) -- become qualified to administer and enforce the provisions of the OFPA and NOP only after undergoing a rigorous accreditation process conducted by the USDA. *See* 7 U.S.C. §§ 6514-16; 7 C.F.R. §§ 205.501-10. That accreditation process is designed to ensure that the certifying agent is technically and administratively capable of fully implementing all organic standards. *See* 7 U.S.C. §§ 6514-16; 7 C.F.R. §§ 205.501, 205.504.

Consistent with their status as agents of the USDA, certifying agents are closely monitored by the agency, which routinely conducts on-site investigations of their operations. *See* 7 C.F.R. §§ 205.508, 205.510. Further, the NOP requires that USDA certifying agents renew their accreditations every five years. *See* 7 C.F.R. § 205.510(c). Certifying agents are required to "have sufficient expertise in organic farming and handling techniques." 7 U.S.C. § 6514(b)(2). This expertise is essential, as certifying agents work closely with organic producers to develop an individualized Organic System Plan ("OSP") that is tailored to the local conditions of each organic producer. *See* 7 U.S.C. § 6513; 7 C.F.R. § 205.201. In the event the certifying agent believes a producer has varied from its OSP, the certifying agent is required to include requirements for the correction of noncompliance as a condition to continued certification. *See* 7 C.F.R. § 205.404(a).

HCG holds valid certifications from its USDA-accredited certifying agent, Quality

16

Assurance International ("QAI") to label its products "Organic" and to use the USDA-Organic seal. QAI is an accredited certifying agency that is authorized by the NOP. *See* USDA Accredited Certifying Agents List, Ex. "B", p. 16; QAI's Accreditation, Ex. "C". All of HCG's farms and processing plants have, in turn, been certified organic by QAI. *See* QAI Letter, Ex. "D". HCG's certification has *never* been revoked or suspended, and under the statutory scheme created by Congress and implemented by the USDA, HCG respectfully submits that *only* the USDA and its certifying agents have the authority to revoke or suspend the right of a producer like HCG to use the organic label or the USDA-Organic seal.

Notwithstanding the clear provisions of the OFPA and NOP, Plaintiffs now ask this Court to assume the role of the USDA and its certifying agents, and seek injunctive relief and compensatory and punitive damages for HCG's *certified* use of ingredients and organic product designations. But, the practical effect of the relief Plaintiffs' request, would be to preclude HCG from using the very ingredients and designations on its products that the USDA, through its duly-accredited certifying agent, QAI, has expressly authorized HCG to use.

While it may be possible in some cases to frame state consumer protection claims that implicate alleged violations of federal food labeling regulations and yet escape preemption, Plaintiffs have not done that here. Indeed, Plaintiffs' state-law claims—limited to the contention that HCG represented that certain organically-certified products that were labeled organic were not in fact organic because they contained substances not permitted in organic foods—depend for their very existence on purported federal regulatory violations. Thus, rather than relying on traditional state police powers over food labeling, Plaintiffs have attempted to enforce the federal food labeling regulations through state tort law—with the important caveat that it is their own unsupported interpretation of federal law that Plaintiffs seek to impose. Plaintiffs' claims are

17

specifically preempted under *Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 796 (8th Cir. 2010).

In *Aurora*, the Eighth Circuit held that claims attacking an entity's organic certification are preempted by the OFPA. 7 U.S.C. §§ 6501, *et seq. Id.* The court specifically held that any attempt to hold a certified entity or a retailer of the certified entity's organic products liable under state law based on the claim that the products are not in fact organic directly conflicts with the role of the organic certifying agent. *Id.* Specifically, "compliance and certification cannot be separate requirements." *Id.* Thus, any claims that seek to hold the certified entity or a retailer of the certified entity's products liable under state law for representing products as organic when in fact the products are not are preempted. *Id.* at 797, 799.

The result in *Aurora* flowed from the statute itself. As set forth above, Congress enacted OFPA in order to end the "patchwork of state regulation governing organic products that existed in the 1980s." *Id.* at 788; 7 U.S.C. § 6501. The OFPA establishes a uniform federal standard "so that farmers know the rules, so that consumers are sure to get what they pay for, and so that national and international trade in organic foods may prosper." S. Rep. 101-357, *reprinted in* 1990 U.S.C.C.A.N. 4656, 4943. A key role under the federal statutory scheme is played by certifying agents. These agents, who must be accredited, review applications for organic certification; their review includes both analysis of detailed organic production plans and inspection of facilities. When a certifying agent determines that all applicable requirements have been satisfied, the food producer is authorized to use the "organic" or "USDA certified organic" designations. 7 U.S.C. §§ 6503-6506.

This federal plan preempts Plaintiffs' challenge to the organic certification and labeling of HCG's Earth's Best® products. As the Eighth Circuit explained:

> [W]e need look no further than the purposes articulated in the OFPA itself. The first purpose, "to establish national standards governing the marketing of certain agricultural products as organically produced products," would be deeply undermined by the inevitable divergence in applicable state laws as numerous court systems adopt possibly conflicting interpretations of the same provisions of the OFPA and NOP. See § 6501(1).... To the extent the class Plaintiffs, relying on state consumer protection or tort law, seek to set aside [defendant's] certification, or seek damages from any party for [defendant's] milk being labeled as organic in accordance with the certification, we hold that state law conflicts with federal and should be preempted.

621 F.3d at 796-97.

Thus, Plaintiffs claims -- that HCG's products, certified as organic pursuant to the provisions of OFPA and its implementing regulations, were somehow improperly labeled "organic" -- fall squarely under *Aurora* and cannot be addressed through state tort law.

Further, the California Court of Appeals recently issued a decision agreeing with *Aurora* as it pertains to claims under the UCL and CLRA (and other state laws). *See Quesada v. Herb Thyme Farms, Inc.*, 222 Cal. App. 4th 642 (Dec. 23, 2013).[3] In *Quesada*, the court specifically held that consumer lawsuits based on product mislabeling in violation of OFPA or COPA are impliedly preempted: "A state consumer lawsuit based on COPA violations, or violations of the OFPA, would frustrate the congressional purpose of exclusive federal and state government prosecution and erode the enforcement methods by which the Act was designed to create a national organic standard. Accordingly, this lawsuit poses a clear obstacle to the accomplishment of the congressional objectives in enacting the OFPA and so it is preempted." *Quesada*, 222 Cal. App. 4th at 648. Plaintiffs' organic claims here are no different and are preempted.

---

[3] The case is now on review in the California Supreme Court. *Quesada v. Herb Time Farms*, 170 Cal. Rptr.3d 737, 323 P.3d 1 (Cal. 2014).

## POINT III

## ALL OF THE INGREDIENTS CHALLENGED BY PLAINTIFFS ARE PERMITTED IN ORGANIC FOODS BY THE USDA.

The case for preemption in this action is underscored by the theory offered by Plaintiffs, which is particularly offensive to the federal scheme. Plaintiffs' contend that HCG's Earth's Best® brand products "contain a spectacular array of ingredients that federal law prohibits in organic foods" and that "HCG falsely and misleadingly labels" these products as being "organic." (Compl., ¶ 4). Each of the ingredients Plaintiffs challenge, as being improperly in the organic products they purchased, is some form of nutrient, vitamin or mineral. These ingredients are permitted in organic foods under the presently codified "Nutrient, Vitamin, and Mineral" exception for organic foods at 7 C.F.R. § 2.05.605(b).

By way of background, the USDA National Organic Standards, finalized in 2002, allowed the use of "Nutrient Vitamins and Minerals" as an allowed synthetic additive in products labeled as "organic." *See* 7 C.F.R. § 605(b) (synthetics allowed in organic foods include "[n]utrient vitamins and minerals, in accordance with 21 C.F.R. 104.20, Nutritional Quality Guidelines For Foods."). The nutritional guidelines in 21 C.F.R. § 104.20 are developed and administered by the FDA. In 2007, the NOP (at the USDA) interpreted the FDA's nutritional guidelines and allowed the addition of nutrients to organic food products that are outside the scope of FDA's listing of nutrient vitamins and minerals. *Id*. In January 2012, the USDA acknowledged that its own interpretation was incorrect. *Id*.

The USDA issued a *proposed rule* on January 12, 2012 to clarify the applicable organic requirements. *See* Proposed Rule, Ex. "E". In announcing the proposed rule, the USDA specifically stated: "To provide adequate time for companies to change their formulations (as

necessary), the NOP is proposing a two-year implementation period *after publication of a Final Rule.* The two-year implementation period would also provide time for additional substances to be petitioned for potential addition to the National List of Allowed and Prohibited Substances [in organic foods]." *Id.* In addition, the USDA issued the Interim Final Rule for Nutrient Vitamins and Minerals (the "Interim Rule"), which explicitly provides:

> This interim rule addresses a recommendation submitted to the Secretary of Agriculture (Secretary) by the National Organic Standards Board (NOSB) on April 29, 2011. This recommendation pertains to the 2012 Sunset Review for the exemption (use) of nutrient vitamins and minerals in organic handling on U.S. Department of Agriculture's (USDA) National List of Allowed and Prohibited Substances (National List). On January 12, 2012, AMS published a proposed rule on the 2012 Sunset Review which proposed to continue the exemption (use) for nutrient vitamins and minerals on the National List for 5 years after its October 21, 2012 sunset date. The proposed rule also proposed to correct an inaccurate cross reference to U.S. Food and Drug Administration (FDA) regulations in the listing for vitamins and minerals on the National List. AMS continues to review the public comments on the proposed rule and assess the extent of impacts on the industry that could result from correcting the cross reference to FDA regulations. *Therefore, due to the impending sunset of the allowance for nutrients vitamins and minerals from the National List on October 21, 2012, and based on the NOSB recommendation, this interim rule renews, without change, the exemption (use) for nutrient vitamins and minerals on the National List. This interim rule provides for the continued use of nutrients vitamins and minerals in organic products until the agency completes the January 12, 2012, rulemaking.*
>
> ****
>
> [T]his interim rule continues the allowance for nutrient vitamins and minerals at section 205.605(b) as follows: "Nutrient vitamins and minerals, in accordance with 21 CFR 104.20, Nutritional Quality Guidelines for Foods." *This action enables the industry to continue with the status quo until additional public comments are received and a final rule is published. This action avoids the widespread disruption to the organic market that would occur if the allowance for any synthetic vitamins and minerals were to sunset ("expire") from the National List on October 21, 2012. For example, if the current allowance for vitamins and minerals was to sunset, Vitamins A and D, used to fortify fluid milk, and B-vitamins used in bread and cereal to replace vitamins lost during*

> *processing, could no longer be added to organic products.*

> *See* Interim Rule, Ex. "F".

Pursuant to the plain language of the Interim Rule, the continued use of nutrients vitamins and minerals in organic products is permitted until the agency *completes* the January 12, 2012 rulemaking. As indicted on the official website of the USDA, it has not completed the January 12, 2012 rulemaking, and to date has not issued a Final Rule. *See* Sunset Review (2012) for Nutrient Vitamins and Minerals Status, Ex. "G" ("Status: Awaiting rulemaking action").

Furthermore, the Q&A "Proposed Rule for Vitamins and Minerals in USDA-Organic Products" provides:

> How long before organic products in the marketplace reflect this change?

> To provide adequate time for companies to change their formulations (as necessary), the NOP is proposing a two-year implementation period after the publication of a Final Rule. The two-year implementation period would also provide time for additional substances to be petitioned for potential addition to the National list of Allowed and Prohibited Substances.

> *See* USDA Explanation of Proposed Rule, Ex. "H".

Thus, Plaintiffs seek to impose liability on a regulated entity even though it complied with the USDA's interpretation of its own rule, and for failing to comply with a proposed rule that is not yet final and which the USDA itself has stated, in its considered judgment, will provide regulated entities two-years to come into compliance. Plaintiffs' attempt to challenge HCG's organic designations on its products based on the inclusion of synthetic ingredients therein must be rejected. As the court in *Gadalia*, 2014 WL 5315030, at *9, recently acknowledged, the OFPA allows non organic ingredients in "organic" labeled food:

> Plaintiffs have submitted hundreds of product label images. Docs. 5–2 to 5–5. In regard to non-organic ingredients, none of the labels state "100% organic." The organic labels include USDA and third-party certification

seals. Plaintiffs do allege the products include "synthetic ingredients that are not permitted in organic foods" and that "have not been approved to be used in any food at all, much less in organic food."Doc. 36 at 35 (emphasis in original). Plaintiffs do not, however, allege that the certifications are invalid or that the labels violate USDA regulations. The OFPA allows non-organic ingredients in "organic" labeled food, depending on the type of label. 7 C.F.R. § 205.301. Plaintiffs offer no reason that the reasonable consumer would assume 365 Brands organic products are any more organic than what organic certifying agencies require.

****

Plaintiffs argue every molecule in Whole Foods's organic products should be organic, in spite of the tiered organic labeling regime provided by the OFPA. Although one could argue organic labeling is inherently misleading, Plaintiffs do not show how Whole Foods's use of the term is any different from other organic food providers.

As illustrated in the table annexed hereto, each of the ingredients challenged by Plaintiffs is permitted for use in organic products pursuant to the regulations identified therein. *See* Table of Regulations Permitting Use of Challenged Ingredients, Ex. "I". Plaintiffs' attempt to usurp the USDA's regulatory process for their own ends flies in the face of the current regulations authorizing HCG's organic product designations and ingredients, directly conflicts with Congress' intent to establish a uniform federal standard for organic food, and warrants the dismissal of Plaintiffs'' organics claims with prejudice.

**POINT IV**

**PLAINTIFFS' "NATURAL" AND "ORGANIC" CLAIMS INVOKE THE PRIMARY JURISDICTION OF THE USDA.**

Even if Plaintiffs' organic claims are not preempted, the Court should dismiss them and Plaintiffs' natural claims because they fall under the primary jurisdiction of the USDA and FDA, respectively. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of

23

an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (amended); *see also Gulf States Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465 (5th Cir. 1987) (primary jurisdiction applies "when agency action would produce needed uniformity in an area or when the agency has 'special competence' over the issue to be decided.").

In response to the wave of food-labeling lawsuits inundating the federal courts in the past year, several courts have rightly invoked the primary jurisdiction doctrine to stay or dismiss similar claims. *See, e.g., Hood v. Wholesoy & Co.*, 2013 WL 3553979 (N.D. Cal. July 12, 2013) (deferring to the FDA to say what the appropriate rules should be with respect to "soy yogurt" and "evaporated cane juice"); *Cox v. Gruma*, 2013 WL 3828800 (N.D. Cal. July 11, 2013) (claims regarding whether genetically modified ingredients may be used in food marketed as "natural" stayed in favor of primary jurisdiction of the FDA); *Taradejna v. General Mills*, 909 F. Supp. 2d 1128, 1134 (D. Minn. 2012) (abstaining on primary jurisdiction grounds to adjudicate issue of standard of identity of Greek yogurt); *Astiana v. The Hain Celestial Group*, 905 F. Supp. 2d 1013, 1016-17 (N.D. Cal. 2011) (abstaining on primary jurisdiction grounds to adjudicate meaning of term "natural" in cosmetics); *All One God Faith, Inc. v. The Hain Celestial Group, Inc.* 2012 WL 3257660 (N.D. Cal. Aug. 8, 2012) (dismissing claims based on organic labeling of personal care products based on primary jurisdiction of the USDA).

24

Here, all factors weigh in favor of applying the primary jurisdiction doctrine with respect to Plaintiffs' "organic" and "natural" claims. First, as described above, Congress through OFPA establishes a uniform federal standard for the certification of organic products. *Aurora*, 621 F.3d at 796-97. As further explained above, pursuant to its role in administering the OFPA, the USDA interpreted its own regulations (and FDA regulations referenced in its own regulations) to allow the use of the nutrient vitamins and minerals in organic products which Plaintiffs challenge here. The USDA has indeed indicated that it desires to reverse that interpretation, but in its considered judgment that any implementation of the requirement shall include a two-year grace period for the industry to come into compliance with the potential regulation. Plaintiffs' attempt here to usurp the USDA's authority and to enforce what it is presently a proposed regulation offends the primary jurisdiction of the USDA. Thus, Plaintiffs' "organic" claims, if not dismissed as preempted, should be stayed or dismissed pending the USDA's development and potential implementation of its proposed rule.

In addition, the FDA has regulatory authority over food labeling. *See* 21 U.S.C. § 341 *et seq.* The FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers. *See* 21 U.S.C. § 341 *et seq.* Food labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration. Plaintiffs' "natural" claims impermissibly require a court to interpret an FDA policy statement on the meaning of the word "natural." Plaintiffs' natural claims are particularly inappropriate because the FDA has been struggling with the creation of a universally applicable meaning of "natural" in the food-labeling context for over two decades. *See* 56 FR 60421 (Nov. 27, 1991) (explaining divergent interpretations of meaning of "natural" and acknowledging difficulty in defining term; the FDA has still not established an enforceable definition of the

25

term). Plaintiffs' claims usurp the regulatory and policy-making scheme of the agency designated by Congress to administer a national uniform system. Thus, Plaintiffs' "natural"/"all natural" claims may also be stayed or dismissed at the pleadings stage based on the primary jurisdiction doctrine.

**POINT V**

**PLAINTIFFS' CLAIMS UNDER THE UCL, FAL AND CLRA, GBL AND FOR COMMON-LAW FRAUD AND NEGLIGENT MISREPRESENTATION SHOULD BE DISMISSED BECAUSE THEY ARE BASED ON IMPLAUSIBLE CLAIMS OF DECEPTION OF A REASONABLE CONSUMER.**

**A. Plaintiffs fail to state a plausible claim because they do not articulate why a reasonable consumer would deem USDA-certified organic products to be not "natural."**

To state a claim for false advertising under the UCL, FAL CLRA, GBL or for common-law fraud or negligent misrepresentation, Plaintiffs must allege that HCG made statements likely to deceive a reasonable consumer. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) (common-law fraud claim requires plaintiff to show defendant's advertisement "would 'mislead a reasonable person"); *Girard v. Toyota Motor Sales, U.S.A, Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008) (equating "justifiable reliance" element of negligent misrepresentation "to the reasonable consumer standard.") " 'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few customers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co*, 105 Cal. App. 4th 496, 508 (2003). Rather, the advertisement must be "such that *it is probable that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances,*

26

*could be misled.*" *Id.* (emphasis added). Plaintiffs' Second, Third, Fourth, Fifth, Sixth, Eighth and Tenth causes of action must be dismissed because they fail to allege that an objective, reasonable consumer reviewing the "all natural" label in "context" would be deceived. *See, e.g., Hairston v. S. Beach Beverage Co.,* No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012), *appeal dismissed* (July 12, 2012).

## B. Plaintiffs Complaint fails because it does not offer a plausible, objective definition of "natural."

Because "there is no fixed meaning for the word 'natural,'" *Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014 WL 2702726, at *14 (N.D. Cal. June 13, 2014), a complaint is subject to dismissal where the plaintiff "fails to offer an objective or plausible definition" of this term. *Pelayo v. Nestle USA, Inc.,* 2013 WL 5764644, at *4 (C.D. Cal. 2013). For example, in *Pelayo v. Nestle,* the plaintiff challenged the term "All Natural" found on a box of pasta, claiming that certain ingredients were artificial. *Id.* at *1. In dismissing the lawsuit at the pleading stage, the court said that the plaintiff's definition of natural --"produced or existing in nature" and "not artificial or manufactured" -- was "implausible" because packaged pastas are "manufactured in mass" and a "reasonable consumer is aware that Buitoni Pastas" did not grow on "trees" or "bushes." *Id.* at *4. Noting that the FTC has found that "the 'term natural' can be used in numerous contexts," the court ruled that "it is implausible that 'a significant portion of the general consuming public or of targeted consumers' would be deceived or misled by the use of the term 'All Natural' on the Buitoni Pastas" *Id.* at *5.

Similarly, in *Balser v. Hain Celestial Group, Inc.,* another federal judge in California dismissed a false advertising lawsuit challenging "natural" cosmetics. No 13-5604, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013). The court held that "it is undisputed that 'natural' is a vague and ambiguous term," and that the Plaintiffs' proposed definition of natural as "existing in or

produced by nature" was "implausible as applied to the products at issue: shampoos and lotions do not exist in nature, there are no shampoo trees, [and] cosmetics are manufactured." *Id.* at *1.

Like in *Pelayo* and *Balser*, Plaintiffs here have failed to offer a plausible understanding of the term "natural" in the context of frozen packaged foods. Instead, Plaintiffs offer a highly literal and absolutist definition of "natural" that is neither "objective" nor "plausible." As stated in Justice Melinda Harmon's recent decision in *Gedalia, supra,* 2014 WL 5315030, at *11:

> Plaintiffs argument seems to be that since Whole Foods has developed a successful brand as a provider of natural foods, it should be obligated to guarantee every molecule in every product it sells under its in-house brand is natural. Similarly, Plaintiffs argue every molecule in Whole Foods's organic products should be organic, in spite of the tiered organic labeling regime provided by the OFPA. Although one could argue organic labeling is inherently misleading,3 Plaintiffs do not show how Whole Foods's use of the term is any different from other organic food providers. The same goes for natural foods. Many of the "all natural" decisions listed above have allowed Plaintiffs to proceed to the summary judgment stage with "contextualized evidence regarding consumer perceptions" of natural claims on product packaging. Surzyn, 2014 WL 2212216, at *3. Here, Plaintiffs allege they, or their purported class, have relied on signage and other expressions of Whole Foods's natural-foods brand outside of product packaging. Plaintiffs have failed to provide a compelling reason for the Court to add another definition to the "confusing, piecemeal, state-by-state construction of what may qualify as a 'natural' product." Nothing else on the submitted labels plausibly suggests to a reasonable consumer that the products do not contain the alleged "artificial" ingredients. [footnotes omitted].

Plaintiffs' "natural" theory of the case is particularly dubious because this case targets USDA-certified organic foods. As the Ninth Circuit has cautioned, district courts must review the challenged packaging or advertising "as a whole" and not focus on a particular word in isolation. *See Freeman*, *supra,* 68 F.3d at 290. Here, the Earth's Best Organic Sesame Street Breakfast and Sesame Street Meals labels are not "deceptive in context" because the phrase "all natural" cannot be examined in a vacuum; rather, it must be viewed in the context of a certified organic food that has the iconic USDA-Organic seal on the packaging and several of the

products even have the word "organic" in the product names. *Pelayo, supra,* 2013 WL 5764644, at *4 ("[T]he reasonable consumer is aware that" packaged foods like those targeted by Plaintiffs "are not 'springing fully-formed from ... trees' " but rather are processed to be sold as a packaged food in the aisles of supermarkets). As set forth above in Point II, *supra,* organic foods are highly regulated by the USDA under the NOP, enacted to "establish national standards governing the marketing of certain agricultural products as organically produced products," and which "forbids the labeling as 'organic' products that have not been so certified." *All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, No. 09-03517, 2010 WL 2133209, at *2 (N.D. Cal. May 24, 2010).

Significantly, as other courts have recognized, "[c]onsumers generally conflate the notions of 'natural' and 'organic,' or hold products labeled 'organic' to a higher standard than products labeled 'natural,'" *Pelayo, supra,* 2013 WL 5754544, at *4 (citation omitted). This is because the USDA's NOP regulations are stricter than the FDA's informal "natural" policy; "[t]he NOP mandates that govern the production, marketing, and labeling of 'organic' products are complex, detailed, and specific." *All One Good Faith, aupra,* 2010 WL 2133209, at *2. Critically, the substances challenged by Plaintiffs are specifically sanctioned by the USDA as acceptable ingredients for organic foods. *See* Exs. "I" & "D"; 7 CFR § 205.605(b). That is why the USDA has authorized the use of the USDA-Organic seal on these Earth's Best products.

Yet, Plaintiffs do not even attempt to explain why ingredients sanctioned by the USDA for use in more strictly regulated "organic" foods would be unexpected or improper in "natural" food products. It is therefore "implausible that a reasonable consumer would believe the ingredients allowed in a product labeled 'organic', would not be allowed in a product labeled 'all natural'" *Pelayo, supra,* 2013 WL 5764644, at *4. Nor have Plaintiffs explained why a product

certified to a higher "organic" standard is somehow deceptive to a reasonable consumer merely because the word "all natural" is on the packaging. The claim that Plaintiffs relied on the "all natural" label is simply implausible in light of Plaintiffs' failure to articulate what they thought the prominent USDA organic seal and the use of the word "organic" in the same name of the product itself meant. *Cf. Kane v. Chobani, Inc.*, No 12-2425, 2013 WL 5289253, at *7 (N.D. Cal. Sept 19, 2013) (dismissing an "evaporated cane juice" claim because "[a]bsent some factual allegation concerning what Plaintiffs believed [evaporated cane juice] to be," their allegations were "simply not plausible"). Thus, without a plausible definition of "natural," Plaintiffs have not shown that "it is probable that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled" by packaged HCG products labeled as "all natural." *Lavie, supra,* 105 Cal. App. 4th at 508.

Finally, there is no dispute that the ingredient lists and nutrition panels truthfully disclose the ingredients and nutritional content of all of the challenged products. Consumers reading the labels can, therefore, easily determine exactly what they are consuming *See McKinniss v. Gen. Mills, Inc.,* No. 07-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) ("[a] reasonable consumer" concerned about the ingredients in cereal "would ... be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list").

## C. The challenged products are not deceptive under the FDA's informal policy for "natural."

Plaintiffs assert that the phrase "all natural" is false or misleading because it violates the FDA's "natural" policy and the USDA's definition of "natural." Specifically, the FDA policy permits food to be labeled as "natural" when "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food *that would not normally be expected to be in the food.*" 58 Fed. Reg. at 2408 (emphasis added). Therefore,

under the FDA guidance, there is a two-step inquiry to determine whether a reasonable consumer would believe a food product is "natural": (1) whether the food contains artificial or synthetic ingredients; and (2) if so, whether those artificial and/or synthetic ingredients would not normally be expected in the food. In other words, a food that contains artificial and/or synthetic ingredients is considered "not natural" *only if* those ingredients "would not normally be expected to be in the food." Simply put, the inclusion of an artificial and/or synthetic ingredient does not alone make a product unnatural; rather, when a food product is "natural" or not must be tied to reasonable consumer expectations.

A reasonable consumer would expect that the packaged products challenged by Plaintiffs must have undergone some degree of processing to aid in shelf stability or production. She understands that a natural packaged product is not like a fresh fruit or vegetable in the product section of the supermarket that was literally plucked from the field or off a tree. Rather, anyone exercising basic common sense realizes that a packaged product, even if it is made of natural ingredients must undergo some form of man-made processing. *See Stuart, supra*, 258 F. App'x at 690-91 (affirming dismissal of false advertising case where allegations "def[ied] common sense"); *Balser, supra*, 2013 WL 6673617, at *1 (rejecting plaintiff's claim that she was deceived by "all natural" labels on cosmetics because "shampoos and lotions do not exist in nature, there are no shampoo trees, cosmetics are manufactured").

Plaintiffs have the burden of articulating why the supposedly synthetic ingredient would not be expected in a packaged food product. But they have failed to so. Plaintiffs do not and cannot allege that a reasonable consumer believes that no ingredient in the challenged products would have been subject to some arguably synthetic process. The Complaint does not even attempt to explain consumer expectations about "natural" packaged products. Plaintiffs instead

31

resort to scientific-sounding terminology and a hyper-technical definition of "natural" that is divorced from reasonable consumer expectations. HCG's products are allegedly unnatural simply because they contain ingredients that were subject to supposedly synthetic processes. The Complaint is barren of facts suggesting that the inclusion of these ingredients -- expressly permitted in organic foods -- would be unexpected by a reasonable consumer.

### D. The USDA's definition of "natural" for livestock, meat and poultry is not applicable to packaged food products.

Plaintiffs also argue that HCG's products do not meet the USDA's definition of "natural" for meat and poultry. But common sense dictates that the USDA's definition of "natural" for livestock does not apply to packaged and processed foods; if anything, it underscores that HCG's packaged products are natural under reasonable consumer expectations.

A reasonable consumer understands that meat and poultry should be consumed soon after purchase because they spoil more quickly than packaged foods. Additionally, unlike meat and poultry, packaged products are not raised in the wild, and the reasonable consumer expectation is that even natural packaged products, unlike natural meat and poultry, will undergo some form of processing before they are packaged, boxed and sold on the shelves of supermarkets. In short, the USDA policy for "natural" meat and poultry is clearly inapposite for packaged foods.

Plaintiffs also point to a USDA organic regulation that defines the term "synthetic" to argue that any product that has such ingredients cannot be deemed "natural." But the USDA, like the FDA, eschews Plaintiffs' ultra-formalistic line-drawing and instead has adopted a reasonable view that a product that has certain synthetically-processed ingredients can still be designated "organic" (and conversely, the use of certain non-synthetic substances can be disqualifying). *See* 7 CFR § 205.105. And as discussed above, the challenged substances are expressly permitted by the USDA in certified organic food products. *See supra.*

32

## POINT VI

## PLAINTIFFS FAIL TO PLEAD THEIR
## CLAIMS WITH PARTICULARITY.

Because the gravamen of Plaintiffs' claim is that HCG's labeling of its products was deceptive, they "must demonstrate actual reliance and economic injury" with particularity required under Federal Rule of Civil Procedure ("FRCP") 9(b). Rule 9(b) requires Plaintiffs to allege with *specificity* "how [their] purchase decisions were driven by the alleged misrepresentations on the packaging labels." *Park v. Welch Foods, Inc.*, No. 5:12-CV-06449-PSG, 2013 WL 5405318, at *4 (N.D. Cal. Sept. 26, 2013). Plaintiffs must "state with clarity the 'who, what, when, where, and how' of the fraudulent conduct … and provide an unambiguous account of the 'time, place, and specific content of the false representations.'" *Smedt v. Hain Celestial Grp., Inc.* No. 12-3029, 2013 WL 4455495, at *4 (N.D. Cal. Aug. 16, 2013) (quoting *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs have pled none of this information. Instead, Plaintiffs provide a laundry list of allegedly mislabeled products and a separate laundry list of ingredients without providing any specificity as to *which* products are included within the putative class, *which* precise ingredients supposedly render the label false or misleading, or *how* they allegedly relied on the challenged language and were allegedly deceived. Rather than simply identifying each product they challenge and explaining why they believe it is "falsely labeled," Plaintiffs construct a meaningless framework of circularly-defined terms. The "Falsely Labeled Organic Products" are defined as products labeled organic that are not in fact organic. The "Falsely Labeled Natural Products" are ones that contain one or more unacceptable ingredients. And, of course, the penultimate "Falsely Labeled Products," about which Plaintiffs sue, are collectively all of the above. Virtually every significant allegation uses these terms, which, because they are circularly

defined, are utterly meaningless. Plaintiffs attempt to add heft to their otherwise deficient factual allegations by attaching a voluminous Exhibit 1, containing 120 pages worth of label images, which purports to be labels of *example* HCG products Plaintiffs contend were "falsely labeled." But Plaintiffs do not, other than by example in the body of the Complaint, explain how each of the products whose labels are attached to the Complaint match up with HCG's alleged misrepresentations. Nor do Plaintiffs explain how any of the products in Exhibit 1 show one or more of the representations are false or misleading.

Indeed, courts have dismissed similar complaints for failure to identify a "finite and particular" list of products that form the basis of the lawsuit. For example, in *Thomas v. Costco Wholesale Corp.*, 5:12-CV-02908 EJD, 2013 WL 1435292, at *6 (N.D. Cal. Apr. 9, 2013) the Court granted a motion to dismiss under strikingly similar circumstances, stating:

> The Court finds that the allegations of the remaining claims do not provide a clear and unambiguous account of the allegedly fraudulent, deceptive, or misrepresentative statements with the specificity and particularity required by Rule 9. The Amended Complaint fails to unambiguously specify the particular products that have violated particular labeling requirements, the allegedly unlawful representations that were on which products, and the particular statements Plaintiffs allegedly relied on when making their purchases. There are several instances of this in the Amended Complaint, as explained herein.

Similarly, in *Gedalia v. Whole Foods Mkt. Servs., Inc.*, *supra*, 2014 WL 5315030, at *12, the District Court of Texas recently dismissed a virtually identical complaint filed in another one of Plaintiffs' counsel's lawyer-driven food labeling class actions, stating:

> Whole Foods argues Plaintiffs failed to state fraud-based claims with particularity. Fed.R.Civ.P. 9(b). In order to articulate the elements of fraud with sufficient particularity, a plaintiff must state the "who, what, when, ... where" and why of the alleged fraud. *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir.2002) (quoting *Williams v. WMX Techs., Inc. .*, 112 F.3d 175, 178 (5th Cir.1997)). In regard to "who," the complaint explains the general role of each named defendant, (Doc. 1 ¶¶ 36–41) but the complaint does not explain in detail how each

entity contributed to the alleged fraudulent activity. *See In re Alamosa Holdings, Inc.,* 382 F.Supp.2d 832, 857 (N.D.Tex.2005) ("Any allegations in the Complaint made against 'Defendants' (plural or group) do not meet the requirements of pleading allegations of fraud"). The complaint does not specifically identify "what" alleged misrepresentations influenced the Plaintiffs to purchase each individual product. *See Kane,* 2013 WL 5289253, at * 10 (requiring the Plaintiffs to provide a table outlining "which products ... contained each representation and for which products these representations were false"). Furthermore, the complaint fails to specifically plead "when" and "where" the allegedly mislabeled products were purchased. Both Gedalia and Lewis only provide the date and location for one purchased product. (*Id.* ¶¶ 26, 30). For the other purchased products, the complaint states a general time frame without locations. (*Id.*). *See Berry v. Indianapolis Life Ins. Co.,* 608 F.Supp.2d 785, 797 (N.D.Tex.2009) (holding that complaint did not satisfy Rule 9(b) for "failing to specify even the state, much less a more precise location, in which the[ ] representations were made"); *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, L.L.C.,* CIV.A.3:04CV2518–D, 2005 WL 1421446, at *5 (N.D.Tex. June 1, 2005) (holding that complaint failed under Rule 9(b) because "[t]he only reference to time is the vague assertion that the events occurred sometime 'before [defendant] would employ [plaintiff]'").

Here, the Complaint is similarly lacking in specificity and precision. Plaintiffs seek to represent a class of individuals who purchased any of the HCG Earth's Best® brand products that were labeled "organic" or "natural"/"all natural," yet contained any one of the ingredients on their laundry list of substances, falsely alleged to be prohibited by federal law.  In short, Plaintiffs "fail to allege ... the particular circumstances surrounding [the challenged] representations." But, as in *Thomas,* Plaintiffs fail to put HCG on notice of the precise ingredients that, according to Plaintiffs, render the label of each product false or misleading. (*See* Compl., ¶¶ 50, 52) ("The Falsely Labeled Organic Products include but are not limited to."); *id.,* ¶ 63 ("The Falsely Labeled Natural Products include but are not limited to."); *id.,* ¶ 64 ("These products all contain artificial ingredients, including but not limited to..."). The use of this "non-definite" phrase in their list of both challenged products and ingredients "creates ambiguity such that Defendant -- or the Court, for that matter -- would have to draw its own inferences to

determine the [products and ingredients] that are subject to the allegations." *Thomas, supra*, 2013 WL 1435292, at *8. "Drawing such inferences about the particular misconduct that is alleged to constitute fraud, deception, or misrepresentation is something the heightened Rule 9 pleading standard of particularity and specificity seeks to avoid." *Bishop v.7-Eleven, Inc.*, No. 12-2621, 2013 WL 4014174, at *4-5 (N.D. Cal. Aug. 5, 2013) (dismissing complaint containing "ambiguity and non-specificity" as to challenged products); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp 2d 1134, 1141 (N.D. Cal. 2013) ("[T]he Court is not inclined to pore over each ingredient list and guess" as to how the particular ingredients potentially render each product mislabeled).

Finally, Plaintiffs never allege with particularity that they actually relied on the alleged mislabeling in purchasing the products. The closest they come to alleging reliance is a boilerplate assertion that "When Plaintiffs and the Class members purchased the Falsely Labeled Products, Plaintiffs and the Class members saw the false, misleading, and deceptive representations...." (Compl., ¶ 97). This vague and conclusory assertion of reliance fails to satisfy the burden of pleading reliance with particularity. *See, e.g., Tomek v. Apple, Inc.*, No. 11-2700, 2012 WL 2857035, at *3 (E.D. Cal. July 11, 2012) ("[T]he mere assertion of 'reliance' is insufficient"; rather, "[t]he plaintiff must allege the specifics of his or her reliance on the misrepresentation") (quoting *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)). Moreover, Plaintiffs claim that they relied on these labels is implausible because they have not explained their understanding of the term "organic"/"natural" or the use of these words in the name of the product.

Respectfully, both HCG and the Court should not be left to speculate about which of the over 80 products identified correspond to the allegations of unlawful labeling. As such, Plaintiffs

deficiently pled claims should be dismissed pursuant to FRCP 9(b).

## POINT VII

### PLAINTIFFS' REMAINING CAUSES OF ACTION ALSO FAIL TO STATE A CLAIM.

**A. Plaintiffs' GBL claim also fails as a matter of law because Plaintiffs have not alleged -- and they cannot allege -- any cognizable "actual injury."**

To state a claim under GBL § 349, Plaintiffs are required to plead "actual injury" resulting from the alleged deceptive acts. In *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92 (S.D.N.Y. 2010) this Court dismissed a claim brought under GBL § 349, stating:

> Plaintiffs claim to have suffered three types of harm or injuries "by reason of" Defendant's allegedly deceptive nutritional marketing scheme—the financial costs of Defendant's products; "false beliefs and understandings as to the nutritional contents and effects of Defendant's food products"; and "obesity, elevated levels of [LDL], significant or substantial increased factors in the development of coronary heart disease, pediatric diabetes, high blood pressure and/or other detrimental and adverse health effects and/or diseases as medically determined to have been causally connected to the prolonged use of Defendant's products."[26] However, allegations of "false beliefs and understandings" do not state a claim for "actual injury" under GBL § 349, *Small v. Lorillard Tobacco Co.*, 252 A.D.2d 1, 679 N.Y.S.2d 593, 599 (1998) ("Neither the case law nor the statutory language [of GBL § 349] supports [the] argument that the deception *is* the injury." (emphasis in original)), *aff'd*, 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999); and *93 neither do allegations of pecuniary loss for the purchase of Defendant's products. *Small*, 698 N.Y.S.2d 615, 720 N.E.2d at 898 ("[Plaintiffs] posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349. We disagree."). Accordingly, the only alleged injuries for which Plaintiffs and putative Class members may claim damages under GBL § 349 are those related to the development of certain medical conditions, as alleged in the SAC.

Similarly, in *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 720 N.E.2d 892 (1999), Plaintiffs brought an action against cigarette manufacturers under GBL §§ 349 and 350, asserting that defendants' deception prevented them from "making free and informed choices as

37

consumers." Plaintiffs alleged that had they known that nicotine was addictive, they never would have purchased the cigarettes. The Court of Appeals held that this allegation of "injury" was insufficient to state a claim under the GBL:

> Plaintiffs' definition of injury is legally flawed. Their theory contains no manifestation of either pecuniary or "actual" harm ... [T]hey chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes. Plaintiffs' cause of action under this statute, as redefined by the trial court and as embraced by them, thus sets forth deception as both act and injury.

*Id.* at 56, 698 N.Y.S.2d at 621.

In *Rice v. Penguin Putnam, Inc.,* 289 A.D.2d 318, 318-19, 734 N.Y.S.2d 98, 99-100 (2d Dep't 2001), the Second Department reached the identical result. There, the plaintiff commenced a purported class action alleging that he and the public had been misled to purchase a book based upon defendant's alleged misrepresentation regarding the novel's author. The defendant moved to dismiss the complaint based upon *Small.* The trial court denied the motion. On appeal, the Second Department reversed. It held that:

> Here, the plaintiff's original complaint sought reimbursement of the purchase price of [the book] on the ground that he and the proposed class members would not have purchased the novel had they known that it was partially written by Newman. Since this does not constitute a legally cognizable injury under the rationale of Small v. Lorillard Tobacco Co., (supra), the Supreme Court should have granted the defendant's motion to dismiss the complaint.

Here, Plaintiffs do not allege that they suffered any "actual injury." Plaintiffs only allege that they have been "damaged" by expending funds to purchase HCG's products when they otherwise would not have done so. This allegation, however, fails to allege actual injury under the GBL.

Here, just as in *Pelman, Small* and *Rice,* Plaintiffs have alleged no actual injury under the GBL. Plaintiffs merely allege that they have been "damaged" by expending funds to purchase

HCG's products when they otherwise would not have done so. This allegation, however, fails to allege actual injury under the GBL. Plaintiffs' allegation that as a result of HCG's false and deceptive advertisement, it has earned unlawful profits and unjust enrichment from the sales of the products likewise fails to plead the requisite "actual injury" to state a claim under the GBL.

Lastly, Plaintiffs attempt to enjoin HCG pursuant to GBL § 349 must also be rejected, as Plaintiffs have failed to establish irreparable injury to support their request for injunctive relief. *See Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 440-44 (E.D.N.Y. 2013) (holding money damages would adequately compensate consumers in their putative class action against cereal producer for its alleged false advertising of its cereal that contained genetically modified ingredients as "all natural," such that consumers were barred from obtaining a preliminary injunction prohibiting producer from marketing its products as such, where the only harm alleged by the consumers was the alleged premium price they paid for the cereal based on producer's representations, the amount of such harm was easily ascertainable, and New York deceptive acts statute did not relieve consumers of burden of demonstrating irreparable harm). Therefore, Plaintiffs' GBL § 349 claim is dismissible as a matter of law.

## B. Plaintiffs fail to state a claim for deceit and/or intentional misrepresentation, fraudulent concealment, and constructive fraud.

The Complaint alleges causes of action for common law fraud, intentional misrepresentation, fraudulent concealment, constructive fraud, and for violations of Cal. Civ. Code §§ 1709, 1573 which codify the common law actions for fraud and deceit and constructive fraud. As set forth above, in order to adequately allege a claim for common law fraud and intentional misrepresentation under either New York law or California law, Plaintiffs must allege that: (1) HCG's labels contain representations of material facts; (2) such facts as represented in the labels are false; (3) HGC made such false representations with an intent to defraud; (4)

Plaintiffs reasonably relied on these misrepresentations; and (5) Plaintiffs have been damaged as a result of their reasonable reliance. *Fromer v. Yogel,* 50 F. Supp. 2d 227 (S.D.N.Y. 1999). The absence of *any one* of these elements is grounds for dismissal. In addition, Plaintiffs are required to assert this claim in detail; conclusory allegations will not suffice. *Telmark Inv. v. Mills,* 199 A.D.2d 579, 604 N.Y.S.2d 324 (3d Dep't 1993).

Plaintiffs have failed to specifically allege that they saw any of the statements that they claim are misleading, or where they saw them, under what circumstances and how they impacted their purchasing decisions. *Vess,* 317 F.3d at 1103 ("Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged."). Vague allegations that HCG fraudulently and deceptively failed to inform of the synthetic ingredients in its products does not meet Rule 9(b)'s heightened pleading requirement. *Id.* at 1107-08. *Elias v. Hewlett-Packard Co.,* 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012).

To state a claim for fraudulent concealment, Plaintiffs must show the elements of common law fraud as well as that "the defendant had a duty to disclose material information." *Kaufman v. Cohen,* 760 N.Y.S.2d 157, 165, 307 A.D .2d 113 (1st Dep't 2003). In *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291–92 (2d Cir.2006) the Second Circuit explained that under New York law,

> During the course of negotiations surrounding a business transaction, a duty to disclose may arise in two situations: first, where the parties enjoy a fiduciary relationship, and second, where one party possesses superior knowledge, not readily available to the other, and knows the other is acting on the basis of mistaken knowledge.

Such a duty arises, however, only "in the context of business negotiations where parties are entering a contract." *Id.* (quotation marks omitted). There is no such business relationship as between HCG and Plaintiffs, as the transactions at issue involve simple product purchases

Accordingly, defendants had no such "duty to disclose" and the fraudulent concealment claim should be dismissed with prejudice.

To state a claim for constructive fraud Plaintiffs must "allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *See Dealertrack, Inc. v. Huber,* 460 F. Supp. 2d 1177, 1183 (C.D. Cal. 2006). The constructive fraud claim modifies the claim for actual fraud by replacing the scienter requirement with the requirement that HCG maintained either a fiduciary or confidential relationship with Plaintiffs. *See Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193–94 (2d Dep't 1980) ("[T]he element of ... [the defendant's] knowledge of the falsity of his representation ... is replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship warranting the trusting party to repose his confidence in the defendant and therefore to relax the care and vigilance he would ordinarily exercise in the circumstances."). A relationship of trust and confidence must share the essential characteristics of a fiduciary association, or in other words, must be the functional equivalent of a fiduciary relationship. *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991); *Brown, supra,* 76 A.D.2d at 733 ("It is essential, however, that plaintiff establish the existence of a confidential or fiduciary relationship such as parent and child, husband and wife, guardian and ward, trustee and cestui que trust, principal and agent, or attorney and client.") (citations omitted).

Relationships between buyers and sellers of goods and services, like that of HCG and Plaintiffs, however, are generally incompatible with fiduciary obligations. *See id.* at 734 ("Such claims are rarely sustained in New York") (citations omitted); *Hynix Semiconductor Inc. v. Rambus Inc.,* 441 F. Supp. 2d 1066, 1078 (N.D. Cal. 2006) ("Relationships between buyers and sellers of goods and services are generally incompatible with fiduciary obligations.") (citations

41

omitted). Here, Plaintiffs have not alleged facts that demonstrate the existence of a fiduciary relationship. Nor have they alleged facts showing that a "confidential relationship" existed. Accordingly, Plaintiffs constructive fraud claim must be dismissed as a matter of law.

### A. Plaintiffs fail to state a claim for negligence or negligent misrepresentation.

"To state a claim for negligent misrepresentation, a plaintiff must allege that (1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information given." *Saltz v. First Frontier, LP,* 782 F. Supp. 2d 61, 82 (S.D.N.Y.2010) (internal citations omitted), *aff'd,* 485 Fed. App'x 461 (2d Cir. 2012).

The *sine qua non* of a negligent misrepresentation claim is that the defendant had a duty - - as a result of a special or privity-like relationship -- to provide correct information to the plaintiff. *See Naughright v. Weiss,* 826 F. Supp. 2d 676, 2011 WL 5835047, at *6 (S.D.N.Y. 2011); *Sykes v. RFD Third Ave. 1 Assocs., LLC,* 15 N.Y.3d 370, 372, 912 N.Y.S.2d 172, 938 N.E.2d 325 (2010) ("a plaintiff in an action for negligent misrepresentation must show either privity of contract between the plaintiff and the defendant or a relationship so close as to approach that of privity." (quotation marks omitted)).

No such "special relationship" is alleged here, nor could it be. *Naughright v. Weiss, supra,* 826 F. Supp. 2d at 688 ("To allege a special relationship, [the plaintiff] must establish something beyond an ordinary arm's length transaction ..."). Plaintiffs themselves contend that the obligation of HCG to provide information regarding the allegedly prohibited ingredients contained in its products arose out of federal law, not out of some sort of "special relationship." There is nothing approximating "privity" as between the parties, nor could such privity be alleged on the typical commercial purchase at the heart of Plaintiffs' claims. *See Jurgensen v.*

*Felix Storch, Inc.*, No. 12 CIV. 1201 KBF, 2012 WL 2354247, at *9-10 (S.D.N.Y. June 14, 2012). Therefore, Plaintiffs' claim for negligent misrepresentation should be dismissed with prejudice.

**B. Plaintiffs' "after-thought" allegations of breach of express and implied warranties are also insufficient as a matter of law, as Plaintiffs do not and cannot allege the critical elements of both claims.**

In order to state a claim for breach of an express warranty, Plaintiffs must allege and prove that HCG's labels contain an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase the product. *Schimmenti v. Ply Gems Industries Inc.*, 156 A.D.2d 658, 549 N.Y.S.2d 152 (2d Dep't 1989). This affirmation of fact must be a representation that "is understood by the parties as an *absolute assertion* and not the expression of an opinion." *Fairbank Canning Co. v. Metzger*, 118 N.Y. 260, 265, 23 N.E. 372 (1890). Courts have routinely held the types of representations found on food labels, like the "organic" or "natural"/"all natural" at issue here, are merely product description and do not constitute express warranties against a product defect. *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012) *motion to certify appeal denied*, No. C-11-2910 EMC, 2012 WL 4892391 (N.D. Cal. Oct. 12, 2012); *Jones, supra*, 912 F. Supp. 2d 889. Labels on product packaging and websites are "product descriptions rather than promises that [a food product] is defect-free, or guarantees of specific performance levels." *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (internal quotation marks omitted); *Thomas v. Costco Wholesale Corp., supra*, 2013 WL 1435292. Further, express warranties are treated as "consistent with each other and as cumulative … Exact or technical specifications…displace general language of description." *See* Cal. Comm. Code § 2317. Thus, any generalized claim of express warranty includes the specific and unchallenged

accuracy of each product's ingredient list. *See Chin v. General Mills*, 2013 WL 2420455, at *7

(D. Minn. June 3, 2013); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-894 (C.D.

Cal. 2013) (dismissing warranty claim where labels clearly identified the "natural" flavors).

Plaintiffs' Complaint points to no such affirmations of fact on HCG's labels which give rise to an

express warranty. As such, the claim of express warranty fails.

Plaintiffs' implied warranty claims also fail. The law of New York and California is

similarly based on the UCC. *See* Cal. Com. Code § 2314; N.Y. UCC § 2-314. Under the UCC,

if a seller is a merchant, there is an implied contract that the goods will be of merchantable

quality. *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730

(N.Y. 1995) (citing UCC § 2-314(2)(c)). A warranty of merchantability, however, "does not

mean that the product will fulfill a "buyer's every expectation" but rather simply "provides for

a minimum level of quality." *Viscusi v. Proctor & Gamble,* No. 05–CV–01528 (DLI) (LB),

2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007) (citing *Denny, supra,* 87 N.Y.2d at 259).

A plaintiff who claims a breach of the implied warranty of merchantability must show that the

product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa*

*Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003) (citing Cal. Comm. Code § 2314(2)); *accord*

*Leifester v. Dodge Country, Ltd.,* 2007 WL 283019, *5 (Tex. App. Feb. 1, 2007) ("For goods

to breach the implied warranty of merchantability, they must be defective—that is, they must be

'unfit for the ordinary purposes for which they are used because of a lack of something

necessary for adequacy.'").

Here, Plaintiffs fail to allege that any of the products lack even the most basic degree of

fitness or use as food and beverage products. Plaintiffs do not allege that any of the products

were contaminated or tainted in any way. Plaintiffs do not allege that they suffered from any ill

effects from consuming any of the products. As such, Plaintiffs implied warranty of merchantability claim necessarily fails.

In addition, under settled New York law, there is no implied warranty of merchantability from a manufacturer to a remote purchaser not in privity with that manufacturer where only economic, and not personal injury, is alleged. *State by Abrams v. General Motors Corp.,* 120 Misc.2d 371, 466 N.Y.S.2d 124 (Sup. Ct., N.Y. Co. 1983) (motion to dismiss breach of implied warranty granted where lack of privity); *Mazzuocola v. Thunderbird Products Corp.,* No. 90-CV-0405 (ARR), 1995 WL 311397, at *2 (E.D.N.Y. May 16, 1995) (New York maintains majority position that claim for breach of implied warranty under the UCC requires privity between a manufacturer and a buyer). *See also, Arell's Fine Jewelers, Inc. v. Honeywell, Inc.,* 170 A.D.2d 1013, 566 N.Y.S.2d 505 (4th Dep't 1991) (dismissing breach of implied warranty claim because plaintiff was not in privity with the defendant and alleged no personal injury). Here, Plaintiffs do not and cannot allege that they are in privity with HCG, as Plaintiffs purchased the products at issue from unidentified third parties in supermarkets and convenience stores, or that they have suffered any personal injury from using or consuming the products they purchased. Accordingly, their implied warranty claim fails on this ground too.

### E. Plaintiffs' unjust enrichment claim fails as a matter of law.

Plaintiffs' claim for unjust enrichment fails for several reasons. First, "there is no cause of action in California for unjust enrichment." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075-76 (N.D. Cal. 2012). Similarly, the majority of Texas appellate courts hold that unjust enrichment is not an independent cause of action. *Lilani v. Noorali*, 2011 WL 13667, *11 (S.D. Tex. Jan. 3, 2011) (explaining split and Texas Supreme Court decision referring to unjust enrichment as a

cause of action).

Second, a plaintiff cannot, as Plaintiffs have here, assert an unjust enrichment claim that is merely duplicative of statutory claims. *Barocio v. Bank of Am.*, 2012 WL 3945535, at *4 (N.D. Cal. Sept. 10, 2012) (dismissing unjust enrichment claim; restitution already a remedy under UCL); *Lanovaz v. Twinings North America, Inc.*, *supra* 2013 WL 675929, at *7.

Further, Plaintiffs' unjust enrichment claim is a claim for equitable relief, which can only survive if Plaintiffs have no adequate remedy at law. *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (2011) (where CLRA, UCL and common law fraud claims were adequate, claim for restitution was unnecessary); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *3-*4 (N.D. Cal. May 31, 2011) ("Where the claims plead[ed] by a plaintiff may entitle her to an adequate remedy at law, equitable relief is unavailable."); *accord BMG Direct Mktg. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005). Plaintiffs cannot allege they lack an adequate remedy at law. Accordingly, their claim for restitution is doomed.

Finally, Plaintiffs "have not identified a benefit unjustly conferred upon Defendants which would warrant Plaintiffs receiving redress." *Grp. Health Plan v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1071 (D. Minn. 1999). Plaintiffs received the products for which they paid and they have not alleged that those products were ineffective or defective in any way.

## POINT VII

### PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO AMEND.

Leave to amend should be denied where a claim is frivolous or the complaint alleges Plaintiffs' best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Leave to amend is also inappropriate where Plaintiffs make no attempt to amend a pleading despite defendants' prior challenge. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir.

2010); *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997); *Torch Liquidating Trust ex rel. Bridge Assoc. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (finding that plaintiff had ample opportunity to cure noted defects through a prior amendment); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that "pleading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right").

Plaintiffs arguably already waived their right to amend. During the September 24, 2014 pre-motion conference the Court specifically inquired of Plaintiffs' counsel if, in light of the meritorious issues raised in the pre-motion letter, he intended on amending the complaint. The Court indicated it frowned upon the practice of seeking leave to amend after the motion is filed. Counsel responded he would confer with his co-counsel who was not present. In reliance on counsel's statement, the Court provided Plaintiffs' counsel until October 9, 2014 to file an amended complaint. Plaintiffs failed to file an amended pleading. In *Jurgensen, supra,* 2012 WL 2354247, at *12, this Court denied leave to amend under these precise circumstances, stating:

> Leave to amend a complaint is denied, however, where, as here, amendment would be futile. *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir. 2003).

> [P]laintiff's very experienced counsel is well aware the requirements of Rule 9(b) (as well as Rule 8, with which the pleading as to nearly all of claims does *not* comply) and has been on notice of the defects defendants claim lie within that claim for three months, without taking any action to rectify that claim. *Having failed to take any action—particularly in light of the Court inquiring of plaintiff's counsel at the April 2 conference whether he intended to rest on his current complaint or amend in light of defendants' motion to dismiss (to which he replied he would rest of this complaint) and of the Court having previously voiced "serious concerns" about its jurisdiction over this action—the Court denies plaintiff leave to amend the intentional misrepresentation claim. See Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also In re Merrill Lynch Auction Rate Secs. Litig.,* Nos. 09 MD 2030, 10 Civ. 0124, 2012 WL 1994707, at *7 (S.D.N.Y. June 4, 2012) (denying leave to amend where

the plaintiff had already rejected an opportunity to amend).

Accordingly, plaintiff's request for leave to amend the complaint is denied. [emphasis added]

It is respectfully submitted that the same result should obtain here, and the Complaint should be dismissed without leave to replead.

**CONCLUSION**

For the foregoing reasons, HCG respectfully requests that the Court dismiss Plaintiffs' Complaint without leave to amend, together with other and different relief (including attorney's fees) as the Court deems just and proper.

Dated: Mineola, New York
       November 14, 2014

                                  LYNN, GARTNER, DUNNE & COVELLO, LLP
                                  *Attorneys for Defendants*

By:                                  
                                  Robert P. Lynn, Jr.
                                  330 Old Country Road, Suite 103
                                  Mineola, New York 11501
                                  (516) 742-6200
                                  rplynn@lgdcllp.com