```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

LEAH SEGEDIE and DMITRIY SHNEYDER, on :
behalf of themselves and all others similarly         :
situated,                                                              :
                                                                          :
                                  Plaintiffs,                    :
                                                                          :                        14-cv-5029 (NSR)
                  -against-                                       :
                                                                          :                        OPINION & ORDER
THE HAIN CELESTIAL GROUP, INC. and JOHN:
DOES #1-99,                                                      :
                                                                          :
                                  Defendants.               :
                                                                          :
------------------------------------------------------------ X

NELSON S. ROMÁN, United States District Judge

      Leah Segedie and Dmitriy Shneyder ("Plaintiffs"), on behalf of themselves and all others

similarly situated, bring this putative class action against the Hain Celestial Group, Inc. ("Hain

Celestial" or "Defendant") and unnamed co-defendants.  Hain Celestial moves to dismiss

pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that the

claims concerning organic products are preempted by the Organic Foods Production Act of 1990,

7 U.S.C. §§ 6501-6523 ( "OFPA"); that the Court should defer to the primary jurisdiction of the

United States Department of Agriculture ("USDA") or Food and Drug Administration ("FDA")

with respect to claims concerning organic and natural products, respectively; that all claims lack

merit; that all claims fail to meet the applicable pleading standards; and that Plaitniffs lack

standing to bring claims concerning products they never purchased.  For the following reasons,

the motion is GRANTED in part and DENIED in part.

## STANDARD ON A MOTION TO DISMISS

      To survive a motion to dismiss, a complaint must supply "factual allegations sufficient

'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, a court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

## FACTUAL BACKGROUND

Plaintiffs are alleged purchasers of certain "Earth's Best" brand food, body care, and home care products produced and sold by Hain Celestial. (Compl. ¶¶ 20-30, ECF No. 1.) Plaintiffs claim that these products were all misleadingly labeled as "organic," "natural," or "all natural," in violation of various state statutes and common law doctrines.

Plaintiffs identify 62 food products[1] and 12 body care products labeled "organic" (the "Organic Products") that contain ingredients that applicable law allegedly prohibits in organic products, rendering the label false and misleading (the "Organic Claims"). (*Id.* ¶¶ 51-52.) Plaintiffs specifically challenge 47 ingredients, and by reference to product labels attached to the Complaint, tie each Organic Product to its challenged ingredient(s). (*See id.* ¶ 52, Ex. 1.)

---

[1] For purposes of this Factual Background section, the Court has counted different flavor or scent varieties of a product as separate products (e.g., Banana flavored Sesame Street Crunchin' Blocks and Honey Graham flavored Sesame Street Crunchin' Blocks were counted as two products). However, the Court expresses no view at this time whether these products are separate for any legal purposes, such as issues relating to class certification.

Plaintiffs also identify seven food products and eight body care and home care products labeled "natural" or "all natural" (the "Natural Products"). (*Id.* ¶ 63.) Plaintiffs claim that each Natural Product contains one or more of some 72 artificial or synthetic ingredients, allegedly rendering the "natural" or "all natural" representation false and misleading (the "Natural Claims"). (*Id.* ¶¶ 61-62, 64.) Again by reference to product labels attached to the Complaint, Plaintiffs tie each Natural Product to its challenged ingredient(s). (*See id.* Ex. 1.)

Plaintiffs allege that they and the putative class members saw the "organic," "natural," or "all natural" representations and made purchases in reliance on those representations. (*Id.* ¶¶ 23, 27, 90-94, 97-104.) Plaintiffs allege that if the products were not misleadingly labeled, they would not have purchased the products, would not have purchased as much of the products, or would not have paid the price premium that natural and organic products command. (*Id.* ¶¶ 29-30, 105-07.) Specifically, Segedie allegedly purchased six of the Organic Products and two of the Natural Products from retailers including Whole Foods in Westlake Village, CA and Von's in Simi Valley, CA, on numerous occasions from February 2009 until 2013. (*Id.* ¶¶ 20-21, 26.) Shneyder allegedly purchased three of the Organic Products in or around April to September 2011 from Babies "R" Us in Wappingers Falls, NY. (*Id.* ¶ 22.) Although Segedie and Shneyder allege that they personally purchased only eleven products, they purport to sue on behalf of all persons in the United States who purchased any alleged falsely labeled Earth's Best product "includ[ing] but . . . not limited to" the 89 products specifically listed in the Complaint. (*Id.* ¶¶ 51, 63, 109.)

Plaintiffs assert that Defendants are liable under N.Y. Gen. Bus. Law § 349, the California Organic Products Act, Cal. Health & Safety Code §§ 110810-110959, the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, the California False Advertising

Law, Cal. Bus. & Prof. Code § 17500 *et seq.*, the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, Cal. Civ. Code §§ 1709, 1573 *et seq.*, and the common law of New York and California for breach of express warranty, breach of implied warranty, fraud, negligence, negligent misrepresentation, and unjust enrichment.  (*Id.* ¶¶ 124-217.)

## DISCUSSION

### I.    Preemption

Defendant asserts that the OFPA preempts the Organic Claims.  Because federal law is "the supreme Law of the Land," U.S. Const. art. VI, cl. 2, "Congress has the power to preempt state law," *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012).  In interpreting the presence and scope of preemption, a court starts with the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  But in every preemption case, "the purpose of Congress is the ultimate touchstone."  *Id.* (internal quotation marks omitted).

"The Supreme Court has recognized three typical settings in which courts will find that Congress intended to preempt state law."  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96-97 (2d Cir. 2013), *cert. denied sub nom. Exxon Mobil Corp. v. City of New York, N.Y.*, 134 S. Ct. 1877 (2014).  First, when Congress expressly provides that a federal statute overrides state law, courts will find state law preempted if, applying standard tools of statutory construction, the challenged state law falls within the scope of congressional intent to preempt.  *See, e.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996).  Second, when Congress legislates so comprehensively in one area as to "occupy the field," courts may infer from the federal legislation that Congress intended to preempt state law in that entire subject area.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  "Third, when neither of the first two

categories applies but state law directly conflicts with the structure and purpose of a federal statute, [courts] may conclude that Congress intended to preempt the state law." *MTBE*, 725 F.3d at 96-97.  Courts may find a conflict with preemptive effect only in two circumstances: first, when "compliance with both federal and state regulations is a physical impossibility" ("impossibility preemption"), and second, when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" ("obstacle preemption"). *Arizona*, 132 S. Ct. at 2501 (internal quotation marks omitted); *see also MTBE*, 725 F.3d at 97.

A brief overview of the OFPA and its regulatory history is warranted.

A.    The OFPA and its Regulatory History

The purpose of the OFPA is:  "(1) to establish national standards governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced."  7 U.S.C. § 6501. Legislative history is in accord.  *See* S. Rep. No. 101 357 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4656, 4943-45.  To accomplish these objectives, the OFPA directed the USDA to establish national standards governing products marketed as "organic."  *Id.* § 6503.  The USDA published its final rule implementing the OFPA in 2000, creating the National Organic Program ("NOP").  *See* National Organic Program, 65 Fed. Reg. 80,548 (Dec. 21, 2000) (codified at 7 C.F.R. pt. 205).  The NOP regulations govern the use of the term "organic" in the labeling and marketing of agricultural and processed products.  *See, e.g.*, 7 C.F.R. § 205.300-.301.  As one court has pointed out, "The NOP provisions governing the production, marketing, and labeling of 'organic' products are complex, detailed, and specific."  *All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, No. C 09-03517, 2011 WL 4433817, at *2 (N.D. Cal. Sept. 22, 2011).

The OFPA and NOP regulations prohibit the sale or labeling of any product as "organic" unless the product has been certified as such by an accredited certifying agent.  7 U.S.C. §§ 6504-6505, 6514(a), 6515, 6519; *see also, e.g.*, 7 C.F.R. § 205.302(c).  Certifying agents are private actors who are accredited by the Administrator ("Administrator") of the USDA Agricultural Marketing Service ("AMS").  *See* 7 U.S.C. §§ 6502(3), 6513; 7 C.F.R. §§ 205.400, .510.

NOP regulations also establish an enforcement scheme.  Both the NOP's Program Manager ("Program Manager") and accredited certifying agents are empowered to investigate certified operations suspected of noncompliance and to suspend or revoke a certification.  7 C.F.R. §§ 205.660(a), (b)(1), 205.661(a); *see also* 7 U.S.C. § 6519(b).  Operations found to have sold or labeled products in violation of the OFPA or NOP face civil penalties of up to $10,000 per violation and the possibility of a 5-year prohibition from re certification.  7 U.S.C. § 6519(c)(1), (3); 7 C.F.R. §§ 3.91(b)(1)(xxxvii), 205.662(f)(2), (g)(1).  Any adverse action by a certifying agent or the Program Manager—e.g., a denial of an application for certification, a proposed suspension or revocation, or an actual suspension or revocation—is appealable to the Administrator.  7 C.F.R. § 205.680(a), (c); *see also* 7 U.S.C. § 6520(a).  Final decisions are then appealable to U.S. district courts.  7 U.S.C. § 6520(b).  However, if the Administrator reverses a denial of certification, the certifying agent that denied the application has no right to appeal that decision.  7 C.F.R. § 205.681(a)(1).

Finally, the NOP's website invites the public to report noncompliance to the NOP Compliance and Enforcement Division of the AMS.  *Compliance and Enforcement*, Nat'l Organic Prog. (last modified June 5, 2013), http://tinyurl.com/krdy9bt; *see also* Nat'l Organic Prog., NOP 4001, Complaint Handling Procedure, (2011), *available at*

http://tinyurl.com/l2m5uvv.  A certifying agent or the Compliance and Enforcement Division may then investigate the complaint and take appropriate action—e.g., issuing a notice of noncompliance.  NOP 4001, *supra*, at 3-4, 6.  Apart from this provision, the OFPA and NOP are silent on relief for consumers.  There is no mechanism to provide restitution or any other remedy to consumers harmed by violations of the OFPA or NOP regulations.

B.    The OFPA Does Not Preempt the Organic Claims

The Eighth Circuit appears to be the first and only circuit court to have addressed the preemptive scope of the OFPA in relation to state consumer protection claims.  *See In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781 (8th Cir. 2010).  *Aurora*, on which Defendant heavily relies, was a multi-district, consolidated action in which plaintiffs asserted state law claims against, *inter alia*, an organic-certified dairy producer and the retailers that sold its milk.  *Id.* at 787-88.  Plaintiffs alleged that representations made in the labeling and marketing of the milk, including that the milk was "organic," was free from hormones and pesticides, and came from humanely treated cows, were misleading because the dairy producer failed to comply with the OFPA and NOP.  *Id.* at 789-90.

The Eighth Circuit first concluded that the OFPA did not preempt any of the plaintiffs' claims through express preemption or field preemption.  *See id.* at 792-94.  Those analyses are straightforward in this case; the Court likewise finds that none of the instant claims are barred by express or field preemption for the reasons set forth in the Eighth Circuit's opinion.  *See id.*  The Eighth Circuit did not separately address the impossibility branch of conflict preemption, but Defendant here does not argue that compliance with both the OFPA and any state law is physically impossible (nor could it).

The *Aurora* court found that the relevant congressional objectives for purposes of obstacle preemption were those expressed in § 6501:  "(1) to establish national standards

governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced."  7 U.S.C. § 6501; *Aurora*, 621 F.3d at 794 & n.3.  The court then drew a line between two types of claims.  First, it held that the OFPA does not preempt claims that do not "interfere with" the certification decision but nonetheless touch on facts crucial to the certification decision—e.g., claims based sale of the milk as free from antibiotics and hormones or as produced by humanely treated cows.  *Aurora*, 621 F.3d at 797-98.  The court held that these types of claims posed no obstacle to the accomplishment of any congressional objectives.  *Id.* at 797-99.

Second, the court held that the OFPA preempts claims directly challenging the certification decision—i.e., claims challenging the sale of the milk as "organic."  *Id.* at 796-97.  The opinion advanced two justifications for this conclusion.  First, the court reasoned that this type of claim, if allowed to proceed, could lead to inconsistencies and fragmentation of the national standards as courts adopted "possibly conflicting interpretations of the same provisions of the OFPA and NOP," resulting in an increase in "consumer confusion and troubled interstate commerce."  *Id.*  Second, the court found that the structure and remedial scheme of the OFPA suggest that state claims challenging a certification are preempted, because:  (1) § 6505(a)(1)(A) specifically allows "a person [to] sell or label an agricultural product as organically produced . . . if such product is produced and handled in accordance" with the OFPA and NOP; (2) the only penalty for noncompliance provided is a civil penalty of up to $10,000 for knowingly selling or labeling a product as organic in violation of the OFPA, *see* § 6519(a); and (3) allowing consumers to challenge the certification would conflict with the role of the certifying agent set forth in § 6503(d).  *Id.*

The claims in the instant case fall squarely within the latter category, which *Aurora* found preempted. However, the Court finds *Aurora* unpersuasive for the following reasons. As the Second Circuit emphasized, obstacle preemption is "only an intermediate step down the road to impossibility preemption." *MTBE*, 725 F.3d at 101. Obstacle preemption precludes only those state laws that pose an "actual conflict" with an overriding federal purpose and objective. *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013). What constitutes a "sufficient obstacle" is "a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* (internal quotation marks omitted). But "the conflict between state law and federal policy must be a sharp one." *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007) (internal quotation marks omitted). "The burden of establishing obstacle preemption, like that of impossibility preemption, is heavy: the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power." *MTBE*, 725 F.3d at 101-02 (quoting *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006)) (internal quotation marks and alterations omitted). There is no preemption unless "the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together." *Id.*

*Geier v. American Honda Motor Co.*, 529 U.S. 861, 881 (2000), illustrates the type of conflict that warrants a finding of obstacle preemption. In *Geier*, the Supreme Court held that state tort claims premised on a car manufacturer's failure to install airbags were preempted by a federal regulation that did not require airbags for all cars. *Id.* The Department of Transportation had promulgated a rule that provided car manufacturers with a range of choices among passive restraint devices, only one of which was airbags. *Id.* at 875. Rejecting an "all airbag" standard,

the agency had called for a gradual phase-in of a mix of passive restraints in order to spur

technological development and win consumer acceptance.  *Id.* at 879.  Because the plaintiff's

claim was that car manufacturers had a duty to install airbags, allowing a "no-airbag" tort suit to

proceed would necessarily have required all manufacturers in the jurisdiction to install airbags on

all cars.  *Id*. at 881.  This presented an obstacle to achieving "the variety and mix of devices that

the federal regulation sought" and the "gradual phase-in" of passive restraint devices in car

manufacturing.  *Id.*

      In light of the objectives expressed in § 6501, legislative history, and the structure of the

OFPA as a whole, permitting the Organic Claims to proceed would not present a "sharp" conflict

with congressional purposes that rises above the level of mere "tension."  *MTBE*, 725 F.3d at

101-02.  First, allowing the Organic Claims to proceed directly advances the second purpose of

the OFPA:  "to assure consumers that organically produced products meet a consistent standard."

7 U.S.C. § 6501.  Next, while it is true that Congress also sought to establish "national

standards" and facilitate interstate commerce, the Organic Claims do not present a "sharp"

obstacle to the accomplishment of those objectives, because the Organic Claims are not premised

on a "reasonable consumer" theory that diverges from the national organic standards.  Rather, the

suit seeks to enforce those national standards.  The Court is mindful of the risk that, over time

and across many lawsuits, different courts might interpret the same standards differently.  But

Congress in the OFPA (1) delegated certification decisions to certifying agents—of which there

are "[n]early 100"[2]—whose interpretations of organic standards surely must diverge to some

extent, and (2) expressly assigned U.S. district courts an interpretive role, albeit through the lens

---

[2] As of April 14, 2015.  *See List of USDA-Authorized Organic Certifying Agents by State of Operation*,
USDA (Apr. 14, 2015), *available at* http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5100383.

of arbitrary-and-capricious review, *see* 7 U.S.C. § 6520(b); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).  The mere presence of a risk of judicial interpretive divergence cannot be repugnant to congressional objectives, because these provisions show that Congress contemplated some degree of divergence.  In considering the instant claims, a court in any jurisdiction would be interpreting the same standards, with appropriate deference to published USDA regulations and interpretations.  *See Chevron*, 467 U.S. at 844; *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Nothing suggests that the divergence among courts will be so great as to create an "obstacle" to the establishment of national standards and facilitation of interstate commerce vis-à-vis the pre-OFPA landscape; Defendants have thus failed to carry their "heavy" burden of showing a conflict "so direct and positive that the two [laws] cannot be reconciled or consistently stand together."  *MTBE*, 725 F.3d at 101-02.  If Plaintiffs were seeking to enforce a definition of "organic" based on something other than federal regulatory compliance, then this Court might find such a state cause of action to be in conflict with congressional objectives.  But that is not the case here.

The Court also finds that *Aurora*'s analysis of the OFPA's structure and remedial scheme is at odds with the Supreme Court's decision in *Wyeth*.  *See* 555 U.S. at 555.  The Supreme Court held that a plaintiff's failure-to-warn claims alleging a drug label's inadequacy were not preempted even though the label had been approved by the FDA pursuant to the Food, Drug, and Cosmetic Act and implementing regulations.  *Id.* at 581.  The Court rejected the drug company's argument that "[o]nce the FDA has approved a drug's label, a state-law verdict may not deem the label inadequate," noting that "Congress did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs, [and that Congress] may have also recognized that state-law

remedies further consumer protection by motivating manufacturers to produce safe and effective drugs and to give adequate warnings." *Id.* at 573-74. Ultimately, the Court held that permitting the failure-to-warn suit to proceed did not present an obstacle to the accomplishment of the federal objective, which was "to bolster consumer protection against harmful products." *Id.* at 574.

In accordance with *Wyeth*, this Court rejects the premise that once a certifying agency has passed on a product's organic status, a state-law verdict may not deem the sale or labeling of that product as "organic" false or misleading. As in *Wyeth*, Congress here did not provide a federal remedy for consumers duped into purchasing falsely labeled organic products. The OFPA is completely silent on the rights of aggrieved purchasers. And although the NOP (without explicit direction from Congress) has instituted an avenue for private citizens to file complaints against noncompliant operations, there is no mechanism to provide restitution or any other remedy to purchasers harmed by falsely labeled products. This Court has previously ruled that "state law causes of action are not preempted where they merely provide a damages remedy for claims premised on a violation of federal law that does not itself provide a private right of action." *Koenig v. Boulder Brands*, 995 F. Supp. 2d 274, 283 (S.D.N.Y. 2014). That principle holds true here. The Court sees nothing in the structure and remedial scheme of the OFPA, the congressional objectives expressed in § 6501, or legislative history to suggest that Congress intended to eliminate all remedies for aggrieved purchasers of organic products.

Furthermore, Congress has demonstrated elsewhere in the OFPA that it knows how to— and is willing to—preempt state law. Section 6507 expressly preempts state organic certification regimes, permitting states to enact "more restrictive" certification programs that are "not . . . inconsistent" with the OFPA, but only with USDA approval and oversight. *See* 7

U.S.C. § 6507.  Tellingly, Congress did not expressly preempt state tort claims, consumer

protection statutes, or common law claims in § 6507.  This is "powerful evidence" that Congress

did not impliedly intend to do so.  *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2237

(2014); *Wyeth*, 555 U.S. at 575; *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310,

318 (S.D.N.Y. 2013); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995)

(explaining that an express definition of the preemptive reach of a statute, while not foreclosing

implied preemption entirely, "supports a reasonable inference . . . that Congress did not intend to

pre-empt other matters"); *cf. Geier*, 529 U.S. at 869-74.

For all of the foregoing reasons, the Court concludes that the Organic Claims are not

preempted by the OFPA or NOP regulations, joining in those courts that have reached a similar

conclusion, *see Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 895 (N.D. Cal. 2012);

*Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2012 WL 3138013, at *17 (N.D. Cal.

Aug. 1, 2012).

## II.    Merits-Based Arguments

### A.    Organic Claims

The Organic Claims are legally sufficient.  In contrast to foods labeled "100% organic,"

which are not at issue here, foods labeled "organic" need not be composed entirely of organic

ingredients.  *See* 7 C.F.R. § 205.301.  OFPA regulations state that up to 5% by weight of a

product labeled "organic" may be composed of non-organic ingredients listed on the National

List of Allowed and Prohibited Substances (the "National List"), which is maintained in Subpart

G of the NOP regulations.  *Id.* § 205.301(b); *see also* 7 U.S.C. § 6517.  If a non-organic

ingredient is not on the National List, it cannot appear in an organic product in any quantity

(unless it qualifies for some other exception).  The parties' dispute primarily concerns one item

on the National List: "Synthetics allowed: . . . Nutrient vitamins and minerals, in accordance with 21 C.F.R. 104.20, [*sic*] Nutritional Quality Guidelines For Foods."  7 C.F.R. § 205.605(b).

Defendant argues that this is an open-ended exception that encompasses all of the challenged ingredients, rendering the Organic Claims fatally flawed.  The nutrient vitamins and minerals exception references 21 C.F.R. § 104.20, which articulates the FDA's fortification policy.  Subsections (b) through (d) of the fortification policy state that foods may be fortified with the 21 specific substances listed in 21 C.F.R. § 104.20(d)(3) under certain limited conditions—e.g., to restore nutrients lost during processing, *see id.* § 104.20(c).  Subsections (b) through (d), then, are not open-ended.  However, 21 C.F.R. § 104.20(f) provides:  "Nutrient(s) may be added to foods as permitted or required by applicable regulations established elsewhere in this chapter."  Subsection (f) is arguably broader than subsections (b) through (d), because it is not expressly limited to the nutrients listed in subsection (d)(3).  Therefore, Defendant's argument hinges on the interpretation of subsection (f)—is it open-ended, or is it limited in any way meaningful to this litigation?

In a letter to the USDA dated April 14, 2011 for the purpose of "clarification of the Food and Drug Administration Fortification Policy," the FDA explained that subsection (f) extends only to substances permitted or required to be added to foods pursuant to regulations pertaining to a common or usual name, 21 C.F.R. pt. 102, a standard of identity, 21 C.F.R. pts. 130-169, or nutritional quality guideline, 21 C.F.R. § 104.47.  *See* Letter from Barbara O. Schneeman, Director, Office of Nutrition, Labeling, and Dietary Supplements, FDA to Miles V. McEvoy, Deputy Admin., NOP at 3 & n.4 (Apr. 14, 2011) [hereinafter FDA Letter], *available at* http://tinyurl.com/oszlkvx; Sunset Review (2012) for Nutrient Vitamins and Minerals, 77 Fed. Reg. 1980, 1983-85 (proposed Jan. 12, 2012) [hereinafter NOP Proposed Rule].  In other words,

14

subsection (f) does not permit indiscriminate fortification of foods with, for example, AHA,

DHA, taurine, or inositol simply because the FDA has deemed them "Generally Recognized as

Safe."  NOP Proposed Rule, *supra*, at 1983-85.  The FDA also explained that infant formula is

not within the scope of § 104.20 at all, as the FDA's nutritional policies for infant formula are

codified at 21 C.F.R. pt. 107.  *Id.*  Although not relevant here, the FDA further explained that its

fortification policy has now expanded beyond subsections (d)(3) and (f) to also include an

additional six nutrients listed in 21 C.F.R. § 101.9(c)(8)(iv).  *Id.*

An agency's interpretation of its own regulation is controlling unless "plainly erroneous

or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  The FDA's

interpretation meets this standard.  Subsection (f) uses the phrase, "Nutrient(s) may be added to

foods as permitted or required by applicable regulations established elsewhere in this chapter."

21 C.F.R. § 104.20(f).  The scope of "regulations established elsewhere in this chapter" is

ambiguous, at best.  It is not inconsistent with the language or plainly erroneous for the FDA to

limit "regulations established elsewhere" to just those pertaining to a common or usual name, 21

C.F.R. pt. 102, a standard of identity, 21 C.F.R. pts. 130-169, or nutritional quality guideline, 21

C.F.R. § 104.47.  The FDA has explained that the policy behind § 104.20—the "rational addition

of nutrients to foods," 21 C.F.R. § 104.20(a), "based on the best available scientific data,"

Addition of Nutrients, 45 Fed. Reg. 6314, 6317 (Jan. 25, 1980) (codified at 21 C.F.R. pt. 104)—

supports this conclusion, as does the fact that the proposed rule issued for public comment was

originally limited to those specific types of regulations.  It is also reasonable for the FDA to

construe the fortification policy to exclude infant formula because the FDA has a separate policy

concerning infant formula.  *See* 21 C.F.R. pt. 107.

Defendant attempts to rely on a contrary interpretation of subsection (f) that the NOP expressed in an April 2007 opinion letter, which the NOP has since disavowed.[3]  Whereas the FDA's interpretation of 21 C.F.R. § 104.20(f) is entitled to *Auer* deference because the FDA promulgated that regulation, the NOP's is not.  Even if the Court were to frame the question as whether to defer to the NOP's interpretation of the nutrient vitamins and minerals exception, an agency interpretation is entitled to less deference where, as here, it has been inconsistent over time.  *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994).  And even so, the NOP now agrees that its April 2007 interpretation was wrong and the FDA's interpretation is correct.  NOP Proposed Rule, *supra*, at 1984 ("However, the NOP incorrectly interpreted FDA's fortification policy, codified at 21 CFR 104.20 [*sic*], and allowed substances that are not authorized under the current reference in the NOP regulations.").  As the NOP explained in its Proposed Rule:

> Over the last ten years, the NOP incorrectly allowed a broad allowance of "accessory nutrients" that [*sic*] is not aligned with the codified allowance for nutrient vitamins and minerals in organic products, as confirmed by FDA's clarification of the scope of the fortification policy.  In practice, added ingredients, which are considered GRAS . . . , but are not designated as essential vitamins and minerals per FDA, are being added to organic products based upon an incorrect NOP interpretation of FDA fortification policy.

---

[3] In 2007 and 2008, the NOP issued two opinion letters interpreting the FDA fortification policy in conflicting fashion.  These letters have not been made available to the Court but are described in the NOP's proposed rule.  *See* NOP Proposed Rule, *supra*, at 1981-82. First, the NOP opined in an April 3, 2007 letter that arachidonic acid ("ARA," an omega 6 fatty acid), docosahexaenoic acid ("DHA," an omega 3 fatty acid), sterols, and taurine, which are not listed in 21 C.F.R. § 104.20(d)(3), nonetheless fell within subsection (f), and were therefore permitted in foods labeled organic pursuant to the nutrient vitamins and minerals exception on the National List.  *Id.*  The NOP reasoned that subsection (f) was not limited to the nutrients listed in subsection (d)(3), and the ingredients at issue were permitted under other FDA regulations as Generally Recognized as Safe food additives. *Id.*  Then, in a 2008 opinion letter, the NOP determined that luteic acid was not permitted in foods labeled organic pursuant to the nutrient vitamins and minerals exception.  *Id.*  In direct conflict with the April 2007 letter, the NOP reasoned that subsection (f) of the FDA's fortification policy was limited to the nutrients listed in subsection (d)(3). *Id.*  The NOP acknowledged that its April 2007 interpretation was erroneous as early as April 2010.  Miles McEvoy, Deputy Admin., Nat'l Organic Prog., Action Memorandum for the Chairman of the National Organic Standards Board at 3 (Apr. 26, 2010), *available at* http://tinyurl.com/ktrweos.

*Id.* at 1984.  In other words, the NOP has simply declined to enforce the prohibition against synthetic "accessory nutrients."  But the regulations as written and as interpreted by the NOP and FDA still undeniably prohibit ingredients such as synthetic AHA, DHA, taurine, and inositol in organic products.  Congress could not have been clearer in mandating that the NOP may permit additional nutrients to be added to organic foods *only* by amending the National List through notice-and-comment rulemaking (except in certain emergency situations not applicable here):

> The National List . . . shall be based upon . . . proposed amendments to the National List developed by the National Organic Standards Board. . . . The Secretary may not include exemptions for the use of specific synthetic substances in the National List other than those exemptions contained in the . . . Proposed Amendments to the National List. . . . Before . . . making any amendments to the National List, the Secretary shall publish . . . any Proposed Amendments to the National List in the Federal Register and seek public comment on such proposals. The Secretary shall include in such Notice any changes to such proposed list or amendments recommended by the Secretary. . . . After evaluating all comments received concerning the . . . Proposed Amendments to the National List, the Secretary shall publish the final National List in the Federal Register, along with a discussion of comments received.

7 U.S.C. § 6517.  An "organic" labeling representation that violates the regulations can still be misleading even if the NOP declines to enforce the specific regulations it violates.

The interim rule that Defendant cites does not compel a different conclusion.  *See* Sunset Review (2012) for Nutrient Vitamins and Minerals, 77 Fed. Reg. 59,287 (Sept. 27, 2012) [hereinafter NOP Interim Rule].  The OFPA provides that all items on the National List expire after five years unless the National Organic Standards Board reviews and renews them.  7 U.S.C. § 6517(e).  The NOP Interim Rule simply re-authorized the existing nutrient vitamins and minerals exception on the National List as written, "without change," because it was scheduled to expire a month later.  NOP Interim Rule, *supra*, at 59,287, 59,289.  The NOP explained that it was still reviewing and considering comments on a proposed amendment to the exception, but wanted to avoid the "widespread disruption to the organic market that would occur if the allowance for any synthetic vitamins and minerals were to sunset ('expire')."  *Id.* at 59,289.  The

NOP Interim Rule changed nothing.  Even so, the rule did not go through the

notice-and-comment process prescribed by 7 U.S.C. § 6517, and therefore cannot have the effect

of amending the National List or otherwise expanding an exception.

To summarize, Defendant's arguments in favor of dismissal rely on the existence of an

open-ended exception for nutrient vitamins and minerals.  But the exception is not open-ended;

rather, it is limited to the nutrients listed in 21 C.F.R. § 104.20(d)(3) and the FDA's

interpretation of subsection (f).  Therefore, Plaintiffs have alleged a plausible claim that

inclusion of the challenged ingredients in foods labeled "organic" is misleading.

Furthermore, there is an alternative, independent basis to deny Defendant's motion as to

the Organic Claims.  Even if Defendant's interpretation of 21 C.F.R. § 104.20 were correct, the

Court could not accept Defendant's blanket factual assertion that all of the challenged

ingredients are nutrient vitamins or minerals.  Defendant submits no evidence—judicially

noticeable or otherwise—to support this assertion.  To accept Defendant's argument, the Court

would need to take Defendant's word over allegations in the Complaint, which the Court must

accept as true on a motion to dismiss.

B.    Natural Claims

Defendant argues that the Natural Claims lack merit because Plaintiffs (1) do not advance

a cognizable theory of deception and (2) do not rely on a plausible, objective definition of

"natural."  Under all of the applicable statutes and common law doctrines the "reasonable

consumer" standard governs whether a representation is misleading.  *See Williams v. Gerber*

*Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (concerning the CLRA, UCL, and FAL); *Oswego*

*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)

(concerning the NYGBL).  "Whether a reasonable consumer would be deceived by a product

label is generally a question of fact not amenable to determination on a motion to dismiss."  *Ham*

*v. Hain Celestial Grp., Inc.*, No. 14-CV-02044-WHO, 2014 WL 4965959, at *3 (N.D. Cal. Oct. 3, 2014).  "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible."  *Id.*

The Complaint alleges facts that, if true, establish that the "natural" representations were plausibly misleading to a reasonable consumer, misled Plaintiffs, and caused Plaintiffs harm. The Complaint alleges that Defendant labeled the challenged products as "natural" or "all natural," that Defendant knew and intended that consumers would rely on that representation, that Plaintiffs relied on the representation in making their purchases and understood it to mean that the products were free from synthetic ingredients, and that the challenged products contained synthetic ingredients.

It is not unreasonable as a matter of law to expect that a product labeled "natural" or "all natural" contains only natural ingredients.[4]  *E.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("[A] reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box."); *cf. Ault v. J.M. Smucker Co.*, No. 13 CIV. 3409 PAC, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) ("[I]t is not unreasonable, as a matter of law, for a consumer to believe that non-organic foods labeled as 'All Natural' do not possess GMOs.").

---

[4] To the extent that *Pelayo v. Nestle USA, Inc.*, No. 13-5213, 2013 WL 5764644, at *4 (C.D. Cal. Oct. 25, 2013) (dismissing claims in part on the basis that a reasonable consumer would not be duped into believing he was purchasing "natural" pasta from "Ravioli trees and Tortellini bushes"), is to the contrary, that case is nonbinding and distinguishable.  Plaintiffs offer a different understanding of "natural" than the plaintiff in *Pelayo* offered, and even so, the weight of authority has shifted away from *Pelayo*, *Garcia v. Kashi Co.*, No. 12-21678, 2014 WL 4392163, at *17 (S.D. Fla. Sept. 5, 2014); *Surzyn v. Diamond Foods, Inc.*, No. 14-0136, 2014 WL 2212216, at *3-4 (N.D. Cal. May 28, 2014); *Jou v. Kimberly-Clark Corp.*, No. 13-03075, 2013 WL 6491158, at *8 (N.D. Cal. Dec. 10, 2013).

This is true even though foods labeled "organic" may lawfully contain some synthetic ingredients. There is no rigid hierarchy that makes "natural" a more permissive label than "organic" in all respects as a matter of law. *See Ham*, 2014 WL 4965959, at *3. A jury might find that is so, but the Court cannot at this stage.

This is also true even if the synthetic ingredients are listed by name on the products' packaging in an ingredient list. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Wilson*, 2013 WL 1320468, at *13 ("Even though the nutrition box could resolve any ambiguity, the Court cannot conclude as a matter of law, in the context of a Rule 12(b)(6) motion, that no reasonable consumer would be deceived by the 'Made with ALL NATURAL Ingredients' labels."). A jury may ultimately find that the appearance of ingredients that are obviously synthetic on an ingredient list undercuts Plaintiff's theory of deception. But again, the Court cannot make this determination at this stage.

Plaintiffs' Natural Claims also survive despite Plaintiffs' failure to define "natural" for *other* purposes. *Ham*, 2014 WL 4965959, at *3. *But see Pelayo*, 2013 WL 5764644, at *4 (imposing a requirement that that the plaintiffs propose a plausible, objective definition of "natural"). *A fortiori*, it is enough that Plaintiffs allege that "natural" communicates the absence of synthetic ingredients. (*See* Compl. ¶¶ 58-59.) Likewise, the FDA's and USDA's respective policies concerning "natural," while potentially relevant, are not controlling. This applies equally to Hain Celestial's own definition as expressed in SEC filings. (*See* Compl. ¶¶ 56-57.) Ultimately, the question is one of reasonableness, which cannot be resolved on a Rule 12(b)(6) motion.

To be clear, the Court is not establishing a rule of law that foods labeled "natural" may not contain synthetic ingredients—far from it.  The alleged presence of synthetic ingredients merely brings the claim of deception into the realm of plausibility.  "The plausibility standard is not akin to a probability requirement."  *Brazil v. Dole Food Co.*, No. 12-1831, 2013 WL 1209955, at *14 (N.D. Cal. Mar. 25, 2013).  Whether the labels would mislead a reasonable consumer is a question of fact for the jury.

Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled "natural" or "all natural."  (*See* Compl. ¶ 105b.)  *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." (citations omitted)); *Samet v. Procter & Gamble Co.*, No. 12-1891, 2013 WL 3124646, at *3 (N.D. Cal. June 18, 2013) (holding likewise with respect to California statutes).

## III.      Specificity or Particularity

The parties dispute whether the heightened pleading standard in Rule 9(b) of the Federal Rules of Civil Procedure applies to some or all of Plaintiffs' claims.  That question is immaterial because Plaintiffs' claims are pled with particularity even under that standard.  By alleging the "who, what, when, where, and how of the misconduct," Plaintiffs have pled sufficient facts to allow Defendant an adequate opportunity to defend.  *Aguilar v. Boulder Brands, Inc.*, No. 12-01862, 2013 WL 2481549, at *4 (S.D. Cal. June 10, 2013).  The Complaint alleges that Hain Celestial sold products through certain identified retailers, identifies the products purchased and the time periods of those purchases, identifies the specific challenged representations, identifies by name the specific challenged ingredients, ties the challenged ingredients to each product by reference to the products' ingredient labels, and explains why those ingredients render the

product labels misleading.  Finally, Plaintiffs allege that they would not have purchased the

products, purchased as much of the products as they purchased, or paid the premium that

"organic" and "natural" products command had Defendant not misleadingly labeled the products.

However, the Complaint also states that "Falsely Labeled Organic Products" include "but

are not limited to" the products listed by name in the Complaint.  (Compl. ¶¶ 50, 52.)  At a

minimum, even under the more permissive Rule 8(a) standard, a plaintiff challenging a product

label as misleading must at least identify the product and the misleading label.  No plaintiff in

any court should be able to bring a consumer protection claim on behalf of unidentified

purchasers of unidentified products.  Accordingly, to the extent that the Complaint purports to

assert claims based on unidentified products, those claims are dismissed.

## IV.     Primary Jurisdiction

"The primary jurisdiction doctrine is 'relatively narrow' in scope."  *In re Frito-Lay N.*

*Am., Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *7 (E.D.N.Y.

Aug. 29, 2013) (citing *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir.

1988)).  Courts consider four factors:  "(1) whether the question at issue is within the

conventional experience of judges or whether it involves technical or policy considerations

within the agency's particular field of expertise; (2) whether the question at issue is particularly

within the agency's discretion; (3) whether there exists a substantial danger of inconsistent

rulings; and (4) whether a prior application to the agency has been made."  *Ellis v. Tribune*

*Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006).

Primary jurisdiction does not bar the Organic Claims.  Notwithstanding the USDA's

expertise in its own regulations, the core issues here—whether the labels violate OFPA

regulations and whether those violations reasonably misled consumers—are amenable to judicial

resolution.  *Cf. Ackerman*, 2010 WL 2925955, at *14 ("The question whether defendants have

violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine.").  There is no suggestion that Defendant's compliance with OFPA regulations is a matter of USDA discretion, as the USDA cannot retroactively amend the organic regulations.  There is little danger of inconsistent rulings because the USDA is not "contemplating the same issue"—the Organic Claims seek to hold Defendant to existing regulations, not proposed regulations.  Finally, neither party claims that there is an application to the USDA on any key issue.  *See Goya*, 846 F.2d at 851; *Ault*, 2014 WL 1998235, at *5 (declining to apply the primary jurisdiction doctrine in a food-labeling case).  The USDA's longstanding uncertainty on the scope of the exception for nutrient vitamins and minerals is not a basis to defer to the USDA.  *Cf. Brown*, 2012 WL 3138013, at *17.

Nor does primary jurisdiction bar the Natural Claims.  Various district judges, including the undersigned, have repeatedly rejected this very argument in identical circumstances.  *See, e.g.*, *Goldemberg*, 8 F. Supp. 3d at 477-78; *Ham*, 2014 WL 4965959, at *6; *Frito-Lay*, 2013 WL 4647512, at *7.  Although the issues in this case might involve some degree of agency discretion, this does not outweigh the other three factors, which counsel against deferring to the FDA.  *Goldemberg*, 8 F. Supp. 3d at 477-78.  The Court rejects Defendant's assertion that the FDA will imminently regulate the term "natural."  The FDA has declined to adopt formal rulemaking to define "natural" despite repeated applications by various stakeholders. "Bow[ing]" to its primary jurisdiction "would plainly be unavailing."  *Bd. of Educ. v. Harris*, 622 F.2d 599, 607 (2d Cir. 1979).  As with the Organic Claims, the issues here are "within the traditional realm of judicial competence."  *Frito-Lay*, 2013 WL 4647512, at *8.

## V.       Miscellaneous Theories of Liability

Plaintiffs have declined to pursue their theories of breach of implied warranty of merchantability (Seventh Cause of Action) and deceit or misrepresentation, fraudulent concealment, and constructive fraud in violation of common law and California Civil Code §§ 1709, 1573, *et seq.* (Eighth Cause of Action).  Accordingly, those claims are dismissed.

Plaintiffs' negligent misrepresentation claim under New York law is dismissed for failure to plead any cognizable special relationship with Defendant.  *Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011) ("To allege a special relationship, [the plaintiff] must establish something beyond an ordinary arm's length transaction.").  Defendant's obligation to label products truthfully does not arise from any special relationship.  There is nothing approximating privity between the parties.  Accordingly, the claims for negligence and/or negligent misrepresentation under New York law must be dismissed.  As Defendant does not address California law of negligent misrepresentation, that claim survives.

Unjust enrichment is not available as an independent cause of action under California law.  *See Durrell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  Plaintiffs do not appear to disagree.  Accordingly, the claim for unjust enrichment under California law must be dismissed.  As Defendant does not address New York law of unjust enrichment, that claim survives.  The analysis of Texas state law in Defendant's papers is irrelevant.

The Court has considered Defendant's arguments relating to Plaintiffs' breach of warranty claims and finds them unpersuasive.

## VI.      Standing

The Court will address Defendant's class standing arguments, including whether *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), which the Court will faithfully apply as the law in this circuit (despite Defendant's citation to

24

numerous nonbinding cases calling its reasoning into doubt), permits named plaintiffs to bring claims concerning products they never purchased.  The Court simply notes at this time that Plaintiffs' own allegations suggest that the "set of concerns" for different products are a far cry from "nearly identical."  *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) ("Here, by contrast, each of the seven different products have different ingredients, and Clinique made different advertising claims for each product.").  (*E.g.*, Compl. ¶ 74 ("Hain Celestial knows that consumers believe that natural vitamins have better absorption rates and/or are otherwise superior to synthetic vitamin supplements."); *id.* ¶ 79 ("Instead, these ingredients are artificial. Some are also known or suspected toxins, carcinogens, and/or environmental hazards . . . ."); *id.* Ex. 1.)

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  The claims for breach of implied warranty of merchantability; deceit and/or misrepresentation, fraudulent concealment, and constructive fraud in violation of common law and California Civil Code §§ 1709, 1573, *et seq.*; negligent misrepresentation under New York law; and unjust enrichment under California law, as well as all claims based on products not identified in the Complaint, are DISMISSED.  All other claims survive.  Defendant shall have until June 22, 2015 to file responsive pleadings.  The parties are directed to schedule a conference with Magistrate Judge Lisa Margaret Smith in accordance with ECF No. 17.  The Court respectfully directs the Clerk to terminate the motion at ECF No. 25.

Dated:  May 7, 2015
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

25